# EXHIBIT D

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re:

DEB STORES HOLDING LLC, *et al.*,[1]

           Debtors.

:    **Chapter 11**

:    **Case No. 14 –12676 (MFW)**

:    (Jointly Administered)

:    Ref. Docket No. _____

---------------------------------------------------------------x

## ORDER (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Deb Stores Holding LLC on behalf of itself

and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**"), for an order (this "**Order**") (a) authorizing entry into Agency Agreement,

(b) authorizing Break Up Fee and Expense Reimbursement for the Stalking Horse,

(c) authorizing proposed auction procedures (the "**Bidding Procedures**") and setting the time,

date and place of the auction (the "**Auction**") and (d) approving the form of notice of the

Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (ii) setting a hearing

(the "**Sale Hearing**"), to be held on January [_], 2015, to consider the entry of the Approval

Order all as more fully set forth in the Motion; and upon the *Declaration of Dawn Robertson in*

*Support of First Day Motions* and the *Declaration of Derek Pitts in Support of the Debtors'*

*Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding*

---

[1]     The Debtors, together with the last four digits of each Debtor's tax identification number, are: Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4755), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842). The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA 19114.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement.

1

*Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief;* and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.       Good and sufficient notice of the Bidding Procedures and other related relief sought pursuant to the Motion has been given to all interested persons and entities, including, without limitation, (a) all parties provided with notice of the Motion; (b) all parties identified by the Debtors or their advisors as potentially interested purchasers; (c) all potential assigned contract counterparties; (d) all parties known or reasonably believed to have expressed an interest in the Assets; (e) all parties who are known to possess or assert a secured claim against the Assets; and (f) the relevant taxing authorities having jurisdiction over any of the Assets.

---

[3]       The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Any remaining objections to the Motion with respect to the relief granted in this

Order, or the relief requested therein that have not been withdrawn, waived, or settled, and all

reservations of rights included in such objections are overruled in all respects and denied.

C.      The form of the Agency Agreement is hereby approved and is appropriate and

reasonably calculated under the circumstances to enable the Debtors and other parties-in-interest

to easily compare and contrast the differing terms of the bids presented at the Auction.

D.      The Bidding Procedures, substantially in the form attached hereto as Exhibit 1,

are fair, reasonable and appropriate under the circumstances and are designed to maximize the

Debtors' recovery with respect to the sale of the Assets, including sale of the Merchandise and

Owned FF&E through the Store Closing Sales or to a Successful Bidder proposing an

Alternative Transaction, including a going concern sale.

E.      The Debtors' proposed Auction Notice, substantially in the form attached hereto

as Exhibit 2, is appropriate and reasonably calculated under the circumstances to provide all

interested parties with timely and proper notice of the Bidding Procedures, the related Auction (if

necessary), the Sale Hearing, and any and all objection deadlines and no other or further notice is

required.

F.      The proposed notice substantially in the form attached hereto as Exhibit 3 to be

served on counterparties to Assumed Contracts ("**Cure Notice**") is reasonably calculated to

provide adequate notice concerning the proposed sale of the Assets and any proposed assumption

and assignment of Assumed Contracts and will provide due and adequate notice of the relief

sought in the Motion.

G.      Under the circumstances, timing and procedures set forth herein, in the Motion

and in the Agency Agreement, the Debtors have demonstrated compelling and sound business

3

justifications for entry into the Agency Agreement and its terms, including, without limitation, the Break-Up Fee and Expense Reimbursement and Stalking Horse's actual out-of-pocket costs of signage and freight as provided in the Agency Agreement (collectively, the "**Bidding Protections**").

H.    The Bidding Protections were: (a) negotiated by the Debtors and the Stalking Horse in good faith and at arm's-length, (b) are reasonable and appropriate under the circumstances given, among other things, the size and nature of the transaction and the efforts that have been expended and will continue to be expended by the Stalking Horse and (c) are a reasonable inducement for, and a condition of, the Stalking Horse's offer to serve as the Debtors' exclusive agent to conduct the Transaction on the terms set forth in the Agency Agreement and compensation for the risks and lost opportunity costs incurred by the Stalking Horse.  The Bidding Protections are commensurate with the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse and constitute actual and necessary costs and expenses incurred by the Debtors in preserving the value of their estates within the meaning of section 503(b) of the Bankruptcy Code.

I.    Entry into the Agency Agreement with the Stalking Horse is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest and, based on the information set forth in the Motion and presented to the Court, is an appropriate exercise of the Debtors' business judgment.  The Agency Agreement will enable the Debtors to secure an adequate consideration floor for the Auction and will provide a clear benefit to the Debtors' estates and all other parties-in-interest.

J.    The Transaction does not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

4

K.      No other or further notice shall be required. No finding or ruling is made in this

Bidding Procedures Order as to the adequacy of any proposed transaction, it being intended that

such approval will be sought at the Sale Hearing.

L.      No person or entity, other than the Stalking Horse, shall be entitled to any expense

reimbursement, break up fee, "topping," termination or other similar fee or payment.

