# EXHIBIT E

## Proposed Approval Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:

**DEB STORES HOLDING LLC, *et al.*,**[1]

                Debtors.

-------------------------------------------------------------x

**Chapter 11**

**Case No. 14-12676 (MFW)**

**(Jointly Administered)**

Ref. Docket No. _____

## ORDER APPROVING SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTOR'S ASSETS AND GRANTING RELATED RELIEF

Upon consideration of the *Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* (the "Motion");[2] and it appearing that the relief requested is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and the Debtors and a joint venture consisting of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agent") having agreed upon terms and

---

[1]    The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4755), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842).  The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA 19114.

[2]    All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion or in the Agency Agreement.

conditions for the Agent to act as the Debtors' exclusive agent to conduct sales (the "Sale") of certain of the Debtors' assets, including, without limitation, the Merchandise and FF&E ("Assets"), which terms and conditions are set forth in that certain Agency Agreement, by and between the Agent and Debtors, which is attached hereto as Exhibit A (the "Agency Agreement"); and the transaction represented by the Agency Agreement having been determined to be the highest and best offer for the Assets; and a hearing having been held on _____, 201_, whereupon the Court entered an Order approving bidding procedures [Docket No. ____] (the "Bidding Procedures Order"); and a sale hearing having been held on _____, 2015 (the "Sale Hearing") to consider the remaining relief requested in the Motion and approval of the Agency Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon the Declaration of Derek Pitts and upon all of the proceedings had before the Court (including but not limited to the testimony and other evidence proffered or adduced at the Sale Hearing); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.       **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of the Debtors' entry into

---

[2]   The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

the Agency Agreement, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

**B.**    **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

**C.**    **Statutory Predicates:**  The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

**D.**    **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding Procedures Order. No other or further notice is required.

**E.**    **Opportunity to be Heard:**  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee, (ii) counsel to PNC Bank, as lender under the Debtors' postpetition debtor in possession financing agreement (the "DIP Lender") and the prepetition term loan lenders (together with the DIP Lender, the "Secured Lenders"), (iii) the Office of the United States Attorney for the District of Delaware, [(iv) counsel to the Creditors' Committee,] (v) all parties who are known to assert any lien, claim, interest or encumbrance in or upon any of the Assets, (vi) all lessors of leases for the Closing Locations, (vii) all applicable federal, state, and local taxing authorities (collectively, the "Taxing Authorities"), (viii) all applicable state attorneys general and (ix) all other applicable parties in interest, including all entities on the

general case service list as of the date of entry of the Bidding Procedures Order ((i) through (xi)

collectively, the "Notice Parties"). Objections, if any, to the Motion have been withdrawn or

resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F.      **Marketing Process:** As demonstrated by: (i) the Robertson Declaration (ii) the

testimony and other evidence proffered or adduced at the Sale Hearing and (iii) the

representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly

marketed the Assets and have conducted the bidding solicitation fairly, with adequate

opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or

who the Debtors believed may have had an interest in acquiring or liquidating the Assets, to

submit competing bids. The Debtors and the Agent have respectively negotiated and undertaken

their roles leading to the Sale and entry into the Agency Agreement in a diligent, noncollusive,

fair and good faith manner. The Debtors have conducted the marketing and sale process as set

forth in and in accordance with the Motion and the Bidding Procedures Order.

G.      **Highest and Best Offer:** The Agency Agreement attached hereto as Exhibit A,

including the form and total consideration to be realized by the Debtors pursuant to the Agency

Agreement, (i) is the highest and best offer received by the Debtors for the Assets, (ii) is fair and

reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all

other parties in interest. There is no legal or equitable reason to delay entry into the Agency

Agreement, and the transactions contemplated therein, including, without limitation, the Sale.

H.      **Business Judgment:** The Debtors' decision to (i) enter into the Agency

Agreement, and (ii) perform under and make payments required by the Agency Agreement, is a

reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary

duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties

in interest.  The Debtors have articulated good and sufficient reasons for the approval of the Agency Agreement and the Transaction.

**I.**      **Personally Identifiable Information:**    The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).

**J.**      **Time of the Essence:**    Time is of the essence in effectuating the Agency Agreement and proceeding with the Sale contemplated therein without interruption.  Based on the record of the Sale Hearing, the Pitts Declaration, and for the reasons stated on the record at the Sale Hearing, the Sale under the Agency Agreement must be commenced as soon as possible following entry of this Order, but in no event later than January 9, 2015 (the "Sale Commencement Date"), to maximize the value that the Agent may realize from the Sale, and the value that the Debtors may realize from entering into the Agency Agreement.  Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a) and 6004(h) and permit the immediate effectiveness of this Order.