**IT IS HEREBY ORDERED THAT:**

1.      The procedural relief requested in the Motion is GRANTED.

2.      The Debtors are authorized to enter into the Agency Agreement and all of its

terms (including the Bidding Protections) and the Transaction with the Stalking Horse, the

Bidding Procedures, Auction Notice, setting the time, date and place of Sale Hearing, are hereby

APPROVED, and fully incorporated into this Order, and shall apply with respect to the proposed

Transaction. The Debtors are authorized to take any and all actions necessary or appropriate to

implement the Agency Agreement.

3.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are approved. The Debtors

are hereby authorized to conduct an auction of the Assets pursuant to the Bidding Procedures and

this Order.

4.      The Stalking Horse shall be deemed a Qualified Bidder pursuant to the Bidding

Procedures for all purposes with respect to the Merchandise and Owned FF&E and shall be

permitted to participate and bid for the Merchandise and Owned FF&E at the Auction.

5.      The Bidding Procedures shall apply to the Qualified Bidders and the conduct of

the sale of the Assets and the Auction.

6.      The Bidding Protections are approved in accordance with the Bidding Procedures

and the Agency Agreement. In the event that the Agency Agreement is not consummated with

the Stalking Horse because the Debtors elect as a consequence of the Auction to terminate the Agency Agreement and pursue an alternative higher or otherwise better transaction with respect to the Merchandise and Owned FF&E or as a going concern sale, the Bidding Protections, where applicable, shall be paid to the Stalking Horse from the proceeds of an Alternative Transaction as set forth in Section 16 of the Agency Agreement; *provided, however*, that in such event, the Successful Bidder shall reimburse the Stalking Horse up to the amount of the Signage Costs (as such term is defined in the Agency Agreement; *provided further* that in no event shall the Debtors have any liability for such Signage Costs.  Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay, without further order of this Court, the Bidding Protections pursuant to the terms and conditions set forth in the Agency Agreement and this Order.

7.      The Auction Notice, substantially in the form attached hereto as Exhibit 2, shall be deemed good and sufficient notice of the Bidding Procedures and any related Auction, the Sale Hearing and the associated objection periods, and is reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction and Sale Hearing.

8.      The Cure Notice, substantially in the form attached hereto as Exhibit 3 to be served on counterparties to Assumed Contracts ("**Cure Notice**") is reasonably calculated to provide adequate notice concerning the proposed sale of the Assets and any proposed assumption and assignment of Assumed Contracts and will provide due and adequate notice of the relief sought in the Motion.

9.      Within three (3) business days after entry of this Order, to the extent the Debtors determine in their discretion that providing such notice is in the best interests of their estates, the Debtors (or their agent) shall serve the Auction Notice upon all Notice Parties.

10.      Within three (3) business days after entry of this Order, the Debtors shall file and serve the Cure Notice to the counterparties to any Assumed Contracts.  Counterparties to the Assumed Contracts[4] (each a "**Counterparty**," and together, the "**Counterparties**") must file and serve any objection to the assumption and assignment of any Assumed Contract, including objections to any Cure Cost, so that such objections are received by **January     , 2015 at 5:00 p.m. (Eastern Standard Time)**.

11.      In the event that an objection to any Cure Cost is timely filed by a Counterparty, such Counterparty's objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the Cure Cost, and (iii) appropriate documentation in support of the alleged alternative Cure Cost.  In the event that the Debtors and the Counterparty cannot consensually resolve the Counterparty's objection to the Cure Cost, the Successful Bidder or any other assignee will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

12.      Any Counterparty failing to timely file an objection to the Cure Cost set forth in the Cure Notice shall be deemed to consent to the assumption and assignment of the applicable Assumed Contract and forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty.  For the avoidance of doubt,

---

[4] The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as an Assumed Contract.

7

no executory contract or unexpired lease will be assumed or assumed and assigned pursuant to the Motion.

13.    All other objections to approval of the Transaction, including the Sale of the Assets free and clear of liens, claims and encumbrances and the Approval Order must be in writing, state the basis of such objection with specificity and be filed with this Court in compliance with the Bankruptcy Rules and the Local Rules and served so as to be received by the Bid and Objection Notice Parties on or before 5:00 p.m. (Eastern Standard Time) on January __, 2015.

14.    Except as otherwise provided in the Agency Agreement, the Bidding Procedures or this Order, the Debtors may, as they may reasonably determine to be in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest:  (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the Successful Bid; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors or their estates; (d) remove any material Assets from the Auction; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing in open Court without further notice; (i) modify the Bidding Procedures or (j) withdraw the Motion at any time with or without prejudice.

15.    If no Qualified Bid other than the Qualified Bid submitted by the Stalking Horse is received by the Bid Deadline, then the Auction will not be held and the Debtors shall promptly seek this Court's approval of the Agency Agreement with the Stalking Horse.

16.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Store Closing Sales.

17.    Bidding at the Auction shall be transcribed.

18.    Only Qualified Bidders will be permitted to submit bids at the Auction.

19.    The Sale Hearing will be held in this Court on **January __, 2015 at __:00 _.m. (Eastern Standard Time)**.  The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Stalking Horse, without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

20.    All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Transaction and the construction and enforcement of the Agency Agreement.