**K.**      **Sale Free and Clear:**    A sale of the Assets other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement,

contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of such Assets. But for the protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement. In addition, each entity with an Encumbrance upon the Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sale free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

L.        **Arms-length Sale:**  The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

M.        **Good Faith:**  The Debtors, their management and their board of managers, and the Agent, its members and its officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith.  The Agency Agreement between the Agent and the Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  The Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.  The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estate some or all of the Assets.  Neither the Debtors nor the Agent has engaged in any conduct that would cause or permit the Sale, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code.  The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders.  The Agent's prospective performance and payment

of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

**N.    Insider Status:** The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

**O.    Security Interests:** The liens provided for in the Agency Agreement and this Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement. In addition, the Secured Lenders which hold a security interest in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in Paragraphs 31 and 40 of this Order.

**P.    Corporate Authority:** Subject to the entry of this Order, the Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate or other power and

authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) have taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

Q.     **No Successor Liability:** No sale, transfer or other disposition of the Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtors or their respective estates.

R.     **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. Entry into the Agency Agreement does not constitute a sub rosa chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.     **Motion Granted, Objections Overruled**

1.     The relief requested in the Motion is granted as set forth herein.

2.     Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

**B.    Agency Agreement Approved and Authorized**

3.      The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to enter into and perform under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including (without limitation) the Debtors, the Committee, the Lender, any successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the Court)) is hereby approved in its entirety and is incorporated herein by reference.  The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

5.      Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale in accordance with the Agency Agreement and the sale guidelines (the "GOB Sale Guidelines") attached hereto as Exhibit B, which GOB Sale Guidelines are hereby approved in their entirety.

6.         Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.  Dawn Robertson, the Debtors' Chief Executive Officer and/or such other person(s) as are expressly designated to act on the Debtors' behalf, are specifically authorized to act on behalf of the Debtors in connection with the Sale and no other consents or approvals are necessary or required for the Debtors to carry out the Sale, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

**C.        Order Binding**

7.         This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

8.         This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary,

such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

**D.**       **Good Faith.**

9.        Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.  The reversal or modification on appeal of the authorization provided herein to enter into the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal.  The Agent is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.  The transactions contemplated

by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

### E.        Conduct of the Sale

10.        Except as otherwise provided in the Agency Agreement, and subject to the terms thereof, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all Merchandise, the Owned FF&E and other Assets to be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Secured Lenders whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing liens encumbering all or any portion of the Assets or the Proceeds thereof attaching only to the Guaranteed Amount and, subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other amounts payable to the Debtors under the Agency Agreement, with the same validity, priority, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.  For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the Sale.

11.        If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or

entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

12.     Subject to the closing of the Sale, all entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

13.     The Debtors and the Agent shall not extend the Sale Termination Date beyond April 30, 2015 unless extended by mutual written agreement of the Debtors and the Agent, and subject to the prior written consent of the Secured Lenders, in their sole discretion, following a commensurate extension of the expiration date of the Agent Letter of Credit.

14.     Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the GOB Sale Guidelines, and this Order.

15.      Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order or the Agency Agreement shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 19 hereunder. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the

Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

16.    <u>Disputes Between Government Units and the Debtor or the Agent</u>. To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to Sale (collectively, the "Liquidation Laws"), the following provisions shall apply:

a.    Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 16 and 17 herein, are authorized to conduct the Sale in accordance with the terms of this Order and the GOB Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.    Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be

held, (iii) the division of consumer protection for each state where the Sale will be held; and (iv) the chief legal counsel for the local jurisdiction.

c.    To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.    In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court grants authority for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the GOB Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to

assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

   e.  If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) through (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

   17.  Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the GOB Sale Guidelines, including, but not limited to, advertising the Sale as "going out of business," "total liquidation," "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

   18.  Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner

advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

19.    Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions. The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the GOB Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 16 and 17 (provided that in no event shall such Side Letters impose additional costs, expense or liability upon the Debtors). In the event of any conflict between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

20.    Except as expressly provided for herein or in the GOB Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 16 and 17 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting

for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Debtors' closing stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

21.     The Agent shall have the right to use the Debtors' closing stores and all related store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the GOB Sale Guidelines and this Order and subject to Paragraphs 16 and 17 of this Order and the terms of the Agency Agreement.

22.     Nothing in the Agency Agreement or this Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

23.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without incurring liability to any person or entity; provided, however, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any store (and, if applicable, the distribution center) on or after the

applicable Sale Termination Date, provided that the Debtors provide reasonable prior notice to the Secured Lenders of their intention to abandon assets that constitute the Secured Lenders' collateral. In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtor or other party in interest to object thereto.

24.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the Stores (collectively, "POS Equipment") that may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors shall remove or cause to be removed the Confidential Information from the POS Equipment.

25.     During the first 60 days of the Sale Term only, the Agent shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date, and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Section 8.7 of the Agency Agreement. During the first 30 days of the Sale Term only, the Agent shall accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Agent, and the Debtors shall reimburse Agent

for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Section 8.7 of the Agency Agreement.

26.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  Subject to the terms of the Agency Agreement, the Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

27.     During the Sale Term, the Agent shall be granted a limited license and right to use the trade names, logos and customer, mailing and e-mail lists, websites and social media relating to and used in connection with the operation of the stores as identified in the Agency Agreement, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not receive Personally Identifiable Information from the Debtors..