21.    In the event there is a conflict between this Order and the Motion or the Agency Agreement, this Order shall govern and control.

22.    The Debtors are hereby authorized to take such steps and incur such expenses as may be reasonably necessary or appropriate to effectuate the terms of this Order.

23.    This Order is binding on any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors' cases are proceeding under Chapter 7 or Chapter 11 of the Bankruptcy Code.

24.    Notwithstanding any applicability of Bankruptcy Rules 6004 and 6006 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9

25.     The Stalking Horse's right to receive payment of the Bid Protections and reimbursement of the Signage Costs from the proceeds of an Alternative Transaction as provided in Section 16 of the Agency Agreement shall be the sole and exclusive remedy of the Stalking Horse in the event of termination of the Agency Agreement

26.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Protections or the Agency Agreement.

Dated:  Wilmington, Delaware
          December __, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

DOCS_LA:283854.8  17794-001

# EXHIBIT 1

## Bidding Procedures

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the sale (the "**Sale**") of the following classes of assets (each, an "**Asset Class**" and collectively, the "**Assets**") of Deb Stores Holding LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in connection with their jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), lead case number 14-12676 (MFW): (i) inventory, (ii) furniture, fixtures and equipment ("**Owned FF&E**"), (iii) intellectual property, (iv) accounts receivable and cash on hand in the stores or other closing locations, (v) real property leases and (vi) customer lists. For the avoidance of doubt, the Debtors may solicit, and shall be entitled to consider and accept, bids for all or a portion of the Assets as part of a going concern sale.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE DEBTORS' ADVISORS, AS FOLLOWS:**

Laura Davis Jones Esq. and David Bertenthal, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com

Derek Pitts and Surbhi Gupta
Houlihan Lokey Capital, Inc.
245 Park Avenue, 20th Floor
New York, New York 10167
Phone: (212) 497-4100
Facsimile: (212) 661-3070
Email: dpitts@hl.com
        sgupta@hl.com

### A.    Sale

The Debtors seek to sell the Assets in all Asset Classes described above, pursuant to the Bidding Procedures as set forth herein.

### B.    Stalking Horse Agency Agreement

With respect to the Debtors' inventory (the "**Merchandise**") and furniture, fixtures and equipment ("**Owned FF&E**"), the Debtors and a contractual joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "**Stalking Horse**") have entered into that certain Agency Agreement, dated as of December 4, 2014 (the "**Stalking Horse Agency Agreement**"), attached hereto as Exhibit 1, pursuant to which the Stalking Horse will, among other things, acquire the Merchandise and

1

conduct chain-wide store closing sales (the "**Store Closing Sales**"), as well as act as the Debtors' exclusive agent to sell Owned FF&E at the Debtors' stores, distributions centers, corporate headquarters and other corporate offices owned by the Debtors.

Pursuant to the Stalking Horse Agency Agreement, the Debtors seek to sell the Merchandise and Owned FF&E from all of their retail locations and, at the Stalking Horse's option, e-commerce platforms and the Owned FF&E from the Debtors' warehouse, distribution facilities and corporate offices as described in the Stalking Horse Agency Agreement. The Sale is on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the Stalking Horse Agency Agreement and as approved by the Bankruptcy Court.

Further, except as otherwise provided in the Stalking Horse Agency Agreement and as approved by the Bankruptcy Court, all of the Debtors' right, title and interest in and to the Assets will be sold free and clear of all liens, claims, interests and encumbrances thereon to the maximum extent permitted by section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), with such liens to attach to the net proceeds of the Sale with the same validity and priority as such liens had against the Assets.

The ability to undertake and consummate the Sale pursuant to the Stalking Horse Agency Agreement shall be subject to competitive bidding as set forth herein and approval by the Bankruptcy Court. The Debtors may consider bids for all or a portion of the Assets in a single bid from a single bidder, or multiple bids from multiple bidders, including bids on individual Asset Classes.

## C.    The Bidding Procedures

### 1.    Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court, prior to **4:00 p.m. prevailing Eastern time on December    , 2014** (the "**Bid Deadline**"), each entity, other than the Stalking Horse, that wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (defined below):

(a)    a written disclosure of the identity of each entity, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets or certain Asset Classes;

(b)    adequate assurance information, including (a) adequate information (in the Debtors' reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed transaction;

(c)      an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

(d)      a *bona fide* non-binding letter of intent or expression of interest with respect to a purchase of the Assets or certain Asset Classes which shall describe, among other things, the cash, financing commitments, or other sources of consideration that the Potential Bidder will use to consummate the proposed transaction, which of the Debtors' Assets or certain Asset Classes are proposed to be acquired in the proposed transaction, and any conditions to consummating the proposed transaction including any required internal approvals, syndication requirements, or other contingencies or approvals.

A Potential Bidder that the Debtors determine in their reasonable business judgment, after consultation with their advisors, counsel to any official committee of unsecured creditors appointed in these chapter 11 cases (the "**Committee**"), and counsel to PNC Bank, as lender under the Debtors' postpetition debtor in possession financing agreement (the "**DIP Lender**") and the prepetition term loan lenders (together with the DIP Lender, the "**Secured Lenders**") is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder.**" The Debtors will provide access to due diligence only to those parties they believe, in the exercise of their reasonable business judgment, are pursuing a proposed transaction in good faith.