28.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective

bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

29.       The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  Subject to the terms of the Agency Agreement, the Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtor and account for sales taxes as and to the extent provided in the Agency Agreement.  This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

30.       Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Assets among the closing stores and the distribution center.  The Agent is authorized to sell the Debtor's furniture, fixtures and equipment and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement.

**F.       Liens Granted To Agent**

31.       Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have, effective upon payment by the Agent of the Initial Guaranty Payment on the Payment Date and delivery of the Letter of Credit to the Secured Lenders, a valid, duly perfected first priority,

senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Goods; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the Agency Agreement; (v) the FF&E Commission; (vi) the Agent's percentage share of such Sharing Amount, and (vii) all "proceeds" (within the meaning of Section 9 -102(a)(64) of the UCC as in effect in the State of Delaware) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of the Debtors to the Agent under the Agency Agreement. For the avoidance of doubt, the Agent Collateral shall not include the Guaranteed Amount, the Sharing Amount or any other amount payable by the Agent to the Debtors under the Agency Agreement or any proceeds thereof. Upon entry of this Order, payment of the Initial Guaranty Payment and delivery of the Letter of Credit to the Secured Lenders, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC -1 financing statements or any other documentation. Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Secured Lenders and the Debtors), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests; provided, however, that (x) until the Debtors receive payment in full of the Guaranteed Amount, the Additional Agent Goods Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) and such other amounts due to the Debtors under the Agency Agreement, the security interest granted to the Agent hereunder shall be junior and subordinate in all respects to the security interests of the Secured Lenders in the Agent

Collateral (subject to the carve out for professionals in the Bankruptcy Case) but solely to the extent and amount of the unpaid portion of the Guaranteed Amount, the Additional Agent Goods Fee, the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the FF&E Commission) and such other amounts due to the Debtors under the Agency Agreement and (y) upon payment in full of the Guaranteed Amount, the Additional Agent Goods Fee, the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the FF&E Commission) and such other amounts due to the Debtors under the Agency Agreement, any security interest or lien of the Secured Lenders in the Agent Collateral and the carve out for professionals in the Bankruptcy Case shall be junior and subordinate in all respects to the security interest and liens of the Agent in the Agent Collateral.   The Debtors shall cooperate with the Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by the Agent in connection with the security interests and liens granted under the Agency Agreement.   The Debtors will not sell, grant, assign or transfer any security interest in, or permit to exist any encumbrance on, any of the Agent Collateral other than in favor of the Agent, the DIP Agent and Secured Lenders, except to the extent that such security interest in, or encumbrance on any of the Agent Collateral is junior in priority to the senior security interests granted herein to the Agent. In the event of a Default by any Debtor under the Agency Agreement, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code as the same may be in effect from time to time in the State of Delaware.

### G.  Back-Up Bidder

32.      In the event that the Agent is unable to close on the Transaction in accordance with the terms of the Agency Agreement, the Debtors may effectuate and consummate the Transaction with the second highest or otherwise best Qualified Bid obtained at the Auction, as determined by the Debtors in the exercise of their business judgment (the "Back-Up Bidder"). The Debtors have identified _____ as the Back-Up Bidder.  The sale to the Back-Up Bidder shall be in the exercise of the Debtors' business judgment without need for further order of this Court.  The Back-Up Bidder shall be required to close within three (3) business days following receipt of notice from the Debtors of the Successful Bidder's failure to close.

### H.  Other Provisions

33.      Except as expressly provided in the Agency Agreement, the Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agent shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the

Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

34.    The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sale, and the Agency Agreement.

35.    Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in this chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

36.    The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that the [Creditors Committee] and Secured Lenders consent, which consent shall not be unreasonably withheld or delayed; *provided*, *however*, that any modification or amendment to Section 6.1 of the Agency Agreement shall be subject to the prior consent of the Secured Lenders in their sole discretion.

37.    Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 16 and 17 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the

Sale, (iii) any other disputes related to the Sale, and (iv) to protect the Debtors and/or the Agent against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

38.    Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement. For the avoidance of doubt, the Debtors are not subject to any stay in the implementation of the transactions contemplated by the Agency Agreement.

39.    To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the GOB Sale Guidelines, this Order shall govern and control.

40.    All amounts pursuant to the Agency Agreement and this Order for which the Merchant is entitled to payment shall be paid over by the Merchant to the DIP Revolving Credit Agent and the Term Loan Agent (as such terms are defined in the *Interim Financing Order Authorizing Borrowing and the Use of Cash Collateral, Granting Liens and Providing Super-Priority Administrative Expense Status and Granting Adequate Protection Pursuant to Sections 363 and 364 of the Bankruptcy Code* [D.I. ___]) (the "Interim DIP Order") in the manner set forth in paragraphs 16-18 of the Interim DIP Order.

Dated: _____ ___, 2015
        _____, _____

                              _____
                              THE HONORABLE MARY F. WALRATH
                              UNITED STATES BANKRUPTCY JUDGE

1774110.2