As promptly as practicable after a Potential Bidder delivers the materials required above, the Debtors, in consultation with the Committee and the Secured Lenders, will make their determination and notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

## 2.  *Due Diligence*

The Debtors will afford any Qualified Bidder such due diligence access or additional information as the Debtors deem appropriate, in their reasonable discretion.  Any due diligence materials requested by any bidder shall be made available to bidders and the Stalking Horse in the data room, subject to such protections as the Debtors determine in their reasonable business judgment.

The due diligence period will extend through and including the Bid Deadline; *provided, however,* that any Qualified Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

## 3.  *Provisions Governing Qualified Bids*

A bid will be considered a qualified bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**") as determined by the Debtors in their business judgment:

(a)      states with specificity the Asset Classes such Qualified Bidder offers to purchase, in cash, (which shall consist of at least the Asset Classes

3

described in the non-binding letter of intent submitted by such Qualified Bidder) and the liabilities and obligations to be assumed by the Qualified Bidder upon the terms and conditions set forth in an agency agreement based on the form of Stalking Horse Agency Agreement submitted by the Stalking Horse, as modified to reflect such Qualified Bidder's proposed transaction (an "**Alternative Transaction Agreement**");

(b)     discloses any connection or agreements with the Debtors, the Stalking Horse, any other known Potential Bidder and/or any officer, director or equity security holder of Deb Stores Holding LLC;

(c)     includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the date that is three business days after the commencement of the Store Closing Sales or, if a going-concern bid is the Successful Bid, until the closing of the Sale;

(d)     contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, inventory evaluation or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

(e)     includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Stalking Horse Agency Agreement or Alternative Transaction Agreement;

(f)     includes a duly authorized and executed copy of the Stalking Horse Agency Agreement or Alternative Transaction Agreement (including all exhibits and schedules thereto), together with copies marked to show any amendments and modifications to (a) the Stalking Horse Agency Agreement and (b) the proposed Approval Order;

(g)     includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(h)     includes an acknowledgement and representation that the Qualified Bidder:  (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties

4

whatsoever, whether express or implied, regarding the Assets or the completeness of any information provided except as expressly stated in the Stalking Horse Agency Agreement or Alternative Transaction Agreement; and (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid;

(i) is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, in an amount equal to ten percent of the value of such Qualified Bidder's Qualified Bid (as quantified by the Debtors) (the "**Deposit**");

(j) is accompanied by a letter (a) stating with specificity the Assets or Asset Classes such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are substantially the same as or better than those of the Stalking Horse bid, to the extent the bid is on the same Asset Class as the Stalking Horse bid, (c) stating that its offer is a *bona fide* offer that it intends to consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(k) contains such other information as is requested by the Debtors in their sole business judgment; and

(l) is received prior to the Bid Deadline.

The Debtors will notify all Qualified Bidders by not later than two business days after the Bid Deadline as to whether or not *any* bids constitute Qualified Bids with respect to any Asset Class and whether *such* Qualified Bidder's bid constitutes a Qualified Bid. The Debtors retain the right, upon consultation with the Secured Lenders and the Committee, to waive or modify the terms of the Bidding Procedures when determining which bids (other than the Stalking Horse Agency Agreement, which shall constitute a Qualified Bid) may be deemed Qualified Bids, *provided, however*, that waiver by the Debtors of the requirement of a Deposit set forth in clause subparagraph C.3(i) above is subject to the prior consent of the Secured Lenders. As soon as reasonably practicable after the Debtors determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Stalking Horse by e-mail.

The Stalking Horse shall be deemed a Qualified Bidder for all purposes with respect to any Asset Class proposed to be acquired by the Stalking Horse bid and shall not be required to comply with the requirements in Section B.3 hereof, *provided* that such bid by the Stalking Horse with respect to additional Asset Classes not otherwise contemplated by the Stalking Horse Agency Agreement is delivered to the Notice Parties by the Bid Deadline.

### 4. *Bid Deadline*

DOCS_LA:283854.8 17794-001

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**") so as to be received not later than the Bid Deadline of **4:00 p.m. prevailing Eastern time on December    , 2014**:

**INSERT NOTICE PARTIES**

| | |
|---|---|
| Laura Davis Jones Esq. and David Bertenthal, Esq. | Derek Pitts and Surbhi Gupta |
| | Houlihan Lokey Capital, Inc. |
| Pachulski Stang Ziehl & Jones LLP | 245 Park Avenue, 20th Floor |
| 919 North Market Street, 17th Floor | New York, New York  10167 |
| Wilmington, Delaware 19801 | |

The Bid Deadline may be extended by the Debtors with the consent of the Stalking Horse and each of the Notice Parties (which consent shall not be unreasonably withheld).

### 5.  Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors as determined by the Debtors in their business judgment including, without limitation: (a) the amount of such bid; (b) the Asset Classes included in such bid, (c) the risks and timing associated with consummating such bid; (d) any proposed revisions from the Stalking Horse Agency Agreement and/or the Approval Order; and (e) any other factors deemed relevant by the Debtors in their reasonable business judgment, upon consultation with the Secured Lenders.

### 6.  No Auction if No Qualified Bids

If the Debtors receive no more than one Qualified Bid (including the Stalking Horse bid) on each Asset Class, the Debtors will not hold the Auction and instead shall request at the Sale Hearing (defined below) that the Bankruptcy Court approve the Stalking Horse Agency Agreement with the Stalking Horse.

### 7.  Auction Process

If the Debtors receive more than one Qualified Bid for the Assets or any Asset Class (including the Stalking Horse bid), the Debtors will conduct an auction, which will be transcribed, at **10:00 a.m. prevailing Eastern Time on January    , 2014** (the "**Auction**") at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, or such other location as will be timely communicated to all entities entitled to attend the Auction.  The Auction will be conducted in accordance with the following procedures:

(a)     Only the Debtors, the Committee, the Secured Lenders, any Qualified Bidder that submitted a Qualified Bid, and the advisors to each of the foregoing, will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b)     Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding at the Auction.

(c)     At least one business day prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; *provided that* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid nevertheless will remain fully enforceable until the date of the selection of the Successful Bidder and the Back-Up Bidder.

(d)     At least one business day prior to the Auction, the Debtors, in their reasonable discretion, after consultation with the Committee and with the consent of the Secured Lenders, will determine which Qualified Bid(s) are the highest or otherwise best Qualified Bid(s) for (x) the Assets (the "**Highest or Best Asset Bid**"), and/or (y) each Asset Class (each highest or best Qualified Bid for an Asset Class, the "**Highest or Best Asset Class Bid**") and will provide copies of the Highest or Best Asset Bid and/or the Highest or Best Asset Class Bid to the other Qualified Bidders.

(e)     For the Asset Classes of Merchandise and Owned FF&E, to the extent that there is more than one Qualified Bid for such Asset Class, the bidding will start at an amount equal a Guaranty Percentage of not less than 100.25% (as quantified by the Debtors), plus each competing bidder shall agree to reimburse the Debtors for the Signage Costs to be paid to the Stalking Horse, with successive overbids in increments of not more than 0.10% absent the Stalking Horse's consent.  In no event shall the Signage Costs be payable by the Debtors.  Bidding at the Auction will continue in increments of at least 0.10% (each successive bid, an "**Inventory Overbid**").  An Inventory Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtors accept an alternate Qualified Bid as the Highest or Best Asset Bid for the Asset Class (or for a group of Asset Classes containing the Asset Class). During the course of the Auction, the Debtors shall, after submission of each Inventory Overbid, promptly inform each participant which Inventory Overbid reflects, in the Debtors' view, the highest or otherwise best offer

(f)     For each Asset Class other than inventory and Owned FF&E, to the extent that there is more than one Qualified Bid for a particular Asset Class, the Auction shall commence with bidding on such Asset Class at the amount equal to the Highest or Best Asset Class Bid applicable to such Asset Class.  Bidding on such Asset Class will continue in increments of at least $50,000 (each successive bid, an "**Asset Class Overbid**").  An Asset Class Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtors accept an alternate Qualified Bid as the Highest or Best Asset Class Bid on such Asset Class. During the course of the Auction, the Debtors shall, after submission of each Asset Class Overbid, promptly inform each participant which Asset Class Overbid reflects, in the Debtors' view, the highest or otherwise best offer for such Asset Class. When bidding on individual Asset Classes for which more than one Qualified Bid was received concludes, the Debtors, after

7

consultation with the Committee and the Secured Lenders, shall determine a highest or otherwise best bid with respect to each Asset Class (each highest or best bid after conclusion of the auction, the "**Winning Asset Class Bid**"). To the extent a particular Asset Class did not receive more than one Qualified Bid (and accordingly, was not subject to the auction procedures set forth above in this paragraph), the Highest or Best Asset Class Bid shall be deemed to be the Winning Asset Class Bid for such Asset Class, subject to the provisions of these Bidding Procedures.

(g)     If there is a Highest or Best Asset Bid, after determination of each Winning Asset Class Bid, the Debtors shall hold an auction for the Assets. If the Winning Asset Class Bids, in the aggregate, or a Qualified Bidder for the Assets, are selected as the Highest or Best Asset Bid, then bidding will start at the aggregate consideration for the Winning Asset Class Bids or such Qualified Bidder's bid, plus $100,000. Bidding at the Auction will continue in increments of at least $100,000 (each successive bid, an "**All Assets Overbid**"). An All Assets Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtors accept an alternate Qualified Bid(s) as the Highest or Best Asset Bid. During the course of the Auction, the Debtors shall, after submission of each All Assets Overbid, promptly inform each participant, which All Assets Overbid reflects, in the Debtors' view, the highest or otherwise best offer. For the avoidance of doubt, Asset Class bidders may make joint All Assets Overbids.

(h)     The Debtors, after consultation with their advisors, the Secured Lenders and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in these cases and (b) disclosed to each Qualified Bidder at or prior to the Auction.

(i)     Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by the Asset Class Overbid and/or Overbid, the Debtors will give effect to any additional costs to be assumed by a Qualified Bidder and any additional costs or risks which may be imposed on the Debtors by any such Asset Class Overbid and/or All Assets Overbid.

All Qualified Bidders at the Auction and the Stalking Horse shall be deemed to have consented and submitted to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing or solicitation process, the Auction and the construction and enforcement of the Qualified Bidder's contemplated transaction documents, as applicable.

8

### 8. Selection of Successful Bid

At or prior to the conclusion of the Auction, the Debtors, in consultation with their advisors, the Committee, and the Secured Lenders, will review and evaluate each Qualified Bid in accordance with these Bidding Procedures and determine in their reasonable business judgment which offer is the highest or otherwise best offer from among the Qualified Bids for the Assets or for each of the Asset Classes submitted at the Auction (each, a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bids. The determination of the Successful Bids by the Debtors at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

As soon as reasonably practicable after conclusion of the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bids and (b) the Debtors will file a notice with the Bankruptcy Court identifying the Successful Bidder and the Successful Bids, which will include copies of the Stalking Horse Agency Agreement or applicable Alternative Transaction Agreements and the proposed form of Approval Order, in each case in the forms agreed to between the Debtors and the Successful Bidder marked to show all amendments and modifications made to the Stalking Horse Agency Agreement submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and proposed Approval Order attached to the Motion.

The Debtors will sell the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) as set forth in each Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtors' acceptance of the Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court.

### 9. Return of Deposits

All Deposits will be returned to each Qualified Bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder no later than three business days after the commencement of the Store Closing Sales or, if a going-concern bid is the Successful Bid, until the closing of the Sale.

### 10. Forfeit of Deposits

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtors' estates without any further order of the Bankruptcy Court. The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtors and their estates may have against such Successful Bidder.

### *11. Back-Up Bidder*

If an Auction is conducted, the Qualified Bidder(s) with the second highest or otherwise best Qualified Bid at the Auction for the Assets or for any Asset Class, as determined by the Debtors in the exercise of their business judgment, and upon consultation with the Secured Parties, will be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is three business days after the commencement of the Store Closing Sales or, if a going-concern bid is the Successful Bid, until the closing of the Sale.  Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the Assets or applicable Asset Class, and the Debtors will be authorized but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court.  The Back-Up Bidder shall be required to close within three (3) business days following receipt of notice from the Debtors of the Successful Bidder's failure to close, *provided, however*, that in the event the Stalking Horse is the Back-Up Bidder, the Stalking Horse shall be required to close only if such closing occurs prior to [January 9, 2015].

**D.      The Sale Hearing**

The Debtors will seek entry of the Approval Order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") no later than January 7, 2015 to request the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of Successful Bidder Agreement.

**E.      Credit Bidding**

Any credit bid accepted by the Debtors as a Qualified Bid must provide for the payment in cash of the Stalking Horse's Break-Up Fee and Expense Reimbursement including any Signage Costs provided for in Section 16 of the Stalking Horse Agency Agreement.

10

**<u>EXHIBIT 2</u>**

**Auction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                            :
                                            :
                                            :       Chapter 11
In re:                                      :
                                            :       Case No. 14 –12676 (MFW)
DEB STORES HOLDING LLC, et al.,¹            :
                                            :       (Jointly Administered)
                Debtors.                    :
                                            :       Ref. Docket No. _____
                                            :
-----------------------------------------------------------------x
```

## AUCTION NOTICE

      **PLEASE TAKE NOTICE** that Deb Stores Holding LLC, on behalf of itself and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), on December 4, 2014, filed a motion (the "**Motion**")² for entry of an order (the "**Bidding Procedures Order**"), (i) authorizing entry into Agency Agreement, (ii) authorizing Break Up Fee and Expense Reimbursement for the Stalking Horse, (iii) authorizing proposed auction procedures (the "**Bidding Procedures**") and setting the time, date and place of the auction (the "**Auction**") and (iv) approving the form of notice of the Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (v) setting a hearing (the "**Sale Hearing**"), to be held on January __, 2015, to consider the entry of the Approval Order.

      **PLEASE TAKE FURTHER NOTICE** that, on December [●], 2014, the Court entered an Order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, which Bidding Procedures Order governs selection of one or more Successful Bidders for the Debtors' Assets.

      **PLEASE TAKE FURTHER NOTICE** that the Motion also seeks to sell inventory, furniture, fixtures and equipment, intellectual property, accounts receivable and cash on hand in the stores or other closing locations, real property leases and customer lists free and clear of all liens, claims, interests and Liens pursuant to section 363 of the Bankruptcy Code, either on a going-concern basis or via chain-wide store closing sales and liquidation.

      **PLEASE TAKE FURTHER NOTICE** that any bidder that desires to make a bid in the Auction must deliver written copies of its bid to the Bid and Objection Notice Parties (defined below) so as to be received not later than **4:00 p.m. prevailing Eastern time on December     , 2014** (the "**Bid Deadline**").

---

¹ The Debtors, together with the last four digits of each Debtor's tax identification number, are: Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4455), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842). The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA 19114.

² Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

**PLEASE TAKE FURTHER NOTICE** that the Auction will be held at **10:00 a.m. prevailing Eastern Time on January ___, 2015** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider, among other things, the Agency Agreement or Alternative Transaction Agreement with the party or parties submitting the highest or otherwise best bid at the Auction, will be held at **10:00 a.m. prevailing Eastern Time on January ___, 2015** before The Honorable Mary Walrath, United States Bankruptcy Judge, in Courtroom 4, 824 N. Market Street, 5th Floor, Wilmington, Delaware 19801, or as soon thereafter as the Debtors may be heard (the "**Sale Hearing**"). The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Stalking Horse, without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "**Bid and Objection Notice Parties**": **(a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones and David M. Bertenthal; (b) the Debtors' investment banker, Houlihan Lokey Capital, Inc., 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: Derek Pitts and Surbhi Gupta; (c) co-counsel to the prepetition term loan agent, Klee, Tuchin, Bogdanoff & Stern LLC, 1999 Avenue of the Stars, Los Angeles, California 90067, Attn: Michael L. Tuchin and David A. Fidler; (d) co-counsel to the prepetition term loan agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox; (e) counsel to the prepetition revolving loan lender and DIP lender, Hahn & Hesson LLP, 488 Madison Avenue, New York, New York 10022, Attn: Joshua I. Divack and Daniel M. Ford; (f) counsel for any committee appointed in these chapter 11 cases; (g) the U.S. Trustee, 855 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Mark Kenney; (h) Hilco Merchant Resources, LLC 5 Revere Drive, Suite 206, Northbrook, IL 60062, Attn: Ian S. Fredericks; (i) Gordon Brothers Group, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199, Attn: Michael D. Chartock and (j) counsel to the Stalking Horse, DLA Piper LLP (US), 203 N. LaSalle St., Suite 1900, Chicago, Illinois 60601, Attn: Chris Dickerson.**

**PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BIDDING PROCEDURES ORDER AND BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED SALE TRANSACTION.**

**PLEASE TAKE FURTHER NOTICE** that this Auction Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties-in-interest to review such documents in their entirety. The Motion, Agency Agreement, Bidding Procedures Order, Bidding Procedures or any other pleadings may be found at the Debtors' Website (http://dm.epiq11.com/DebStores) or, for a fee, at the Court's

website (http://www.deb.uscourts.gov/) for registered users of the Public Access to Court Electronic Records (PACER) System.

DOCS_LA:283854.8  17794-001

Dated: Wilmington, Delaware
       December [•], 2014

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

    Laura Davis Jones (Bar No. 2436)
    David M. Bertenthal (CA Bar No. 167624)
    Joshua M. Fried (CA Bar No. 181541)
    919 North Market Street, 17th Floor
    P.O. Box 8705
    Wilmington, DE  19899-8705
    Telephone: 302/652-4100
    Facsimile:  302/652-4400
    E-mail:    ljones@pszjlaw.com
              dbertenthal@pszjlaw.com
              jfried@pszjlaw.com

    Proposed Counsel to the Debtors and Debtors in Possession

## Exhibit 3

## Cure Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------x
                                                :
                                                :
                                                :      Chapter 11
In re:                                          :
                                                :      Case No. 14 –12676 (MFW)
DEB STORES HOLDING LLC, et al.,¹               :
                                                :      (Jointly Administered)
                       Debtors.                 :
                                                :      Ref. Docket No. _____
-------------------------------------------------------------------x
```

## UNEXPIRED LEASE OR EXECUTORY CONTRACT ASSUMPTION AND CURE NOTICE

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (the "Debtors") have filed a motion (the "Motion") seeking authority, in part, to conduct an auction for the sale to the successful bidder(s) ("Successful Bidder(s)") of the Debtors' (i) inventory, (ii) furniture, fixtures and equipment, (iii) intellectual property, (iv) accounts receivable and cash on hand in the stores or other closing locations, (v) real property leases and (vi) customer lists (each, an "Asset Class" and collectively, the "Assets"), either on a going-concern basis or via chain-wide store closing sales (the "Store Closing Sales") and liquidation.

      **PLEASE TAKE FURTHER NOTICE** that, on December __, 2014, the Court entered an order [Docket No. _____] (the "Procedures Order") approving the following cure procedures (the "Cure Procedures"):

- Notice and Payment of Cure Cost.  Under the Procedures Order, the Debtors are sending this notice (the "Cure Notice") listing the contracts and leases to be assumed and assigned and the corresponding cure costs (the "Cure Costs") **on Exhibit A attached hereto** by first-class mail to each contract counterparty of an unexpired lease or executory contract that the Debtors intend to assume and assign to the Successful Bidder(s).

      **If a counterparty to such Assumed Contract does not object to the relevant Cure Costs by January ___, 2015 at 5:00 p.m. (Eastern Time), in the manner set forth below, then such Cure Cost shall be fixed and shall be paid by the Debtors in cash to the counterparty.**

      If the counterparty objects, then as set forth in this Cure Notice, such counterparty shall have the opportunity to appear before the Court at a hearing (the "Cure Objection Hearing") to determine the Cure Costs.  The Cure Objection Hearing will be held to consider any objections filed to the assumption and assignment of

---

¹ The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4455), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842).  The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA 19114.

the Assumed Contracts at the Courtroom of Judge Mary Walrath, United States Bankruptcy Judge for the District of Delaware, **at January ___, 2015 at ___ : 0 __.m. (Eastern Standard Time)**, or at such time thereafter as counsel may be heard.

In order for the Debtors to assume and assign any of the Assumed Contracts, the Debtors must pay the Cure Costs determined by the Court (if the counterparty objects) or set forth in this Cure Notice (if there is no objection).

- Cure Objection Procedures.  Any objection filed to the assumption and assignment of the Assumed Contracts (a "Cure Objection") must:  (a) identify the Assumed Contract to which the objector is a party; (b) describe with particularity any Cure Costs the claimant contends is required under Bankruptcy Code section 365 (the "Cure Claim") and identify the grounds for the alleged Cure Claim under the Contract, if applicable; (c) attach all documents supporting or evidencing the Cure Claim, if applicable; and (d) be filed with the Court and served upon the following notice parties:  (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn:  Laura Davis Jones and David M. Bertenthal; (ii) co-counsel to the prepetition term loan agent, Klee, Tuchin, Bogdanoff & Stern LLC, 1999 Avenue of the Stars, Los Angeles, California 90067, Attn: Michael L. Tuchin and David A. Fidler; (iii) co-counsel to the prepetition term loan agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox; (iv) counsel to the prepetition revolving loan lender and DIP lender, Hahn & Hesson LLP, 488 Madison Avenue, New York, New York 10022, Attn:  Joshua I. Divack and Daniel M. Ford; (v)  counsel for any committee appointed in these chapter 11 cases; and (vi) the U.S. Trustee, 855 King Street, Suite 2207, Wilmington, Delaware  19801, Attn:  Mark Kenney, so as to be actually received no later than **January ___, 2015 at 5:00 p.m. (Eastern Standard Time).**

- Adequate Assurance Objection.  Any objection based upon adequate assurance of future performance under Section 365 of the Bankruptcy Code may be filed at or prior to the Sale Hearing ("Adequate Assurance Objection"). Provided that the Debtors receive a written request, the Debtors will provide copies of each Qualified Bid (as defined in the Sale Motion) to any non-debtor counterparties to executory contracts and unexpired leases that are proposed to be assumed and assigned under any Qualified Bid (as defined in the Motion).

- **Failure to Timely File Cure Objection.  If a Cure Objection is not timely and properly filed and served in accordance with the Cure Procedures, (i) the applicable Cure Cost shall be controlling with respect to the Assumed Contract notwithstanding anything to the contrary in any Assumed Contract or other document, and (ii) the non-Debtor party to the Assumed Contract shall be forever barred from asserting any other claim arising prior to the assignment against the Debtors or the Successful Bidder as to such Assumed Contract.**

- Reservation of Rights. The Debtors reserve all rights to (A) delete Assumed Contracts at the Debtors' sole discretion at any time prior to the later of (x) with respect to any specific Assumed Contract, five (5) days after the resolution of any dispute with a non-debtor party to such Assumed Contract where such resolution results in an increase in Cure Costs related to such Assumed Contract and (y) the date of the Closing, and (B) add Assumed Contracts from time to time at the Debtors' sole discretion prior to the conclusion of the hearing in the Bankruptcy Court to approve the sale of the Assets.

- Unresolved Cure Objections. The Successful Bidder shall have the right to settle any Cure Objection or Adequate Assurance Objection without further order of the Court. Any Cure Objections or Adequate Assurance Objections, if not consensually resolved, will be heard by the Court at the Cure Objection Hearing.

**PLEASE TAKE FURTHER NOTICE** that, as noted above, the Cure Objection Hearing will be held at the Courtroom of Judge Mary Walrath, United States Bankruptcy Judge for the District of Delaware, **on January    , 2015 at   :  0   .m. (Eastern Standard Time)**, or at such time thereafter as counsel may be heard. The Cure Objection Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Cure Objection Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Cure Notice and the Cure Objection Hearing is subject to the full terms and conditions of the Motion, the Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict. A copy of the Motion, the Procedures Order, the Cure Costs, and the Bidding Procedures may be obtained by request made to counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones, Telephone: (302) 652-4100, Facsimile: (302) 652-4400, email: ljones@pszjlaw.com.

**THE DEBTORS ENCOURAGE ALL CONTRACT PARTIES TO CAREFULLY REVIEW EXHIBIT A ATTACHED HERETO, AS WELL AS ALL TERMS AND CONDITIONS OF THE MOTION, THE PROCEDURES ORDER, AND THE BIDDING PROCEDURES.**

Dated: December __, 2014

Counsel for the Debtor
and Debtor-in-Possession:

Laura Davis Jones
David M. Bertenthal
Joshua M. Fried
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:      ljones@pszjlaw.com
              dbertenthal@pszjlaw.com
              jfried@pszjlaw.com

4