(a)    (i) actual Occupancy Expenses for the Stores on a per location and per diem basis in an amount up to the aggregate per diem per location amount set forth on Exhibit 4.1(a) hereto; provided, however, in the event there are any non-cash items included in Exhibit 4.1(a), such items shall not be available to Merchant to offset any per diem shortfall(s) in any other category/line item, plus (iii) the portion of any percentage rent obligations allocable to the sale of Merchandise during the Sale to the extent set forth on Exhibit 4.1(a), plus (iv) the portion of any percentage rent obligations attributable to the sale of Additional Agent Goods during the Sale (in each case as determined in the manner described in the definition of "Occupancy Expenses" below in this Section 4.1); provided, that in respect of (iii) and (iv) above, percentage rent shall only be paid if and to the extent such percentage rent obligation for a Store is reflected on Exhibit 4.1(a) and, if no percentage rent obligation is reflected on Exhibit 4.1(a) for each such Store, Agent shall not be liable for any such percentage rent associated with each such Store;

(b)    actual wages and commissions for all Store-level Retained Employees used in conducting the Sale; provided that, Agent shall only be obligated to pay 50% of the payroll wages for Store-level Retained Employees used during the Inventory Taking, and Merchant shall pay the remaining 50% of the wages for Store-level Retained Employees used during the Inventory Taking;

(c)    any amounts payable by Merchant for benefits for Retained Employees (including FICA, unemployment taxes, workers' compensation and healthcare insurance, but excluding Excluded Payroll Benefits) for Retained Employees used in the Sale, in an amount not to exceed 17.2% of the base payroll for each Retained Employee in the Stores (the "Payroll Benefits Cap");

(d)    Retention Bonuses for Retained Employees, as provided for in Section 9.4 below;

(e)    advertising and direct mailings relating to the Sale, Store interior and exterior signage and banners, and signwalkers, in each case relating to the Sale;

(f)    credit card fees, bank card fees, and chargebacks and credit/bank card discounts with respect to Merchandise sold in the Sale;

(g)    bank service charges (for Store, corporate accounts, and Agency Accounts), check guarantee fees, and bad check expenses to the extent attributable to the Sale;

(h)    costs for additional Supplies at the Stores necessary to conduct the Sale as requested by Agent;

(i)    all fees and charges required to comply with applicable laws in connection with the Sale as agreed to by Agent;

(j)    Store cash theft and other store cash shortfalls in the registers;

(k)    all costs and expenses associated with Agent's on-site supervision of the Stores, Distribution Centers, and Corporate Offices, including (but not limited to) any and all fees, wages, taxes, third party payroll costs and expenses, and deferred compensation of Agent's field personnel, travel to, from or between the Stores, Distribution Centers, and Corporate Offices, and out-of-pocket and commercially reasonable expenses relating thereto (including reasonable and documented corporate travel to monitor and manage the Sale);

(l)    postage, courier and overnight mail charges requested by Agent to the extent relating to the Sale;

(m)    fifty percent (50%) of cost of the Inventory Taking Service;

(n)    Agent's actual cost of capital (including Letter of Credit fees) and insurance attributable to the Sale, and Merchant's insurance under Section 12.2  prorated only to include amounts attributable to the Sale Term;

(o)    Agent's reasonable out-of-pocket costs and expenses associated with the Sale, including, but not limited to, legal fees and expenses incurred in connection with the review of data, preparation, negotiation, and execution of this Agreement and any ancillary documents;

(p)    third party payroll processing expenses associated with the Sale;

(q)    costs of transfers initiated by Agent of Merchandise between and among the Stores during the Sale Term, including delivery and freight costs, it being understood that Agent shall be responsible for coordinating such transfer of Merchandise, subject, however, to the provisions of section 8.1(e);

(r)    (1) if the Agent exercises the option pursuant to section 8.12, the E-Commerce Platform Expenses or (2) if the Agent does not exercise the option under section 8.12, but uses Merchant's website(s) for purposes of advertising the Sale, costs and expenses associated with hosting the websites in an amount equal to $20,000 per month (which amount shall be pro-rated for the month of January 2015 on a per diem basis, but not for any month thereafter); and

(s)    subject to Merchant's written consent, which shall not be unreasonably withheld or delayed, the documented actual costs and expenses of Agent providing such additional services as the Agent reasonably deems appropriate for the Sale.

Notwithstanding anything herein to the contrary, to the extent that any Expense category listed in section 4.1 is also included on Exhibit 4.1(a), Exhibit 4.1(a) shall control and such Expenses shall not be double counted.  There will be no double counting or payment of Expenses to the extent that Expenses appear or are contained in more than one Expense category.

As used herein, the following terms have the following respective meanings:

(i)    "Central Service Expenses" means costs and expenses for Merchant's central administrative services necessary for the Sale, including, but not limited to, internal payroll processing, MIS services, cash and inventory reconciliation, data processing and reporting, email preparation and distribution, information technology and E-Commerce Platform updates, functionality, and maintenance, and accounting (collectively, "Central Services").

(ii)    "Excluded Payroll Benefits" means (i) the following benefits arising, accruing or attributable to the period prior to, during, or after the Sale Term:  (w) vacation days or vacation pay, (x) sick days or sick leave or any other form of paid time off, (y) maternity leave or other leaves of absence and (z) ERISA coverage and similar contributions and/or (ii) any other benefits in excess of the Payroll Benefits Cap, including, without limitation, any payments due under the WARN Act.

(iii)    "Occupancy Expenses" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections,

T-1 lines, broadband internet, and other telecommunications services, trash removal, snow removal, and ordinary course third-party cleanings, pest control services, and all other categories of expenses at the Stores as set forth on Exhibit 4.1(a) attached hereto and in an amount up to the specific amounts set forth on Exhibit 4.1(a) attached hereto and calculated in accordance with Section 4.1(a), plus any percentage rent obligations incurred by Merchant under applicable leases or occupancy agreements that are allocable to the sales as part of the Sale during the Sale Term of: (x) Merchandise (including On-Order Merchandise that arrives in the Stores prior to the Receipt Deadline) and (y) Additional Agent Goods included in the Sale. Notwithstanding anything to the contrary set forth in this Agreement, Merchant and Agent further agree that to the extent that, in connection with the conduct of the Sale and/or Agent's vacating of the Stores (but not in connection with the disposition of any unsold Owned FF&E or other non-Merchandise assets being abandoned or otherwise disposed of by Merchant), Merchant incurs additional trash removal charges at a Store, other than the fixed charge component of Merchant's lease obligation for a particular Store provided for on Exhibit 4.1(a) (the "Non-CAM Trash Removal Charges"), such Non-CAM Trash Removal Charges shall be paid by Agent as an Expense of the Sale, in addition to any trash removal charges as may be set forth in Exhibit 4.1(a) hereof..

(iv)     "Third Party" means, with reference to any Expenses to be paid to a Third Party, a party which is not affiliated with or related to the Merchant or Agent.

(v)     Notwithstanding any other provision of this Agreement to the contrary, "Expenses" shall not include: (i) Excluded Payroll Benefits; (ii) Central Service Expenses, (iii) Occupancy Expenses or any occupancy-related expenses of any kind or nature in excess of the respective per Store, per diem occupancy-related categories and amounts expressly provided for as an Expense under Section 4.1(c) above to the extent actually incurred; (iv) any expenses of any kind relating to or arising from Merchant's Corporate Offices or Distribution Centers, including (without limitation) the Distribution Center Expenses, and/or (v) any other costs, expenses or liabilities payable by Merchant not provided for herein, all of which shall be paid solely by Merchant promptly when due, subject to the provisions of the Bankruptcy Code and the Approval Order.

4.2     Payment of Expenses.

Agent shall be responsible for the payment of all Expenses out of Proceeds (or from Agent's own accounts if and to the extent there are insufficient Proceeds) after the payment of the Guaranteed Amount. All Expenses incurred during each week of the Sale (i.e. Sunday through Saturday) shall be paid by Agent to or on behalf of Merchant, or paid by Merchant and thereafter reimbursed by Agent as provided for herein, immediately following the Weekly Sale Reconciliation; provided, however, in the event that the actual amount of an Expense is unavailable on the date of the reconciliation (such as payroll), Merchant and Agent shall agree to an estimate of such amounts, which amounts will be reconciled and appropriately adjusted in cash between once the actual amount of such Expense becomes available. Agent and/or Merchant may review or audit the Expenses at any time.

4.3     Distribution Center Expenses

Agent shall be responsible for allocating and designating the shipment of Merchandise from the Merchant's Distribution Centers to the Stores. Merchant and Agent shall cooperate with each other and shall mutually agree upon a schedule and allocation to the Stores of the Merchandise located at the Distribution Centers and on-order Merchandise (the "Allocation Schedule"), which shall be provided by Agent to Merchant no later than the Sale Commencement Date. Notwithstanding the foregoing, all costs and expenses of operating the Distribution Centers, including, but not limited to, use and occupancy expenses, Distribution Center employee payroll and other obligations, and/or processing, transferring,

consolidating, shipping, and/or delivering goods within or from the Distribution Centers (the "Distribution Center Expenses"), shall remain the sole obligation of the Merchant.

Section 5.  Gross Rings; Merchandise.

5.1    Inventory Taking.

(a)    Commencing on the Sale Commencement Date, Merchant and Agent shall cause to be taken a SKU level Cost Value and Retail Price physical inventory of the Merchandise located in the Stores (collectively, the "Inventory Taking"), which Inventory Taking shall be completed in each of the Stores as soon as practicable (the date of the Inventory Taking at each Store being the "Inventory Date" for each such Store), but in any event no later than twenty-one (21) days after the Sale Commencement Date (subject to the availability of the Inventory Taking Service), and, with respect to Merchandise located in Merchant's Distribution Centers, upon transfer to the Stores. On-Order Merchandise that is in-transit as of the Inventory Date shall be subject to a supplemental Inventory Taking at the Stores where such in-transit Merchandise is delivered thereto.  Merchant and Agent shall jointly employ a mutually agreed upon national inventory taking service (the "Inventory Taking Service") to conduct the Inventory Taking. The Inventory Taking shall be conducted in accordance with the procedures and instructions set forth on Exhibit 5.1(a) (the "Inventory Taking Instructions").  As an Expense, Agent shall be responsible for fifty percent (50%) of cost of the Inventory Taking Service. Merchant shall be responsible for fifty percent (50%) of cost of the Inventory Taking Service. Except as provided in the immediately preceding two sentences, Merchant and Agent shall each bear their respective costs and expenses relative to the Inventory Taking.  Merchant, each Lender, and Agent may each have representatives present during the Inventory Taking, and shall each have the right to review and verify the listing and tabulation of the Inventory Taking Service. Merchant agrees that during the conduct of the Inventory Taking (which the Merchant and Agent anticipate should not reasonably take more than one (1) day at any Store), the applicable Store shall be closed to the public, and no sales or other transactions shall be conducted within the applicable Store.  Merchant and Agent further agree that until the Inventory Taking in a particular Store is completed, neither the Merchant nor Agent shall: (i) move Merchandise within or about the Store so as to make any such items unavailable for counting as part of the Inventory Taking; or (ii) remove or add any hang tags, price tickets, inventory control tags affixed to any Merchandise or any other kind of in-store pricing signage within the Store. Merchant agrees to cooperate with Agent in all reasonable respects to conduct the Inventory Taking (including without limitation by making available to Agent information relating to sales, units, costs, Cost Value, and Retail Price, and making available to Agent Merchant's books, records, work papers and personnel to the extent reasonably necessary to calculate the Cost Value and Retail Price of the Merchandise). Each Store will be closed during the Inventory Taking at that Store; provided, however, that the parties agree that the Inventory Taking will commence at a time that will minimize the number of hours that the Stores will be closed for business. The Inventory Taking, including, but not limited to the Final Inventory Report, shall be reviewed, reconciled, and mutually verified by the Merchant and Agent in writing as soon as practicable following the Inventory Taking.

(b)    At each Store, for the period from the Sale Commencement Date until the Inventory Date for such Store, Agent and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable Sales Taxes but excluding any prevailing discounts ("Gross Rings"), and (ii) cash reports of sales within such Store. Register receipts shall show for each item sold the Cost Value and Retail Price for such item and the markdown or discount, if any, specifically granted by Agent in connection with such Sale. Agent shall pay that portion of the Guaranteed Amount calculated on the Gross Rings basis, to account for shrinkage, on the basis of 101.0% of the aggregate Cost Value of Merchandise sold during the Gross Rings Period. All such records and reports shall be made available to Agent and Merchant during regular business hours upon reasonable notice. Any Merchandise included in the Sale using the Gross Rings method shall be included as Merchandise.

5.2     <u>Merchandise Subject to This Agreement.</u>

(a)     For purposes of this Agreement, "<u>Merchandise</u>" shall mean all (i) new, finished, first-quality saleable goods in the ordinary course of business located at the Stores as of the Sale Commencement Date (including Merchandise subject to Gross Rings), (ii) Damaged Merchandise, (iii) Non-Conforming Merchandise, and (iv) Distribution Center Merchandise and On-Order Merchandise received at the Stores no later than fourteen (14) days after the later of (x) Sale Commencement Date and (y) the date on which Agent provides Merchant with the Allocation Schedule, provided that if such goods are received at the Stores after such 14-day period, but on or before twenty-eight (28) days after the later of (x) and (y) (such date, the "<u>Receipt Deadline</u>"), such goods shall be included in the Sale as Merchandise at the Cost Value and Retail Price of each good multiplied by the inverse of the then prevailing Sale discount for each such good. "Merchandise" shall not include: (1) goods which belong to sublessees, licensees, department lessees, or concessionaires of Merchant; (2) goods held by Merchant on memo, on consignment, or as bailee; (3) Excluded Damaged Merchandise; (4) Merchant's Consignment Goods; (5) Additional Agent Goods; (6) furniture, furnishings, trade fixtures, machinery, equipment, office supplies, Supplies, conveyor systems, racking, rolling stock, and other personal property (collectively, "FF&E") or improvements to real property; provided that Agent shall be permitted to sell Owned FF&E as set forth in Section 7 below; or (7) Distribution Center Merchandise, On Order Merchandise, or goods in the Distribution Centers, in-transit or on order received at the Stores after the Receipt Deadline.   For the avoidance of all doubt, so long as Merchant complies with the Allocation Schedule, goods shall be included as "Merchandise," regardless of whether such goods are subsequently further transferred at Agent's request or direction.

(b)     As used in this Agreement, the following terms have the respective meanings set forth below:

"<u>Damaged Merchandise</u>" means any item of Merchandise which is not new, finished, first-quality, saleable goods sold in the normal or ordinary course.  Examples of Damaged Merchandise include but are not limited to goods that are used, damaged, defective, scratched, soiled, dented, shopworn, out of box (if normally sold as new in-the-box), missing pieces, mismatched, mismated, parts, items typically sold as a set which are incomplete, or gift with purchase items.

"<u>Excluded Damaged Merchandise</u>" means any item of (i) Damaged Merchandise that is not saleable in the ordinary course because it is so damaged or defective that it cannot reasonably be used for its intended purpose or for which the parties cannot mutually agree upon a Cost Value and (ii) obsolete or discontinued goods.  Excluded Damaged Merchandise shall be identified as such during the Inventory Taking.

"<u>Distribution Center Merchandise</u>" means all new, finished, first-quality saleable goods in the ordinary course of business located at Merchant's warehouse/distribution centers (collectively, the "<u>Distribution Centers</u>") and reflected on Exhibit 5.2(b).

"<u>On-Order Merchandise</u>" means all new, finished, first-quality saleable goods in the ordinary course of business that are on-order or in-transit and reflected on Exhibit 5.2(b).

"<u>Merchandise File</u>" shall mean Merchant's "Merchandise Analysis Database" together with all updated files received by Agent from the Merchant or its representatives.

5.3     Valuation.

(a)     For purposes of this Agreement, "Cost Value" shall mean, with respect to each item of Merchandise, the lower of (i) the lowest cost of such item as reflected in the Merchandise File and (ii) the Retail Price.

(b)     For purposes of this Agreement, "Retail Price" shall mean with respect to each item of Merchandise, the lower of the lowest (i) ticketed price, (ii) marked price, (iii) shelf price, (iv) Merchandise File price, (v) in-Store point of sale price, E-Commerce Platform equivalent price, or other retail channel equivalent price if, and only if, such point of sale, E-Commerce Platform, or other retail channel price was the result applying a discount of 50% or greater at any time during the 45-day period immediately preceding the Sale Commencement Date, or (vi) other file price as reflected in Merchant's books and records for such item.   For the avoidance of doubt, "BOGOs" are excluded from the determination of Retail Price.

(c)     Notwithstanding the provisions of Section 5.3(a), with respect to each item of (i) Damaged Merchandise, the parties shall mutually agree upon the Cost Value and Retail Price (and if Agent and Merchant are unable to mutually agree on the Cost Value and Retail Price of any one or more items of Damaged Merchandise, such items shall be deemed Excluded Damaged Merchandise) and (ii) Non-Conforming Merchandise, the "Cost Value" shall be the Cost Value, as determined under section 5.3(a), multiplied by 50% and the "Retail Price" shall be the Retail Price, as determined under section 5.3(b), multiplied by 50%.

5.4     Excluded Goods.   Merchant shall retain ownership and all responsibility for any goods not included as "Merchandise" hereunder.   If the Merchant elects at the beginning of the Sale Term, Agent shall accept goods not included as "Merchandise" hereunder for sale at prices mutually agreed upon by Agent and Merchant (such goods, "Merchant's Consignment Goods").   The Agent shall retain 20% of the receipts (net of Sales Taxes) for all sales of Merchant's Consignment Goods, and Merchant shall receive 80% of the receipts (net of Sales Taxes) in respect of such sales.   Merchant shall receive its share of the receipts of sales of Merchant's Consignment Goods on a weekly basis, immediately following the Weekly Sale Reconciliation.   If Merchant does not elect to have Agent sell goods not included as Merchandise or Merchant and Agent are unable to agree upon prices, then all such items will be removed by Merchant from the Closing Stores at Merchant's expense as soon as practicable and shall not be shipped to the Closing Stores from the Distribution Centers absent Agent's express written consent.   Agent shall have no cost, expense or responsibility in connection with any goods not included in Merchandise.

Section 6.   Sale Term.

6.1     Subject to satisfaction of the conditions precedent set forth in Section 10 hereof, the Sale shall commence at each Store on the date that is one (1) day after the Bankruptcy Court enters the Approval Order (the "Sale Commencement Date"), but in no event later than January 9, 2015.   Agent shall complete the Sale at each Store no later than April 30, 2014 (the "Sale Termination Date", and the period from the Sale Commencement Date to the Sale Termination Date as to each Store being the "Sale Term").   Notwithstanding the foregoing, Agent may, in its discretion, earlier terminate the Sale on a Store-by-Store basis upon not less than seven (7) days' prior written notice (a "Vacate Notice") to Merchant (the "Vacate Date"), provided, that the Agent's obligations to pay all Expenses, including Occupancy Expenses, for each Store subject to a Vacate Notice shall continue until the applicable Vacate Date for such Store; provided, however, that, notwithstanding the foregoing proviso and solely with respect to Occupancy Expenses, the Agent's obligations to pay all Occupancy Expenses for each Store shall continue until the 15th of a calendar month if the Vacate Notice applicable to each such Store is

13

provided on or before the 8th day of such calendar month and the Vacate Date is on or before the 15th day of such calendar month; provided further that, Agent shall use commercially reasonable efforts to provide for a Vacate Date for each Store that is as close as possible to the end of a calendar month.

6.2    Vacating the Store.    At the conclusion of the Sale, Agent agrees to leave each Store in "broom clean" condition and otherwise in at least as good condition as on the Sale Commencement Date, ordinary wear and tear excepted, except for unsold items of Owned FF&E which may be abandoned by Agent in place in a neat and orderly manner pursuant to Section 7 below. Agent shall vacate each Store on or before the Sale Termination Date as provided for herein, at which time Agent shall surrender and deliver the Store premises, and Store keys, to Merchant. Agent's obligations to pay all Expenses for the Stores shall continue until the applicable Vacate Date for each Store, subject to the provisions of Section 6.1 above.

Section 7.    FF&E.

7.1    Owned FF&E.    Agent shall sell all FF&E at the Stores, the Distribution Centers or Merchant's corporate headquarters and other corporate offices (the "Corporate Offices") owned by Merchant (the "Owned FF&E") pursuant to a commission structure whereby Agent shall be entitled to receive a commission equal to twenty percent (20%) of the gross proceeds (net only of sales taxes) from the sale of any Owned FF&E; provided, however, that Merchant shall be responsible for the payment of all expenses (including reimbursement to Agent where applicable) incurred in connection with the disposition of the Owned FF&E in an amount not to exceed $141,000, which shall be paid in accordance with the following. The proceeds from the sale of the Owned FF&E shall be paid as follows: (i) the first $70,000 to Agent; (ii) the next $142,000, 50% to Agent and 50% to Merchant; and (iii) all proceeds in excess of the sum of (i) and (ii), 20% to Agent and 80% to Merchant. Alternatively, if Agent and Merchant mutually agree with the prior written consent of Lenders, Agent shall have the right to sell the Owned FF&E on a guaranteed basis pursuant to which Merchant and Agent shall mutually agree upon the guaranteed amount and the Owned FF&E inclusion and exclusion list and pursuant to which Agent shall bear all costs and expenses associated with the sale of the Owned FF&E (other than rent and other occupancy costs associated with the Distribution Centers and corporate offices, which amounts shall be the obligations of and paid by Merchant when due).

7.2    Abandonment of FF&E.    Agent shall be authorized to abandon any and all sold and unsold Owned FF&E in place without any cost or liability to any party.

Section 8.    Conduct of the Sale.

8.1    Rights of Agent.    In addition to any other rights granted to Agent elsewhere in this Agreement, subject to entry of the Approval Order, Agent shall be permitted to conduct the Sale as a "store closing", "sale on everything", "going out of business", "everything must go", or similar themed sale throughout the Sale Term without compliance with any Liquidation Sale Laws. The Agent shall conduct the Sale in the name of and on behalf of the Merchant in a diligent, professional and commercially reasonable manner and in compliance with the terms of this Agreement and subject to the Approval Order. Agent shall at all times conduct the Sale in accordance with the sale guidelines attached hereto as Exhibit 8.1(the "Sale Guidelines"). In addition to any other rights granted to Agent hereunder in conducting the Sale the Agent, in the exercise of its reasonable discretion shall have the right to the extent provided in the Approval Order and consistent with the Sale Guidelines:

(a)    to establish Sale prices and discounts and Store hours;

14

(b)      except as otherwise expressly included as an Expense, to use without charge during the Sale Term all FF&E, computer hardware and software, existing Supplies located at the Stores, intangible assets (including Merchant's name, logo and tax identification numbers), Store keys, case keys, security codes and safe and lock combinations required to gain access to and operate the Stores, and any other assets of the Merchant located at the Stores or the Distribution Centers (whether owned, leased, or licensed);

(c)      (i) to be provided by Merchant (at no additional cost to Agent) with central office facilities, central administrative services and personnel to process and perform Central Services and provide other central office services reasonably necessary for the Sale, but in no event shall Merchant be required to (x) provide any such services or facilities at a level in excess of the levels such services and facilities are currently provided among the entities comprising Merchant, or (y) hire or retain personnel not presently employed or engaged by Merchant; (ii) to use not to exceed three reasonably sized offices located at Merchant's Corporate Offices to effect the Sale; and (iii) to use all customer lists, mailing lists, email lists, and web and social networking sites utilized by Merchant in connection with its business (but solely in connection with the Sale and pursuant to such reasonable restrictions imposed by Merchant in order for Merchant to comply with its privacy policy and applicable laws governing the use and dissemination of confidential consumer personal data);

(d)      to establish and implement advertising, signage and promotion programs consistent with the "store closing", "sale on everything", "going out of business", "everything must go", or similar themed including without limitation by means of media advertising, and similar interior and exterior signs and banners, and the use of sign walkers;

(e)      to transfer Merchandise between and among the Stores at Agent's expense; provided, however, the Agent shall not transfer Merchandise between and among Stores if such transfers would make Merchandise unavailable for purposes of the Inventory Taking;

(f)      subject to the option under Section 8.12 below, to use Merchant's E-Commerce Platform in connection with the Sale to fulfill customer orders made during the Sale Term and otherwise promote the Sale; and

(g)      subject to the provisions of Section 8.10 below, to include Additional Agent Goods as part of the Sale.

8.2      Terms of Sales to Customers; Final/As Is Sales.  All sales of Merchandise will be "final sales" and "as is," and appropriate signage and sales receipts will reflect the same.  Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers.  All sales will be made only for cash or nationally recognized bank credit cards.  Agent shall accept and honor coupons during the Sale Term, including but not limited to, Merchant's membership program as well as Merchant's employee discount terms as are in effect immediately prior to the commencement of the Sale Term.  The Agent shall clearly mark all receipts for the Merchandise sold at the Stores during the Sale Term so as to distinguish such Merchandise from the goods sold prior to the Sale Commencement Date.  Merchant shall reimburse Agent in cash for all amounts related to coupons, including, but not limited to, Merchant's membership programs as well as Merchant's employee discount terms, during each Weekly Sale Reconciliation provided for in Section 8.7.

8.3     Sales Taxes.

(a)     During the Sale Term, all sales, excise, gross receipts, and other taxes attributable to sales of Merchandise and Additional Agent Goods as indicated on Merchant's point of sale equipment (other than taxes on income, but specifically including, without limitation, gross receipts taxes) payable to any taxing authority having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Merchandise and Additional Agent Goods and collected by Agent in trust for Merchant at time of sale and paid over to Merchant. All Sales Taxes shall be deposited into a segregated account designated by Merchant and Agent solely for the deposit of such Sales Taxes (the "Sales Taxes Account"). If Agent does not timely remit Sales Taxes to Merchant, Merchant shall be permitted to immediately draw on the Letter of Credit in the full amount of Sales Taxes collected by Agent in the preceding week. Provided that Agent has collected all Sales Taxes during the Sale and remitted the proceeds thereof to Merchant, Merchant shall promptly pay all Sales Taxes and file all applicable reports and documents required by the applicable taxing authorities. Notwithstanding anything to the contrary herein, Agent shall reimburse Merchant for any additional Sales Taxes, interest, fines, penalties, and similar amounts payable to any taxing authority as the result of a Sales Tax audit conducted by or on behalf of such authority which discloses that the Sales Taxes collected by Agent and paid over to Merchant for any period during the Sale Term were less than those mandated by applicable law for the sale of Merchandise, Additional Agent Goods and/or Owned FF&E, if any, that is sold by Agent under this Agreement (any such additional Sales Taxes and other amounts are collectively referred to herein as "Additional Taxes and Penalties"). Merchant will be given access to the computation of gross receipts for verification of all such Sales Tax collections. Agent shall add Sales Tax to the sales price of all Additional Agent Goods sold and Agent shall collect Sales Taxes attributable to the sales of Additional Agent Goods and deposit such amounts into existing accounts, trust accounts, or other accounts designated by Agent, for remittance by Merchant, on behalf of Agent, to the appropriate taxing authority. If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations in accordance with this Section 8.3, Agent shall indemnify and hold harmless Merchant and its officers, directors, employees, agents and independent contractors (collectively, "Merchant Indemnified Parties") from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties (including but not limited to all Additional Taxes and Penalties) that Merchant sustains or incurs as a result or consequence of the failure by Agent to collect Sales Taxes and remit them to Merchant and/or, to the extent Agent is required hereunder to prepare reports and other documents, the failure by Agent to promptly deliver any and all reports and other documents required to enable Merchant to file any requisite returns with such taxing authorities. Provided that Agent performs its responsibilities in accordance with this Section 8.3, Agent shall have no further obligation to the Merchant, the Lenders, any taxing authority, or any other party, and Merchant (or if Merchant shall be unable to or otherwise for any reason fails to, and the applicable Lender has received such payment, such Lender) shall indemnify and hold harmless Agent and its officers, directors, employees, agents and Supervisors (collectively, "Agent Indemnified Parties") from and against all claims, demands, assessments, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to the failure by Merchant to promptly pay such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities.

(b)     Without limiting the generality of Section 8.3(a) hereof, it is hereby agreed that, as Agent is conducting the Sale solely as agent for the Merchant, various payments that this Agreement contemplates that one party may make to the other party (including the payment by Agent of the Guaranteed Amount) do not represent the sale of tangible personal property and, accordingly, are not subject to Sales Taxes.

8.4    Supplies. Agent shall have the right to use, without charge, all existing supplies located at the Stores, including, without limitation, boxes, bags, paper, twine and similar sales materials (collectively, "Supplies"). In the event that additional Supplies are required in any of the Stores during the Sale, Merchant agrees to reasonably cooperate with Agent to obtain the same, if reasonably available, for which Agent shall, within three (3) business days of receipt, reimburse the Merchant at Merchant's cost therefor.

8.5    Returns of Merchandise. During the first thirty (30) days of the Sale, Agent shall accept returns of Merchandise sold by Merchant prior to the Sale Commencement Date in accordance with Merchant's return policies in effect at the time of purchase (to the extent presented in accordance with the foregoing terms, each such item being defined herein as "Returned Merchandise"). Agent shall maintain and deliver to Merchant a detailed Returned Merchandise log, including copies of all relevant merchandise receipts and credits, and shall mark the Returned Merchandise in such a fashion so as to render such merchandise readily identifiable by Merchant and Agent. Merchant shall reimburse Agent in cash or credit against the following week's payment for the amount of any store credit or refund given to any customer in respect of Returned Merchandise. To the extent Returned Merchandise is salable as first quality merchandise, it shall be included in Merchandise and for purposes of the calculation of the Guaranteed Amount and (i) if returned during the first 14 days of the Sale, shall be valued at the Cost Value and Retail Price applicable to such item or (ii) if returned after such 14 day period, (i) if returned during the first 14 days of the Sale, shall be valued at the Cost Value and Retail Price applicable to such item multiplied by the inverse of the then prevailing Sale discount. Subject to Merchant's reimbursement to Agent of the amount of any store credit or refund granted for any such Returned Merchandise, the aggregate Cost Value of the Merchandise shall be increased by the applicable Cost Value of any Returned Merchandise, and the Guaranteed Amount shall be adjusted accordingly. If the Returned Merchandise is not first quality goods, Merchant and Agent shall negotiate in good faith to determine an appropriate Cost Value applicable to such merchandise for purposes of determining the Cost Value attributable thereto; provided that, in the event Merchant and Agent cannot agree on the Cost Value to be attributed to any particular item(s) of Returned Merchandise, than such item(s) shall be segregated form Merchandise and excluded from the Sale and treated as Excluded Defective Merchandise for all purposes hereunder. Any reimbursements due to Agent as a result of Returned Merchandise shall be accounted for and paid by Merchant immediately following the weekly Sale reconciliation pursuant to Section 8.7(a) hereof. Any increases in payment on account of the Guaranteed Amount as a result of Returned Merchandise shall be paid by Agent as part of the final Sale reconciliation provided for under Section 8.7(b) hereof.

8.6    Gift Certificates; Membership Program.

(a)    During the first sixty (60) days of the Sale, Agent shall accept Merchant's gift certificates, gift cards, return credits, and similar merchandise credits issued by Merchant in accordance with Merchant's policies and the terms and conditions applicable to such items (collectively, the "Gift Certificates"); and Merchant shall reimburse Agent in cash for such amounts during the Weekly Sale Reconciliation provided for in Section 8.7. Agent shall not sell any Gift Certificates.

(b)    During the Sale Term, customers may elect to take advantage of (i) discounts afforded customers in connection with Merchant's membership program benefits and/or Merchant's then valid coupons (collectively, "Merchant Discounts"); or (ii) the then-prevailing Sale discounts being offered by Agent, but not both on a cumulative basis. To the extent the customer elects an applicable Merchant Discount, then Merchant shall reimburse Agent in cash during the Weekly Sale Reconciliation for the value/differential between the applicable Merchant Discount and the then-prevailing Sale discounts being offered by Agent.

17

8.7     Sale Reconciliation.

(a)     Weekly Reconciliation.  On each Wednesday during the Sale Term (each a "Weekly Sale Reconciliation"), commencing on the second Wednesday after the Sale Commencement Date, Agent and Merchant (in consultation with Lenders) shall cooperate to reconcile Expenses, Gross Rings, and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (i.e., Sunday through Saturday), pursuant to procedures agreed upon by Merchant (in consultation with Lenders) and Agent.  On a weekly basis, Agent shall also provide Merchant (and a copy to each Lender) with a report (in electronic format acceptable to Merchant) of all sales of Additional Agent Goods, which report shall detail by Store, at a minimum, gross and net sales and type of items sold.

(b)     Final Reconciliation.

(i)  Within thirty (30) days after the Sale Termination Date applicable to the last Store in which the Sale is concluded, Agent and Merchant (in consultation with the Lenders) shall jointly prepare a final reconciliation of the Sale including, without limitation, a summary of Proceeds, Sales Taxes, Expenses, and any other accountings required hereunder (the "Final Reconciliation").  Within five (5) days after completion of the Final Reconciliation, any undisputed and unpaid Expenses shall be paid by Agent (the "Final Reconciliation Settlement Date").  In the absence of an order of the Bankruptcy Court to the contrary, no disputed amounts owing hereunder shall be paid until the dispute has been resolved by agreement of the parties or as determined in the manner prescribed in Section 8.7(b)(ii) hereof.  During the Sale Term, and until all of Agent's obligations under this Agreement have been satisfied, Merchant (in consultation with the Lender) and Agent shall have reasonable access to Merchant's and Agent's records with respect to Merchandise, Proceeds, Sales Taxes, Expenses, and other Sale-related items to review and audit such records.

(ii)     In the event that there is any dispute with respect to either (x) the determination of the aggregate Cost Value of the Merchandise as reflected in the Final Inventory Report and/or (y) the Final Reconciliation, such dispute shall be promptly (and in no event later than the fifth (5th) business day following a request by either Merchant or Agent) submitted to the Bankruptcy Court for resolution. In the event of a dispute as to (x) or (y) above, Agent shall extend the Letter of Credit in accordance with the provisions of Sections 3.4 hereof, as applicable.  If Agent has for any reason not so extended the expiration date of the Letter of Credit by the date that is ten (10) business days prior to the applicable expiration date (as may have been extended previously), Merchant and/or Lender shall have the right to make a drawing under the Letter of Credit in an amount or amounts equal to the undisputed amounts Merchant asserts are then owing to Merchant.

8.8     Force Majeure.  If any casualty, act or threatened act of terrorism, or act of God prevents or substantially inhibits the conduct of business in the ordinary course at any of the Stores for a period of five (5) consecutive days, the Merchandise located at such Store shall, in Agent's reasonable discretion (after consultation with the Merchant), be eliminated from the Sale and considered to be deleted from this Agreement as of the date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto; provided, however, that (i) the proceeds of any insurance attributable to such Merchandise shall constitute Proceeds hereunder, and (ii) the Guaranteed Amount shall be reduced to account for any Merchandise eliminated from the Sale which is not the subject of insurance proceeds, and Merchant (or any Lender to the extent such Lender has received any funds on account of the Guaranteed Amount) shall within five (5) business days following written demand by Agent reimburse Agent, if applicable, for the amount by which the Guaranteed Amount is so reduced.

8.9     Right to Monitor.  Merchant shall have the right to monitor the Sale and activities attendant thereto and to be present in the Stores during the hours when the Stores are open for business;

18

provided that Merchant's presence does not unreasonably disrupt the conduct of the Sale. Merchant shall also have a right of access to the Stores at any time in the event of an emergency situation and shall promptly notify Agent of such emergency.

8.10    <u>Additional Agent Goods.</u>

(a)    So long as such actions do not detract from the Sale or Merchant's anticipated recoveries on account of the sale of Merchandise, Agent shall have the right to supplement the Merchandise in the Sale with additional goods procured by Agent, whether from Merchant's existing orders or otherwise, that are of like kind, and no lesser quality to the Merchandise in the Sale ("<u>Additional Agent Goods</u>"). The Additional Agent Goods shall be purchased by Agent as part of the Sale at Agent's sole expense (and such purchase price shall not constitute an Expense). Sales of Additional Agent Goods shall be run through Merchant's systems, <u>provided</u> <u>however</u>, Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise. Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods. Additionally, Agent shall provide signage through all retail channels notifying customers that the Additional Agent Goods have been included in the Sale.

(b)    In addition to all other compensation due to Merchant under this Agreement, Agent shall pay to Merchant an amount equal to five percent (5.0%) of the gross proceeds (excluding Sale Taxes) from the sale of the Additional Agent Goods (the "<u>Additional Agent Goods Fee</u>") and Agent shall retain all remaining amounts from the sale of the Additional Agent Goods. Agent shall pay Merchant its Additional Agent Goods Fee in connection with each Weekly Sale Reconciliation with respect to sales of Additional Agent Goods sold by Agent during each then prior week.

(c)    Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes. Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent.

(d)    Merchant shall, at Agent's sole expense (and not as an Expense), endeavor to insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods, which amount shall be deemed an Additional Agent Goods expense.

(e)    Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Goods shall be consigned to Merchant as a true consignment under Article 9 of the Code. Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds).

(f)     Each Lender hereby acknowledges receipt of notice of the consignment of the Additional Agent Goods and consents to the payments to Agent of Additional Agent Goods proceeds.

8.11    Collective Bargaining Agreements; Leases. Agent shall not be obligated to comply with any of Merchant's collective bargaining agreements or leases/occupancy agreements; except as provided for in sections 4.1(a) and 4.1(c) herein.    Agent acknowledges that Merchant's employees at the Distribution Center are subject to a collective bargaining agreement, which may affect the conduct of operations at the Distribution Center.  In no event shall Merchant be required to take any action pursuant to this Agreement if such action would be prohibited or restricted by the terms of any applicable collective bargaining agreement, or would otherwise be inconsistent with Merchant's obligations under any such agreement.

8.12    E-Commerce Platform.  Agent shall have the option, exercisable in writing by no later than the Sale Commencement Date, to use Merchant's e-commerce site and related platform ("E-Commerce Platform") in connection with the Sale to fulfill customer orders made during the Sale Term and otherwise promote the Sale (in Agent's capacity as Agent hereunder).  If Agent exercises the option to use the E-Commerce Platform to fulfill customer orders, (i) Merchant shall continue to provide for the operation and maintenance of the E-Commerce Platform and provide Agent with reasonable assistance with respect to the functionality of the E-Commerce Platform, fulfillment of orders, and promotion of the Sale and (ii) Agent shall pay Merchant (as an Expense, which shall be in addition to all other Expenses contemplated by this Agreement) for the actual costs and expenses (x) incurred and paid by Merchant after the Sale Commencement Date through the date on which the Agent directs the Merchant to cease fulfilling customer orders, (y) that are directly attributed to the operation and maintenance of the E-Commerce Platform during the Sale Term, and (z) reflected on Exhibit 8.12 ((ii)(x)-(z) (the "E-Commerce Platform Expenses"); provided, however, that Agent is only obligated to pay the E-Commerce Platform Expenses to the extent such E-Commerce Platform Expenses are not otherwise included as an Expense of the Sale under Section 4.1 hereof (including, but not limited to, as part of Central Services)). If Agent exercises the option to use the E-Commerce Platform to fulfill customer orders, in addition to the foregoing, Agent shall provide Merchant with written notice of such election no later than the Sale Commencement Date, (i) all Merchandise sold through the E-Commerce Platform shall be counted based on shipments to customers, (ii) Merchant and Agent shall mutually agree upon an allocation of Merchandise to be sold using the E-Commerce Platform, which Merchandise shall not be subject to the requirement to arrive at the Stores by the Receipt Deadline, (iii) Agent shall be authorized to sell Additional Agent Goods through the E-Commerce Platform (subject to the same limitation as applies to Agent's right to include Additional Agent Goods in the Sale conducted from the Stores), and (iv) activities relating to the E-Commerce Platform shall be subject to such other processes, procedures, and agreements as Agent and Merchant (in their respective reasonable discretion) may agree upon for the efficient and continued operation of the E-Commerce Platform.  In the event Agent elects not to exercise its rights to use the E-Commerce Platform as a sales platform, Merchant agrees that it shall not complete any sales for its own account utilizing the E-Commerce Platform during the Sale Term and Merchant shall otherwise comply with Merchant's obligations under this Agreement in respect of the E-Commerce Platform.

Section 9. Employee Matters.

9.1     Merchant's Employees. Agent may use Merchant's employees in the conduct of the Sale to the extent Agent reasonably deems necessary for the Sale, and Agent may select and schedule the number and type of Merchant's employees required for the Sale.  Agent shall identify any such employees to be used in connection with the Sale (each such employee, a "Retained Employee"). Notwithstanding the foregoing, Merchant's employees shall at all times remain employees of the Merchant.  Agent's selection and scheduling of Merchant's employees shall at all times comply with all

20

applicable laws and regulations. Merchant and Agent agree that, except to the extent that wages and benefits of Retained Employees constitute Expenses hereunder, nothing contained in this Agreement and none of Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of Merchant's obligations relating to any of Merchant's employees including, without limitation, Excluded Payroll Benefits, Worker Adjustment Retraining Notification Act ("WARN Act") claims and other termination type claims and obligations, or any other amounts required to be paid by statute or law; nor shall Agent become liable under any employment agreement, collective bargaining agreement, or be deemed a joint or successor employer with respect to such employees. Merchant shall not, without the prior consent of Agent, raise the salary or wages or increase the benefits for, or pay any bonuses or other extraordinary payments to, any Store employees prior to the Sale Termination Date. Merchant shall not transfer any employee in anticipation of the Sale nor any Retained Employee during the Sale Term, in each case without Agent's prior consent.

9.2     <u>Termination of Employees</u>.  Agent may in its discretion stop using any Retained Employee at any time during the Sale, subject to the conditions provided for herein. In the event that Agent desires to cease using any Retained Employee, Agent shall notify Merchant at least seven (7) days prior thereto; <u>provided</u>, <u>however</u>, that, in the event that Agent determines to cease using an employee "for cause" (such as dishonesty, fraud or breach of employee duties), the seven (7) day notice period shall not apply; <u>provided</u>, <u>further</u>, <u>however</u>, that Agent shall immediately notify Merchant of the basis for such "cause." From and after the date of this Agreement and until the Sale Termination Date, Merchant shall not transfer or dismiss employees of the Stores except "for cause" without Agent's prior consent. Notwithstanding the foregoing, Agent shall not have the right to terminate the actual employment of any employee, but rather may only cease using such employee in the Sale and paying any Expenses with respect to such employee (and all decisions relating to the termination or non-termination of such employees shall at all times rest solely with Merchant).

9.3     <u>Payroll Matters</u>.  During the Sale Term, Merchant shall process the payroll for all Retained Employees and any former employees and temporary labor engaged for the Sale. Each Wednesday (or such other date as may be reasonably requested by Merchant to permit the funding of the payroll accounts before such payroll is due and payable) during the Sale Term, Agent shall transfer to Merchant's payroll accounts an amount equal to the base payroll for Retained Employees plus related payroll taxes, workers' compensation and benefits for such week, to the extent such amount constitutes Expenses hereunder.

9.4     <u>Employee Retention Bonuses</u>.  Subject to approval by the Bankruptcy Court, Agent may pay, as an Expense, retention bonuses ("<u>Retention Bonuses</u>") (which bonuses shall be inclusive of payroll taxes, but as to which no benefits shall be payable), up to a maximum of ten percent (10%) of base payroll for all Retained Employees, to such Retained Employees who do not voluntarily leave employment and are not terminated "for cause," as Agent may determine in its reasonable discretion. Subject to approval by the Bankruptcy Court, the amount of such Retention Bonuses shall be in an amount to be determined by Agent, in its discretion, and shall be payable within thirty (30) days after the Sale Termination Date, and shall be processed through Merchant's payroll system.

Section 10.  <u>Conditions Precedent and Subsequent</u>.

(a)     The willingness of Agent to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Agent:

(i)    All representations and warranties of the Merchant hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and on the Sale Commencement Date.

(ii)    Lender has executed this Agreement (with all Exhibits attached hereto) solely to bind itself to the provisions specifically relating to Lender herein.

(iii)    The Bankruptcy Court shall have entered an order approving bidding procedures, in form and substance reasonably acceptable to Merchant and Agent (such order, the "Bidding Procedures Order"), by December 23, 2014, or such later date as mutually agreed upon by the Merchant and Agent.

(iv)    The Bankruptcy Court shall have entered the Approval Order by January 7, 2015, or such later date as mutually agreed upon by the Merchant and the Agent (the "Approval Order Deadline").

(b)    The willingness of Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the Merchant:

(i)    All representations and warranties of Agent hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and on the Sale Commencement Date.

(ii)    Each Lender has executed this Agreement (with all Exhibits attached hereto) solely to bind itself to the provisions specifically relating to such Lender herein, subject to the Approval Order.

Section 11.  Representations, Warranties and Covenants.

11.1    Merchant's Representations, Warranties and Covenants.  Merchant hereby represents, warrants and covenants in favor of Agent as follows:

(a)    Each of the entities comprising Merchant (i) is an entity duly organized, validly existing and in good standing under the laws of the State of Delaware; (ii) subject to the applicable provisions of the Bankruptcy Code, has all requisite corporate power and authority to own, lease and operate its assets and properties and to carry on its business as presently conducted; and (iii) is, and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Stores are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of the Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)    Subject to entry of the Approval Order, the Merchant has the right, power and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations thereunder.  Subject to entry of the Approval Order, Merchant has taken all necessary actions required to authorize the execution, delivery and performance of the Agency Documents, and no further consent or approval is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder and to consummate the Sale, except for any such consent the failure of which to

22

be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder. Subject to entry of the Approval Order, each of the Agency Documents has been duly executed and delivered by the Merchant and constitutes the legal, valid and binding obligation of the Merchant enforceable in accordance with its terms.

(c)     Merchant owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise free and clear of all liens, claims, and encumbrances of any nature other than the liens and security interests of the Agent hereunder and of the Lenders; and (ii) Merchant shall not create, incur, assume, or suffer to exist any security interest, lien, or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds, in each case other than the liens and security interests of Agent hereunder and of Lenders and any other liens and security interests granted pursuant to Merchant's debtor-in-possession financing and cash collateral usage.

(d)     Merchant has maintained its pricing files (including (without limitation) the Merchandise File) in the ordinary course of business, and prices charged to the public for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein, and all pricing files and records are true and accurate in all material respects as to the actual cost to Merchant for purchasing the goods referred to therein and as to the selling price to the public for such goods without consideration of any point of sale discounts, as of the dates and for the periods indicated therein. Merchant represents that (i) the ticketed prices of all items of Merchandise do not and shall not include any Sales Taxes and (ii) all registers located at the Stores are programmed to correctly compute all Sales Taxes required to be paid by the customer under applicable law, as such calculations have been identified to Merchant by its retained service provider.

(e)     Through the Sale Commencement Date, Merchant has ticketed or marked, and shall continue to ticket or mark (including normal course hard markdowns), all items of inventory at, or received at, the Stores in a manner consistent with similar Merchandise located at the Stores, and in all instances in accordance with Merchant's ordinary course past practices and policies relative to pricing and marking inventory. Since November 1, 2014, Merchant has not removed any POS promotions, sale stickers, or other markings indicating items are on sale or on clearance from the Merchandise prior to the Sale Commencement Date, and have not raised, and will not raise, prices of any Merchandise in contemplation of the Sale.

(f)     Since November 1, 2014, Merchant has not, and through the Sale Commencement Date Merchant shall not, purchase for or transfer to or from the Stores any merchandise or goods outside the ordinary course; provided, however, that in no event shall Merchant transfer any goods into the Stores without Agent's consent from and after the Sale Commencement Date other than in accordance with the Allocation Schedule.

(g)     To Merchant's knowledge after reasonable inquiry, all Merchandise is in compliance in all material respects with all applicable federal, state and local product safety laws, rules and standards. Merchant shall provide Agent with its historic policies and practices, if any, regarding product recalls prior to the Sale Commencement Date.

(h)     Subject to the provisions of the Approval Order, Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, the Stores, the assets currently located at the Stores, and the utilities and other services provided at the Stores. Merchant shall, throughout the Sale Term, maintain in good working order, condition and repair all cash registers, heating systems, air conditioning systems, elevators, escalators and all other mechanical devices necessary or appropriate for the conduct of the Sale at the Stores. Except as otherwise restricted by the Bankruptcy

Code or as provided herein and absent a bona fide dispute, throughout the Sale Term, Merchant shall remain current on all expenses and payables necessary or appropriate for the conduct of the Sale.

(i)    Subject to approval by the Bankruptcy Court, Merchant has paid, and will continue to pay throughout the Sale Term, all self-insured or Merchant-funded employee benefit programs for Store employees, including health and medical benefits and insurance and all proper claims made or to be made in accordance with such programs.

(j)    Since November 1, 2014, Merchant has not taken, and shall not throughout the Sale Term take, any actions with the intent of increasing the Expenses of the Sale, including without limitation increasing salaries or other amounts payable to employees; except to the extent an employee was or is due an annual raise in the ordinary course or contractually due a raise.

(k)    Since November 1, 2014, Merchant has operated, and, except as otherwise restricted by the Bankruptcy Code or as provided herein and absent a bona fide dispute, through the Sale Commencement Date Merchant covenants to continue to operate, the Stores in all material respects in the ordinary course of business including without limitation by: (i) selling inventory during such period at customary prices consistent with the ordinary course of business; (ii) not promoting or advertising any sales or in-store promotions (including POS promotions) to the public outside of the Merchant's ordinary course of business; (iii) except as may occur in the ordinary course of business, not returning inventory to vendors and not transferring inventory or supplies out of or to the Stores; (iv) except as may occur in the ordinary course of business, not making any management personnel moves or changes at the Stores; and (v) replenishing the Stores in the ordinary course of business.

(l)    Prior to the execution of this Agreement, Merchant has provided Agent reasonable access to all pricing and cost files, computer hardware, software and data files, inter-Stores transfer logs, markdown schedules, invoices, style runs and all other documents relative to the price, mix and quantities of inventory located at the Stores and the Distribution Centers or on order or in transit.

(m)    Merchant has provided representatives of Agent with access to (and the opportunity to copy) all collective bargaining agreements, and all amendments, modifications, and supplements thereto.

(n)    To Merchant's knowledge after reasonable inquiry, all documents, information and supplements provided by Merchant to Agent in connection with Agent's due diligence and the negotiation of this Agreement were true and accurate in all material respects at the time provided.

(o)    On and as of the Sale Commencement Date, the level of goods (as to quantity) and the mix of goods (as to type, category, style, brand and description) at the Stores shall be in all material respects, subject to ordinary course of business changes and adjustments, consistent with the level and mix set forth on Exhibit 11.1(o).

(p)    Merchant has not purchased or transferred and shall not purchase or transfer to or from the Stores any merchandise or goods outside the ordinary course in anticipation of the Sale or of the Inventory Taking.

(q)    Merchant has not since November 1, 2014 shipped any Excluded Damaged Merchandise from the Distribution Centers to the Stores, other than what is typically done in the ordinary course with respect to clearance sections and clearance stores. Merchant will not ship any Excluded Damaged Merchandise from the date of this Agreement from the Distribution Centers to the Stores, other than what is typically done in the ordinary course with respect to clearance sections and clearance stores.

(r)     Other than filing the Bankruptcy Case, no action, arbitration, suit, notice, or legal, administrative or other proceeding before any court or governmental body has been instituted by or against the Merchant, or has been settled or resolved, or to Merchant's knowledge, is threatened against or affects Merchant, relative to Merchant's business or properties, or which questions the validity of this Agreement, or that if adversely determined, would adversely affect the conduct of the Sale.

(s)     Merchant shall not, prior to the Sale Termination Date, offer any promotions or discounts at the Stores or any other retail channel, except as detailed on Exhibit 11.1(s).

(t)     Merchant covenants to use Merchant's commercially reasonable efforts to promptly and timely obtain entry of an order extending the deadline to assume or reject unexpired leases of real property through and including the Sale Termination Date.

(u)     Merchant hereby acknowledges that, as of and after the date of this Agreement, Agent intends to begin to make arrangements for the purchase of Additional Agent Goods from Agent's suppliers of goods as well as Merchant's existing suppliers of goods, all at no cost or expense whatsoever to Merchant and at Agent's sole risk.  To assist Agent in that regard, from and after the date of this Agreement, Merchant shall use Merchant's commercially reasonable efforts to assist and cause Merchant's employees to assist Agent with Agent's efforts to negotiate orders with Merchant's suppliers for goods that Agent is interested in purchasing as Additional Agent Goods, provided that (i) such assistance does not unreasonably interfere with or disrupt Merchant's business operations, (ii) the appropriate employees to perform such activities then remain employees of Merchant, it being agreed that Merchant shall in no event be required to retain any such employee for the purpose of rendering such assistance, (iii) Merchant shall have no liability whatsoever in connection with any orders placed for such Additional Agent Goods or otherwise in connection with the activities contemplated by this subpart (u).

11.2    Agent's Representations, Warranties and Covenants.  Agent hereby represents, warrants and covenants in favor of Merchant as follows:

(a)     Each entity comprising Agent: (i) is a limited liability company duly and validly existing and in good standing under the laws of the State of Delaware; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; (iii) is, and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Stores are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Agent to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)     Agent has the right, power and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder.  Agent has taken all necessary actions required to authorize the execution, delivery and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder and to consummate the Sale.  Each of the Agency Documents has been duly executed and delivered by the Agent and constitutes the legal, valid and binding obligation of Agent enforceable in accordance with its terms.  No court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair, or is required for, Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor, other than as provided herein.  No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

25

(c)    No action, arbitration, suit, notice or legal administrative or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved or, to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement or which, if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

(d)    The Sale shall be conducted in compliance with all applicable state and local laws, rules and regulations and Merchant's leases and other agreements, except as otherwise provided for in the Sale Guidelines and Approval Order.

(e)    Absent prior written consent by the Merchant, Agent will not cause any non-emergency repairs or maintenance (emergency repairs are repairs necessary to preserve the security of a Store premise or to ensure customer safety) to be conducted at the Stores.

(f)    To the best of Agent's knowledge, all Additional Agent Goods are in compliance with all applicable federal, state or local product safety laws, rules and standards. All Additional Agent Goods shall be of like kind and no lesser quality to the Merchandise located in the Stores.

Section 12. Insurance.

12.1    Merchant's Liability Insurance. Subject to approval by the Bankruptcy Court, Merchant shall use its commercially reasonable efforts to continue at its cost and expense until the Sale Termination Date, in such amounts as it currently has in effect, all of its liability insurance policies, including, but not limited to, commercial general liability, products liability, comprehensive public liability, auto liability and umbrella liability insurance, covering injuries to persons and property in, or in connection with, Merchant's operation of the Stores; and Merchant shall use its commercially reasonable efforts to cause Agent to be named as an additional named insured (as its interest may appear) with respect to all such policies. Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and naming Agent as an additional named insured, in form reasonably satisfactory to Agent. All such policies shall require at least thirty (30) days' prior notice to Agent of cancellation, non-renewal or material change during the Sale Term. In the event of a claim under any such policies, Merchant shall be responsible for the payment of all deductibles, retentions or self-insured amounts thereunder, unless it is determined that liability arose by reason of the willful misconduct or negligent acts or omissions of Agent, or Agent's employees, independent contractors or agents. Merchant shall not make any change in the amount of any deductibles or self-insurance amounts prior to the Sale Termination Date without Agent's prior written consent.

12.2    Merchant's Casualty Insurance. Subject to approval by the Bankruptcy Court, Merchant shall use commercially reasonable efforts to provide, as an Occupancy Expense, throughout the Sale Term fire, flood, theft and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the retail value thereof. From and after the date of this Agreement until the Sale Termination Date, all such policies will also name Agent as an additional named insured or loss payee, as applicable (as its interest may appear). In the event of a loss to the Merchandise on or after the date of this Agreement, the Proceeds of such insurance attributable to the Merchandise, shall constitute Proceeds hereunder. Merchant shall deliver to Agent certificates evidencing such insurance, setting forth the duration thereof and naming the Agent as an additional insured or loss payee, as applicable, in form and substance reasonably satisfactory to Agent. All such policies shall require at least thirty (30) days' prior notice to the Agent of cancellation, non-renewal or material change during the Sale Term. Merchant shall not make any change in the amount of any deductibles or self-insurance amounts prior to the Sale Termination Date without Agent's prior written consent.

12.3 <u>Agent's Insurance</u>. Agent shall maintain at Agent's cost as an Expense hereunder throughout the Sale Term, in such amounts as it currently has in effect, commercial general liability policies covering injuries to persons and property in or in connection with Agent's agency at the Store, and shall cause Merchant to be named as an additional insured with respect to such policies. Agent shall deliver to Merchant certificates evidencing such insurance policies setting forth the duration thereof and naming Merchant as an additional insured, in form and substance reasonably satisfactory to Merchant. In the event of a claim under any such policies, Agent shall be responsible for the payment of all deductibles, retentions or self-insured amounts thereunder, unless it is determined that liability arose by reason of the willful misconduct or grossly negligent acts or omissions of Merchant or Merchant's employees, independent contractors or agents (other than Agent or Agent's employees, agents or independent contractors or any employee or independent contractor acting at the direction of Agent or its representatives or under the control of Agent or its representatives). Agent shall not make any change in the amount of any deductibles or self insurance amounts prior to the Sale Termination Date without Merchant's prior written consent.

12.4 <u>Worker's Compensation Insurance</u>. Subject to approval by the Bankruptcy Court, Merchant shall at all times during the Sale Term maintain in full force and effect workers' compensation insurance (including employer liability insurance) covering all Retained Employees in compliance with all statutory requirements.

12.5 <u>Risk of Loss</u>. Without limiting any other provision of this Agreement, Merchant acknowledges that Agent is conducting the Sale on behalf of Merchant solely in the capacity of an agent, and that in such capacity (i) Agent shall not be deemed to be in possession or control of the Stores or the assets located therein or associated therewith, or of Merchant's employees located at the Stores, and (ii) except as expressly provided in this Agreement, Agent does not assume any of Merchant's obligations or liabilities with respect to any of the foregoing. Agent shall not be deemed to be a successor employer. Merchant and Agent agree that, subject to the terms of this Agreement, Agent shall bear all responsibility for liability claims of customers, employees, and other persons arising from events occurring at the Stores during and after the Sale Term (an "<u>Agent Claim</u>"). In the event of any liability claim other than an Agent Claim, Merchant shall administer such claim and shall present such claim to Merchant's liability insurance carrier in accordance with Merchant's policies and procedures existing immediately prior to the Sale Commencement Date, and shall provide a copy of the initial documentation relating to such claim to Agent at the address listed in this Agreement. To the extent that Merchant and Agent agree that a claim constitutes an Agent Claim, Agent shall administer such claim and shall present such claim to its liability insurance carrier, and shall provide copies of the initial documentation relating to such claim to Merchant. In the event that Merchant and Agent cannot agree whether a claim constitutes an Agent Claim, each party shall present the claim to its own liability insurance carrier, and a copy of the initial claim documentation shall be delivered to the other party to the address designated for delivery of notices hereunder.

Section 13. <u>Indemnification</u>.

13.1 <u>Merchant's Indemnification</u>. Merchant shall indemnify and hold Agent and its officers, directors, employees, agents, representatives, and independent contractors (collectively, "<u>Agent Indemnified Parties</u>") harmless from and against all claims, causes of action, demands, penalties, losses, liability, damage, or other obligations, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to: (i) Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document; (ii) subject to Agent's compliance with its obligations under Section 8.3 hereof, any failure by Merchant to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable law to be filed in respect

thereof; (iii) provided that Agent timely satisfies its funding obligations hereunder with respect to payroll, any failure of Merchant to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term; (iv) any consumer warranty or products liability claims relating to Merchandise; (v) any liability or other claims asserted by customers, any of Merchant's employees, or any other person against any Agent Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act); (vi) any harassment or any other unlawful, tortious, or otherwise actionable treatment of any customers, employees or agents of Agent by Merchant or any of its representatives; (vii) so long as Agent complies with Agent's obligations under this Agreement with respect to the payment or reimbursement of Occupancy Expenses to Merchant, any failure of Merchant to pay to any Occupancy Expenses to landlords in accordance with the Bankruptcy Code or Central Service Expenses during the Sale Term; and (viii) except to the extent such persons are acting at the direction or request of Agent or its representatives, the gross negligence (including omissions) or willful misconduct of the Merchant, its officers, directors, employees, agents (other than Agent) or representatives.

13.2    Agent Indemnification.  Agent shall indemnify and hold the Merchant and its officers, directors, employees, agents and representatives harmless from and against all claims, causes of action, demands, penalties, losses, liability, damage, or other obligations, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to: (i) Agent's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document; (ii) any claims by any party engaged by Agent as an employee or independent contractor arising out of such employment; (iii) any harassment or any other unlawful, tortious or otherwise actionable treatment of any customers, employees or agents of the Merchant by Agent or any of its representatives; (iv) any consumer warranty, products liability claims or other claims of any type or kind and by any party whatsoever relating to Additional Agent Goods; (v) as set forth in section 8.3 above; (vi) any liability or other claims asserted by customers, any of Merchant's employees, or any other person against any Merchant Indemnified Party by reason of acts or omissions of Agent or Agent's representatives in connection with the Sale, and (vii) the gross negligence (including omissions) or willful misconduct of Agent, its officers, directors, employees, agents or representatives.

Section 14.  Defaults.  The following shall constitute "Events of Default" hereunder:

(a)    The Merchant or Agent shall fail to perform any material obligation hereunder if such failure remains uncured five (5) business days after receipt of written notice thereof;

(b)    Any representation or warranty made by the Merchant or Agent proves untrue in any material respect as of the date made and, to the extent curable, continues uncured five (5) business days after written notice to the defaulting party; or

(c)    The granting of a motion by any party to convert the Merchant's bankruptcy case to a case under another chapter of the Bankruptcy Code (other than chapter 11) or the granting of a motion by any party to appoint a chapter 11 trustee.

(d)    The Sale is terminated prior to the Sale Termination Date or the Sale is materially interrupted or materially impaired for any reason other than (i) an Event of Default by Agent, or (ii) any other material breach or action by Agent not authorized hereunder.

Upon an Event of Default, the non-defaulting party (in the case of (a) or (b) above), or Agent (in the case of (c) above) may in its discretion elect to terminate this Agreement, and any party's damages or

entitlement to equitable relief on account of an Event of Default shall (in addition to the right to terminate as provided above) be determined by a court of competent jurisdiction.

Section 15.  Agent's Security Interest.

(a)     In consideration of and effective upon payment by Agent of the Initial Guaranty Payment on the Payment Date and delivery of the Letter of Credit to the applicable Lender, as Merchant's designee, Merchant hereby grants to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) all Proceeds (including, without limitation, credit card Proceeds); (iii) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 hereof; (iv) the FF&E Commission; (v) Agent's percentage share in excess of the Sharing Threshold, and (vii) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC as applicable in the state of Delaware) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of Merchant to Agent hereunder. Upon entry of the Approval Order, payment of the Initial Guaranty Payment on the Payment Date, and delivery of the Letter of Credit to the Lender, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

(b)     Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Lenders and Merchant), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests, provided, however, that (x) until the Merchant receives payment in full of the Guaranteed Amount, the Additional Agent Goods Fee, the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission), and such other amounts due to Merchant hereunder, the security interest granted to Agent hereunder shall be junior and subordinate in all respects to the security interests of Lenders in the Agent Collateral (subject to the carve out for professionals in the Bankruptcy Case) but solely to the extent and amount of the unpaid portion of the any of the Guaranteed Amount, the Additional Agent Goods Fee (if any), the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the FF&E Commission), and such other amounts due to Merchant hereunder, and (y) upon payment in full of the Guaranteed Amount, the Additional Agent Goods Fee (if any), the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the FF&E Commission), and such other amounts due to Merchant hereunder, any security interest or lien of the Lender in the Agent Collateral and the carve out for professionals in the Bankruptcy Case shall be junior and subordinate in all respects to the security interest and liens of Agent in the Agent Collateral. Merchant shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Agreement. For the avoidance of all doubt, the liens and security interests of Lenders shall at all times be subject to the carve-out for professionals in the bankruptcy Case.

(c)     Merchant will not sell, grant, assign or transfer any security interest in, or permit to exist any lien or encumbrance on, any of the Agent Collateral other than in favor of the Agent and each Lender.

(d)     In the event of an occurrence of an Event of Default by the Merchant hereunder, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Code.

Section 16.  Bidding and Auction.    The Bidding Procedures Order shall provide that, in consideration of Agent conducting its due diligence and entering into this Agreement (which may serve as

a base by which other offers may be measured and is subject to higher and better offers by way of an auction process) ("Auction"); then in the event that this Agreement shall not be consummated with Agent because Merchant elects as a consequence of the Auction to terminate this Agreement (which it shall be entitled to do upon written notice to Agent) and pursue an alternative higher/better transaction (whether with another party serving as liquidating agent, as a going concern buyer, or otherwise, an "Alternative Transaction") and provided that there is no Event of Default by Agent then pending hereunder, Merchant shall pay Agent from and out of the proceeds to Merchant of such other transaction (and shall only be required to pay Agent out of such proceeds) an amount equal to the sum of (i) $400,000 ("Breakup Fee"), (ii) an expense reimbursement of up to $200,000 to cover Agent's reasonable out-of-pocket costs and expenses associated with due diligence and professionals' fees and expenses associated with, among other things, negotiating, drafting, and obtaining approval of this Agreement and the bid procedures (the "Expense Reimbursement" and together with the Breakup Fee, the "Bid Protections"), and (iii) Agent's actual out-of-pocket costs of signage and freight in an amount not to exceed $450,000 (the "Signage Costs"); provided, however, that the Bidding Procedures Order shall (i) require the successful bidder to reimburse Agent up to the amount of the Signage Costs, and (ii) that Merchant shall have no liability for such Signage Costs. For avoidance of doubt, Agent's right to receive payment of the Bid Protections and reimbursement of the Signage Costs from the proceeds of an Alternative Transaction as provided herein shall be the sole and exclusive remedy of Agent in the event of termination of the Agency Agreement. At the Auction: (i) the Bid Protections shall not be eligible to be "credit bid" by Agent; (ii) the first overbid by a competing bidder shall be an amount equal a Guaranty Percentage of not less than 101.0% (as quantified by the Merchant), plus each competing bidder shall agree to reimburse the Merchant for the Signage Costs to be paid to Agent, with successive overbids in increments of not more than 0.1% absent Agent's consent; and (iii) all competing liquidation bids shall be on the same terms and conditions as this Agreement other than as to the increased Guaranty Percentage as determined by Merchant in its sole discretion. For the avoidance of all doubt, the requirements of clause (iii) of the immediately preceding sentence shall not apply to any going concern bids received by Merchant.

Section 17.  Miscellaneous.

17.1  Notices.  All notices and communications provided for pursuant to this Agreement shall be in writing and sent by email, by hand, by facsimile or by Federal Express or other recognized overnight delivery service, as follows:

|  | |
|---|---|
| If to the Agent: | HILCO MERCHANT RESOURCES, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attention: Ian S. Fredericks<br>Tel: (847) 418-2075<br>Fax: (847) 897-0859<br>Email: ifredericks@hilcotrading.com |
|  | GORDON BROTHERS RETAIL PARTNERS, LLC<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02119<br>Attn:   Michael Chartock<br>Tel:    617.210.7116<br>Email: mchartock@gordonbrothers.com |

If to the Merchant:  Deb Shops Inc.
       9401 Blue Grass Road
       Philadelphia, Pennsylvania 19114
       Attn: Keith Spirgel, Chief Financial Officer
       Tel: _____
       Email: KSpirgel@debshops.com

If to the Lender:   PNC Bank, National Association
       340 Madison Avenue
       New York, NY 10007
       Attention:  Marc Hansen
       Tel:  (212) 752-6043
       Fax:  (212) 303-0060
       Email: marc.hansen@pnc.com

       With a copy to (which shall not constitute notice):

       Hahn & Hessen LLP
       488 Madison Avenue
       New York, New York 10022
       Attention:  Daniel M. Ford
       Tel:  (212) 478-7200
       Fax:  (212) 478-7400
       Email: dford@hahnhessen.com

         -and-

       Ableco, L.L.C.
       875 Third Avenue
       New York, NY 10022
       Attn: Joseph Naccarato, Managing Director
       Tel: (212) 909-1455
       Fax: (212) 284-7906
       Email: jnaccarato@cerberuscapital.com

       With a copy to (which shall not constitute notice):

       David A. Fidler, Esq.
       Klee, Tuchin, Bogdanoff & Stern LLP
       1999 Avenue of the Stars
       Thirty-Ninth Floor
       Los Angeles, CA 90067-6049
       Tel: (310) 407-4000
       Fax: (310) 407-9090
       Email: dfidler@ktbslaw.com

         -and-

Riemer & Braunstein LLP
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Attn:  Steven E. Fox, Esq.
Tel:  212.789.3150
Fax:  212.719.0140
Email:  sfox@riemerlaw.com

17.2    Governing Law/Exclusive Jurisdiction.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without reference to any conflict of laws provisions thereof, except where governed by the Bankruptcy Code.  Each of the parties hereto irrevocably and unconditionally submits, for itself and its properties, to the exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Agreement.

17.3    Amendments.  This Agreement, the Exhibits hereto, and the Agency Documents may not be modified except in a written instrument executed by each of the parties hereto and consented to in writing by the Ableco and PNC (unless and until the Revolving Credit Obligations are paid in full), which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, that any modification or amendment to Section 6.1 of the Agency Agreement purporting to extend the Sale Term shall be subject to the prior consent of the Secured Lenders in their sole discretion.

17.4    No Waiver.  No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

17.5    Currency.  All reference to dollars in this Agreement and all schedules, exhibits, and ancillary documents related to this Agreement shall refer to US dollars.

17.6    Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon Agent and Merchant and their respective successors and assigns, including, but not limited to, any chapter 11 or chapter 7 trustee; provided, however, that this Agreement may not be assigned by Merchant or Agent to any party without the prior written consent of the other (which consent may be granted or withheld in the applicable party's sole discretion).

17.7    Execution in Counterparts.  This Agreement may be executed in one or more counterparts.  Each such counterpart shall be deemed an original but all such counterparts together shall constitute one and the same agreement.  This Agreement, to the extent signed and delivered by means of a facsimile machine, electronic mail or other electronic transmission in which the actual signature is evident, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  At the request of any party hereto, each other party hereto or thereto shall re-execute original forms hereof and deliver them to all other parties.  No party hereto shall raise the use of a facsimile machine, electronic mail, or other electronic transmission in which the actual signature is evident to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine, electronic mail or other electronic transmission in which the actual signature is evident as a defense to the formation of a contract and each party forever

32

waives such defense. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart signed by the party against which enforcement is sought.

17.8    Section Headings.    The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

17.9    Wiring of Funds.    All amounts required to be paid by Agent or the Merchant under any provision of this Agreement shall be made by wire transfer of immediately available funds which shall be wired by Agent or Merchant, as applicable, no later as 2:00 p.m. (Eastern Time) on the date that such payment is due; provided, however, that all of the information necessary to complete the wire transfer has been received by Agent or Merchant, as applicable, by 10:00 a.m. (Eastern Time) on the date that such payment is due. In the event that the date on which any such payment is due is not a business day, then such payment shall be made by wire transfer on the next business day.

17.10    Nature of Remedies.    Except to the extent expressly set forth herein, all rights, remedies, powers, privilege and adjustments under sections 3.1(b), 3.1(c), 3.4 and 11.1(o) shall be in addition to and not in limitation of those provided elsewhere in this Agreement or by applicable law. No failure to exercise and no delay in exercising, on the part of the Agent, any right, remedy, power, privilege or adjustment hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, privilege, or adjustment hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, privilege, or adjustment. For the avoidance of all doubt and notwithstanding anything to the contrary in this Agreement, the rights granted to Agent pursuant to Section 16 shall be Agent's sole and exclusive rights and remedies in the event of a termination of this Agreement by Merchant under Section 16.

17.11    Entire Agreement.    This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.

[Signatures Appear Next Page]

33

IN WITNESS WHEREOF, the Agent and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**HILCO MERCHANT RESOURCES, LLC**

By:_____

Print Name and Title:  Ian S. Fredericks, VP & AGC, Managing Membe

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By:_____

Print Name and Title:

Deb Stores Holding LLC

By:_____

Print Name and Title:

Deb Stores Holding II LLC

By: _____

Print Name and Title:

Deb Shops SDP Inc.

By: _____

Print Name and Title:

Deb Shops SDIH Inc.

By: _____

Print Name and Title:

[Merchant's Signatures Continued on Next Page]

IN WITNESS WHEREOF, the Agent and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**HILCO MERCHANT RESOURCES, LLC**

By:_____
Print Name and Title:

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By:_____
Print Name and Title:
Richard Edwards
co President

Deb Stores Holding LLC

By:_____
Print Name and Title:

Deb Stores Holding II LLC

By: _____
Print Name and Title:

Deb Shops SDP Inc.

By: _____
Print Name and Title:

Deb Shops SDIH Inc.

By: _____
Print Name and Title:

[Merchant's Signatures Continued on Next Page]

IN WITNESS WHEREOF, the Agent and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**HILCO MERCHANT RESOURCES, LLC**

By:_____
Print Name and Title:

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By:_____
Print Name and Title:

Deb Stores Holding LLC

By: _____
Print Name and Title: Dawn Robertson, CEO

Deb Stores Holding II LLC

By: _____
Print Name and Title: Dawn Robertson, CEO

Deb Shops SDP Inc.

By: _____
Print Name and Title: Dawn Robertson, CEO

Deb Shops SDIH Inc.

By: _____
Print Name and Title: Dawn Robertson, CEO

[Merchant's Signatures Continued on Next Page]

[Merchant's Signatures Continued from Prior Page]

Deb Shops SD Inc.

By: _____
Print Name and Title:  Dawn Robertson, CEO

Deb Shops SDE LLC

By: _____
Print Name and Title:  Dawn Robertson, CEO

Deb Shops SDW LLC

By: _____
Print Name and Title:  Dawn Robertson, CEO

Deb Shops SDE-Commerce LLC

By: _____
Print Name and Title:  Dawn Robertson, CEO

Deb Shops SDFMC LLC

By: _____
Print Name and Title:  Dawn Robertson, CEO

Agreed and Accepted as to Sections
3.3, 3.4, 8.3, 8.8, 8.10, 15, 16, and 17:

**PNC BANK, NATIONAL ASSOCIATION,**

By: _____

    Name: Ryan Peak

    Title: Senior Vice President

**ABLECO, L.L.C.**

By: _____

    Name: _____

    Title: _____

Agreed and Accepted as to Sections
3.3, 3.4, 8.3, 8.8, 8.10, 15, 16, and 17:

PNC BANK, NATIONAL ASSOCIATION,

By: _____
Name: _____
Title: _____

ABLECO, L.L.C.

By: _____
Name: _____Kevin Genda_____
Title: _____Senior Managing Director_____

## List of Exhibits

Exhibit 1 – Store List.
Exhibit 3.1(b) – Merchandise Level Adjustment Schedule.
Exhibit 3.1(c) – Cost Factor Threshold Adjustment Schedule
Exhibit 3.3(a) – Merchant's Designated Account
Exhibit 3.4 – Form of Letter of Credit.
Exhibit 4.1(a) – Per Store, Per Diem Occupancy Expenses.
Exhibit 5.1(a) – Inventory Taking Instructions.
Exhibit 5.2(b) – Distribution Center and On-Order Merchandise
Exhibit 8.1 – Sale Guidelines
Exhibit 8.12 – E-Commerce Platform Expense Schedule
Exhibit 11.1(o) – Mix Schedule
Exhibit 11.1(s) – Promotions Schedule
1775088.2

**Deb Shops**
**Exhibit 1**

**Store List**

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 4 | Berkshire | Berkshire Mall | 1665 State Hill Road Space 200 | Wyomissing | PA | 19610-1979 | 7,002 |
| 7 | East End Shopping Ctr | East End Shopping Center | 360 Kidder Street Suite 2 | Wilkesbarre | PA | 18702-5619 | 6,000 |
| 8 | Colonial Park | Colonial Park Mall | 4600 Jonestown Rd 42B Colonial Park Mall | Harrisburg | PA | 17109-6220 | 5,456 |
| 9 | Coventry | Coventry Mall | 351 W Sckuykill Rd C-1 | Pottstown | PA | 19465-7438 | 8,800 |
| 11 | Oxford Valley | Oxford Valley Mall | 2300 E Lincoln Highway Store 165 | Langhorne | PA | 19047-3303 | 8,000 |
| 12 | Viewmont | Viewmont Mall | 100 Viewmont Mall Space 840 | Scranton | PA | 18508-1306 | 5,679 |
| 14 | Palmer Park | Palmer Park Mall | Floor: Ste Suite: -138 Rte 248 | Easton | PA | 18045-2759 | 8,288 |
| 15 | Lehigh Valley | Lehigh Valley Mall | Lehigh Valley Mall Space 2060A | Whitehall | PA | 18052-5719 | 7,400 |
| 16 | Ohio Valley | Ohio Valley Mall | 67800 Mall Road Unit 875 | St. Clairsville | OH | 43950-1713 | 10,361 |
| 18 | Deptford | Deptford Mall | 1750 Deptford Center Rd Space 2063 | Deptford | NJ | 08096-5200 | 12,294 |
| 20 | Cumberland | Cumberland Mall | 3849 Delsea Dr B-6 | Vineland | NJ | 08360-7420 | 5,500 |
| 22 | Jersey Gardens | Jersey Gardens | 1000 Kapkowski Rd Space 1450 | Elizabeth | NJ | 07201-2935 | 8,000 |
| 23 | Connecticut Post | Connecticut Post Mall | 1201 Boston Post Rd Space 1000 | Milford | CT | 06460-2703 | 7,808 |
| 27 | Cherry Hill | Cherry Hill Mall | 2000 Route 38 Suite 2020 | Cherry Hill | NJ | 08002-2171 | 5,484 |
| 29 | Gateway | Gateway Mall | 226 Gateway Mall Unit F 612 | Lincoln | NE | 68505-2439 | 6,145 |
| 31 | Roosevelt | Roosevelt Mall | 2329 Cottman Avenue Space 19 | Philadelphia | PA | 19149-1003 | 9,000 |
| 32 | University | University Mall | 155 Dorset Street Suite B 1 | South Burlington | VT | 05403-6280 | 8,155 |
| 33 | Stroud | Stroud Mall | 344 Stroud Mall Road Space 136 | Stroudsburg | PA | 18360-1152 | 6,204 |
| 34 | Park City Ctr | Park City Center | 391 Park City Center Space C-391 | Lancaster | PA | 17601-2709 | 7,773 |
| 37 | Century Iii | Century Iii Mall | 3075 Clairton Road Space 850 | West Mifflin | PA | 15123-0008 | 8,425 |
| 38 | Susquehanna Valley | Susquehanna Valley Mall | 1 Susquehanna Valley Mall Dr Space A-13 | Selinsgrove | PA | 17870-1245 | 5,775 |
| 40 | Conestoga | Conestoga Mall | 3404 W. 13TH Street Unit 124 | Grand Island | NE | 68803-2389 | 8,490 |
| 41 | Lincoln | Lincoln Mall | 622 Geo Washington Hwy Store A 4 | Lincoln | RI | 02865-4211 | 7,500 |
| 42 | Grand Traverse | Grand Traverse Mall | 3200 S Airport Road - West Space 514 | Traverse City | MI | 49684-8053 | 6,044 |
| 43 | Greendale | Greendale Mall | 7 Neponset St Space W236 | Worcester | MA | 01606-2794 | 6,478 |
| 45 | Galleria At Crystal Run | Galleria At Crystal Run | 1 N Galleria Drive | Middletown | NY | 10941-3018 | 5,528 |
| 46 | Eastern Hills | Eastern Hills Mall | Store 646 4545 Transit Road | Williamsville | NY | 14221-6037 | 7,779 |
| 48 | Holyoke Mall At Ingleside | Holyoke Mall At Ingleside | 50 Holyoke St, Po Box 10124 Space D-256 | Holyoke | MA | 01040-2709 | 6,886 |
| 49 | Auburn | Auburn Mall | 550 Center Street Store B-6 | Auburn | ME | 04210-6300 | 6,550 |
| 50 | Rockaway Townsquare | Rockaway Townsquare | 301 Mt. Hope Avenue Space 1088A | Rockaway | NJ | 07866-2117 | 7,685 |
| 51 | Logan Valley | Logan Valley Mall | 5580 Goods Lane Suite 1108 | Altoona | PA | 16602-2811 | 7,273 |
| 52 | Northfield Square | Northfield Square | 1600 N State Route 50 Space 448 | Bourbonnais | IL | 60914-9310 | 7,431 |
| 54 | Oak Park | Oak Park Mall | 11391 W 95Th Street Space 41 | Overland Park | KS | 66214-1824 | 7,162 |
| 57 | Silver City Galleria | Silver City Galleria | 2 Galleria Mall Drive Space A-103 | Taunton | MA | 02780-6914 | 6,986 |
| 59 | Garden City Plaza | Garden City Plaza | 2204 E. Kansas Avenue | Garden City | KS | 67846-6967 | 7,500 |
| 62 | Walnut Sq | Walnut Square | 816 Walnut Square Blvd | Dalton | GA | 30721-4798 | 6,957 |
| 63 | Swansea | Swansea Mall | 262 Swansea Mall Dr 639 | Swansea | MA | 02777-4121 | 9,075 |
| 67 | Huntington | Huntington Mall | 775 Mall Rd | Barboursville | WV | 25504-1821 | 8,234 |
| 69 | Schuylkill | Schuylkill Mall | Hwy 61@ I-81 | Frackville | PA | 17931-2519 | 7,550 |
| 70 | | | | | | | |

Hilco Merchant Resources, LLC

11/20/2014

Deb Shops
Exhibit 1

Store List

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 71 | Neshaminy | Neshaminy Mall | 118 Neshaminy Mall Space 118 | Bensalem | PA | 19020-1612 | 8,212 |
| 74 | Crossroads | Crossroads Mall | Store E-10 75 Crossroads Mall | Mount Hope | WV | 25880-9507 | 9,028 |
| 76 | Fingerlakes | Fingerlakes Mall | 1579 Clark Street Space B-13 | Auburn | NY | 13022-9998 | 7,121 |
| 77 | Sangertown Sq | Sangertown Square | 1 Sangertown Square Space E-03 | New Hartford | NY | 13413-1518 | 8,200 |
| 78 | Eastwood | Eastwood Mall | 5555 Youngstown-Warren Rd Suite 404 | Niles | OH | 44446-4840 | 9,887 |
| 79 | Spotsylvania | Spotsylvania Mall | 3102 Plank Rd Unit 630 | Fredricksburg | VA | 22407-4954 | 8,400 |
| 81 | Pittsburgh Mills | Pittsburgh Mills | 424 Pittsburgh Mills Circle | Tarentum | PA | 15084-3832 | 7,011 |
| 82 | Clearview | Clearview Mall | 101 Clearview Circle Space 105 | Butler | PA | 16001-1591 | 9,739 |
| 85 | Apple Blossom | Apple Blossom Mall | 1850 Apple Blossom Drive Space N 174 | Winchester | VA | 22601-5187 | 7,427 |
| 86 | Chambersburg | Chambersburg Mall | 864 Chambersburg Mall Space 714 | Chambersburg | PA | 17201-7404 | 5,952 |
| 87 | Monroeville | Monroeville Mall | 242 Monroeville Mall | Monroeville | PA | 15146-2223 | 11,067 |
| 89 | Fashion Outlets | Fashion Outlets | 2022 Military Road | Niagara Falls | NY | 14304-1773 | 8,000 |
| 90 | Hudson Valley | Hudson Valley Mall | 1300 Ulster Avenue Suite 222 | Kingston | NY | 12401-1572 | 5,817 |
| 91 | Southpark Ctr | Southpark Center | 100 Southpark Center Al 100 | Strongsville | OH | 44136-9316 | 7,528 |
| 92 | Colony Sq | Colony Square | 3575 N Maple Avenue Suite 158 | Zanesville | OH | 43701-7019 | 8,343 |
| 93 | Dayton | Dayton Mall | 2700 Miamisburg Centerville Rd | Dayton | OH | 45459-3738 | 8,294 |
| 96 | Prices Corner | Prices Corner | 3238A Kirkwood Highway | Wilmington | DE | 19808-6130 | 7,980 |
| 97 | Chapel Hill | Chapel Hill Mall | 2000 Brittain Road Suite 80 | Akron | OH | 44310-4302 | 9,557 |
| 98 | Arnot | Arnot Mall | 3300 Chambers Road S Suite 5126 | Horsehead | NY | 14845-1444 | 6,192 |
| 99 | Springfield Commons | Springfield Commons | 1260 S Holland Sylvania Rd Space 45 | Holland | OH | 43528-8421 | 8,000 |
| 103 | Honey Creek | Honey Creek Mall | 3401 S Us Highway 41 Suite H 6 | Terre Haute | IN | 47802-4154 | 5,009 |
| 104 | Glenbrook Square | Glenbrook Square | 4201 Coldwater | Ft. Wayne | IN | 46805-1113 | 6,725 |
| 105 | Spring Hill | Spring Hill Mall | 1524 Spring Hill Mall 1524 | West Dundee | IL | 60118-1266 | 8,629 |
| 106 | Stratford Sq | Stratford Square Mall | 402 Stratford Square Space D 02 | Bloomingdale | IL | 60108-2204 | 7,866 |
| 108 | Beaver Valley | Beaver Valley Mall | 350 Beaver Valley Mall | Monaca | PA | 15061-2389 | 9,087 |
| 109 | Ford City | Ford City Mall | 7601 South Cicero Avenue 1486 | Chicago | IL | 60652-1022 | 9,572 |
| 111 | Lima | Lima Mall | 2400 Elida Road Space 120 | Lima | OH | 45805-1233 | 9,000 |
| 112 | Aviation | Aviation Mall | 578 Aviation Rd A-102 | Queensbury | NY | 12804-1835 | 6,652 |
| 113 | Chapel Hills | Chapel Hills Mall | 1710 Briar Gate Boulevard 499 | Colorado Springs | CO | 80920-3449 | 6,062 |
| 116 | Audubon Crossings | Audubon Crossings | 130 Black Horse Pike Suite #210 | Audubon | NJ | 08106-1900 | 7,200 |
| 117 | Wausau Ctr | Wausau Center | A108 Wausau Center Space A-108 | Wausau | WI | 54403-5505 | 6,002 |
| 119 | Lake View Sq | Lake View Square | 5775 Beckley Rd Suite 333 | Battle Creek | MI | 49015-7113 | 7,093 |
| 120 | Macomb | Macomb Mall | Suite 710 32271 Gratiot Ave | Roseville | MI | 48066-1100 | 9,549 |
| 121 | Florence | Florence Mall | 2134 Highway 71/75 & 18 2134 | Florence | KY | 41042-1440 | 4,715 |
| 122 | Newport On The Levee | Newport On The Levee | 1 Levee Way Suite 2108 | Newport | KY | 41071-1658 | 5,697 |
| 124 | The Market Place | The Market Place Mall | 401 Miracle Mile Rd B-19 | Rochester | NY | 14623-3861 | 7,785 |
| 125 | Augusta Marketplace | Augusta Marketplace | 15 Stephen King Drive Suite 7 | Augusta | ME | 04330-8081 | 7,056 |
| 126 | Shoppes On Maine | Shoppes On Maine | 4603 Maine Ave Se Suite 107 | Rochester | MN | 55904-4006 | 7,853 |
| 127 | Grand Central | Grand Central Mall | 400 Grand Central Mall | Parkersburg | WV | 26101-1112 | 7,100 |

Hilco Merchant Resources, LLC

11/20/2014

Deb Shops
Exhibit 1

Store List

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 128 | Miller Hill | Miller Hill Mall | 1600 Miller Trunk Highway Suite 106 | Duluth | MN | 55811-5635 | 7,211 |
| 130 | Riverdale Village | Riverdale Village | 12646 Riverdale Blvd | Coon Rapids | MN | 55448-6711 | 8,501 |
| 131 | Charleston Town Ctr | Charleston Town Center | 3000 Charleston Town Center Space C-1 | Charleston | WV | 25389-0008 | 9,028 |
| 133 | Quincy | Quincy Mall | 3349 Quincy Mall | Quincy | IL | 62301-4641 | 7,644 |
| 134 | Crossgates | Crossgates Mall | 120 Washington Ave M-206 | Albany | NY | 12203-6306 | 7,489 |
| 135 | Eastland | Eastland Mall | 1615 E Empire St Suite 29 | Bloomington | IL | 61701-3527 | 7,984 |
| 137 | Cherryvale | Cherryvale Mall | 7200 Harrison Avenue Space E-19 | Rockford | IL | 61112-1017 | 8,226 |
| 138 | The Crossroads | The Crossroads Mall | 6650 S Westnedge Avenue Space 253 | Portage | MI | 49024-3557 | 6,366 |
| 139 | Meridian | Meridian Mall | 1982 W Grand River Avenue 605 | Okemos | MI | 48864-1756 | 7,885 |
| 141 | Southridge Shopping Ctr | Southridge Shopping Ctr. | 5300 S 76Th Street 1710 | Greendale | WI | 53129-1119 | 7,209 |
| 142 | Memorial | Memorial Mall | 3347 Kohler Memorial Drive Space E05 - E05A | Sheboygan | WI | 53081-8305 | 6,323 |
| 144 | East Towne | East Towne Mall | 39 East Towne Mall E538 | Madison | WI | 53704-3711 | 10,005 |
| 145 | Sikes Senter | Sikes Senter Mall | 3111 Midwestern Parkway Suite 116 | Wichita Falls | TX | 76308-2834 | 10,268 |
| 146 | Grapevine Mills | Grapevine Mills | 3000 Grapevine Mills Parkway Suite 312 | Grapevine | TX | 76051-2015 | 9,178 |
| 147 | Westgate | Westgate Mall | 7701-I-40 West Space 272 | Amarillo | TX | 79121-0272 | 6,962 |
| 148 | Ingram Park | Ingram Park Mall | 6301 Nw Loop 410 Space Lo 7 | San Antonio | TX | 78238-3824 | 7,730 |
| 149 | Fox River | Fox River Mall | 4301 W Wisconsin Avenue Space 118 | Appleton | WI | 54913-6524 | 5,711 |
| 150 | Southpark | Southpark Mall | 4500 16Th Street Suite 185 | Moline | IL | 61265-7069 | 7,983 |
| 151 | Eastland | Eastland Mall | 2721A Eastland Mall Unit C-8 | Columbus | OH | 43232-4992 | 6,594 |
| 153 | Piedmont | Piedmont Mall | 325 Piedmont Drive Space 420 | Danville | VA | 24540-4028 | 7,850 |
| 154 | Bristol | Bristol Mall | 500 Gate City Highway Space 220 | Bristol | VA | 24201-2352 | 7,045 |
| 155 | Manassas | Manassas Mall | 8300 Sudley Road Space I-4 | Manassas | VA | 20109-3458 | 7,156 |
| 158 | Crystal Shopping Ctr | Crystal Shopping Center | 325 Willow Bend | Minneapolis | MN | 55428-3969 | 8,000 |
| 159 | Burnsville Ctr | Burnsville Center | 2040 Burnsville Center Space 2040 | Burnsville | MN | 55306-4438 | 11,173 |
| 161 | Dubois | Dubois Mall | 5522 Shaffer Road | Dubois | PA | 15801-3315 | 7,254 |
| 165 | Northtown | Northtown Mall | 303 Northtown Drive Space 303 | Blaine | MN | 55434-1040 | 9,716 |
| 166 | Courtland Ctr | Courtland Center | 4190 E Court St Suite 301 | Burton | MI | 48509-1798 | 7,843 |
| 167 | Fashion Sq | Fashion Square Mall | 4630 Fashion Square Mall B-226 | Saginaw | MI | 48604-2607 | 7,563 |
| 168 | Jackson Crossing | Jackson Crossing | 1138 Jackson Crossing F-124 | Jackson | MI | 49202-2041 | 10,455 |
| 169 | Adrian | Adrian Mall | 1357 S Main Street 1022 | Adrian | MI | 49221-4318 | 6,150 |
| 170 | Fox Valley Ctr | Fox Valley Center | 2228 Fox Valley Center Space D-18 | Aurora | IL | 60504-7975 | 7,666 |
| 172 | North Riverside Park | North Riverside Park Mall | 7501 W Cermak Rd D3 | North Riverside | IL | 60546-1432 | 10,275 |
| 173 | Frontier | Frontier Mall | 1400 Dell Range Blvd Space 93 & 94 | Cheyenne | WY | 82009-4851 | 4,787 |
| 174 | Eastridge | Eastridge Mall | 601 Se Wyoming Blvd Space 1174 | Casper | WY | 82609-4203 | 5,833 |
| 175 | Mesa | Mesa Mall | 2424 Us Highway 6 And 50 Space 214 | Grand Junction | CO | 81505-1115 | 8,300 |
| 177 | Colorado Mills | Colorado Mills | 14500 W Colfax Ave Suite 450 | Lakewood | CO | 80401-3221 | 7,076 |
| 178 | Town Center At Aurora | Town Center Aurora | Floor:Uni Suite:1001 14200 E Alameda Ave | Aurora | CO | 80012-2513 | 10,300 |
| 179 | Chicago Ridge | Chicago Ridge Mall | 444 Chicago Ridge Mall A-23 | Chicago Ridge | IL | 60415-2671 | 7,800 |
| 180 | River Hills | River Hills Mall | 1850 Adams Street Space 102 | Mankato | MN | 56001-4848 | 6,007 |

11/20/2014

Deb Shops
Exhibit 1

Store List

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 182 | Country Club | Country Club Mall | 1262 Vocke Rd 174 | La Vale | MD | 21502-7822 | 9,375 |
| 183 | White Oaks | White Oaks Mall | 2501 W Wabash Lower Level B10 | Springfield | IL | 62704-4202 | 7,850 |
| 184 | Village | Village Mall | 2917 N Vermilion Street Suite 30 | Danville | IL | 61832-1366 | 6,406 |
| 187 | St. Louis Outlet Center | St. Louis Outlet Center | 5555 St Louis Mills Blvd | Hazelwood | MO | 63042-4428 | 7,613 |
| 188 | University | University Mall | 575 E University Parkway Suite H 148 | Orem | UT | 84097-7400 | 7,800 |
| 189 | Valley View | Valley View Mall | 3800 State Road 16 Suite 177 | La Crosse | WI | 54601-1826 | 6,656 |
| 190 | Provo Town Ctr | Provo Town Center | 1200 Town Centre Space 2120 | Provo | UT | 84601-2990 | 5,442 |
| 191 | Forest | Forest Mall | 835 W Johnson Street H-11 | Fond Du Lac | WI | 54935-2033 | 6,600 |
| 192 | Regency | Regency Mall | 5538 Durand Avenue Unit 164 | Racine | WI | 53406-5052 | 5,883 |
| 194 | Merle Hay | Merle Hay Mall | 3800 Merle Hay Road Suite 402 | Des Moines | IA | 50310-1303 | 7,500 |
| 195 | Village Shopping Ctr | Village Shopping Center | 902 West Kimberly Road Suite 4 | Davenport | IA | 52806-5717 | 7,000 |
| 197 | Hutchinson | Hutchinson Mall | 1500 E 11Th Avenue Suite 18 | Hutchinson | KS | 67501-3705 | 7,323 |
| 198 | Crossroads Ctr | Crossroads Center | 4201 W Division St Suite 53 | St Cloud | MN | 56301-3689 | 6,806 |
| 199 | Paul Bunyan | Paul Bunyan Mall | 1401 Paul Bunyan Drive Space 5 | Bemidji | MN | 56601-4155 | 7,660 |
| 200 | Maplewood | Maplewood Mall | 3001 White Bear Ave N Space 2001 | Maplewood | MN | 55109-1203 | 10,848 |
| 202 | Rockingham Park | The Mall At Rockingham Park | 99 Rockingham Park Blvd Space W-169 | Salem | NH | 03079-2953 | 5,031 |
| 203 | Pheasant Lane | Pheasant Lane Mall | 310 Daniel Webster Highway Space W171 | Nashua | NH | 03060-5730 | 5,556 |
| 205 | Square One | Square One Mall | Spc N223A 1201 Broadway | Saugus | MA | 01906-4197 | 7,690 |
| 206 | Emerald Sq | Emerald Square Mall | 999 S Washington St | N. Attleboro | MA | 02760-3656 | 5,503 |
| 207 | Eastfield | Eastfield Mall | 1655 Boston Road Unit D 10 | Springfield | MA | 01129-1399 | 7,038 |
| 208 | Hanover | Hanover Mall | 1775 Washington Street Suite 217 | Hanover | MA | 02339-1701 | 8,754 |
| 209 | Columbia | Columbia Mall | 2300 Bernadette Drive | Columbia | MO | 65203-4600 | 5,996 |
| 210 | The Citadel | The Citadel | 750 Citadel Drive East #2184 | Colorado Springs | CO | 80909-5360 | 7,577 |
| 211 | Columbia | Columbia Mall | Space 338-340 2800 Columbia Rd | Grand Forks | ND | 58201-6040 | 7,525 |
| 212 | The Marketplace | The Marketplace | 3271 Marketplace Drive Space C1 | Council Bluffs | IA | 51501-8202 | 7,500 |
| 213 | Lindale | Lindale Mall | 4444 First Ave Ne Suite 79 | Cedar Rapids | IA | 52402-3215 | 8,899 |
| 214 | Southern Hills | Southern Hills Mall | 4400 Sergeant Road | Sioux City | IA | 51106-4740 | 7,175 |
| 215 | Kennedy | Kennedy Mall | 555 Jfk Road Suite 471 | Dubuque | IA | 52002-5258 | 6,070 |
| 216 | Washington Sq | Washington Square Mall | 1138 Washington Square Mall | Evansville | IN | 47715-6809 | 8,269 |
| 218 | Galleria | Deb Shop | Floor: Ste Suite: 196 500 Galleria Dr | Johnstown | PA | 15904-8902 | 9,182 |
| 219 | University Park | University Park | 6501 N. Grape Road Space 114 | Mishawaka | IN | 46545-1032 | 4,506 |
| 220 | Richmond Centre | Richmond Centre | Building X Suite 700 2091 Lantern Ridge Drive | Richmond | KY | 40475-6010 | 7,502 |
| 221 | Northwest Plaza | Northwest Plaza | 1629 W Mcgalliard | Muncie | IN | 47304-2206 | 7,500 |
| 223 | Salmon Run | Salmon Run Mall | 21182 Salmon Run Mall Loop W C-112 | Watertown | NY | 13601-2387 | 5,454 |
| 224 | Midland | Midland Mall | 6800 Eastman Avenue Suite F-608 | Midland | MI | 48642-7811 | 8,153 |
| 225 | Rogers Plaza | Rogers Plaza | 1036 28Th Street Sw | Wyoming | MI | 49509-2800 | 9,161 |
| 226 | Indian Hills Plaza | Indian Hills Plaza | 4176 E. Blue Grass Road Unit 6 | Mt. Pleasant | MI | 48858-7966 | 8,125 |
| 227 | Hall Road Crossing | Hall Road Crossing | 13943 Hall Road | Shelby Township | MI | 48315-6103 | 7,080 |
| 228 | Sandusky | Sandusky Mall | 4314 Milan Rd Unit 305 | Sandusky | OH | 44870-7106 | 5,682 |

Hilco Merchant Resources, LLC

11/20/2014

**Deb Shops**

**Exhibit 1**

**Store List**

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 229 | Indian Mound | Indian Mound Mall | 771 S 30Th Street Suite 905S | Heath | OH | 43056-1299 | 7,334 |
| 231 | Oakwood | Oakwood Mall | 4800 Golf Road 84 | Eau Claire, | WI | 54701-9046 | 5,852 |
| 232 | Mall Plaza S.C. | Mall Plaza S.C. | 220 Main Mall Rds | S. Portland, | ME | 04106-2313 | 6,825 |
| 233 | Bangor | Bangor Mall | 663 Stillwater Ave Space D4, 6 | Bangor | ME | 04401-3609 | 8,067 |
| 234 | West Side | West Side Mall | 26 Westside Mall S5 | Edwardsville | PA | 18704-3305 | 8,400 |
| 236 | Governors Sq. | Governor'S Sq. Mall | 2801 Wilma Rudolph Blvd Suite 685 | Clarksville | TN | 37040-5065 | 7,110 |
| 237 | River Oaks Ctr | River Oaks Center | 62 River Oaks Center Drive Space D13 | Calumet City | IL | 60409-5507 | 7,594 |
| 239 | Wheaton Plaza | Wheaton Plaza | 11160 Veirs Mill Road Space 4A | Wheaton | MD | 20902-2538 | 7,051 |
| 241 | Town Of Westminster | Town Mall Of Westminster | 400 N Center Street 137-139 | Westminster | MD | 21157-5186 | 8,033 |
| 243 | Chautauqua | Chautauqua Mall | 524 Chautauqua Mall 524 | Lakewood | NY | 14750-2024 | 6,528 |
| 244 | Capital | Capital Mall | 3600 Country Club Drive | Jefferson City | MO | 65109-1060 | 6,000 |
| 245 | Battlefield | Battlefield Mall | 2825 South Glenstone Ave F-04 | Springfield | MO | 65804-3724 | 4,000 |
| 246 | Towne West Sq | Towne West Square | 4600 West Kellogg Drive Space Q.06B | Wichita | KS | 67209-2568 | 6,516 |
| 247 | Towne East Sq | Towne East Square | 7700 E Kellogg Drive Suite S3 | Wichita | KS | 67207-1772 | 7,500 |
| 249 | Champlain Center North | Champlain Center North | 60 Smithfield Blvd Space C-114 | Plattsburgh | NY | 12901-2104 | 8,299 |
| 251 | Union Consumer Sq | Union Consumer Square | 3801 Union Road | Cheektowaga | NY | 14225-4285 | 7,500 |
| 252 | Exton Sq | Exton Square.. | 120 Exton Square Parkway | Exton | PA | 19341-2440 | 8,065 |
| 255 | Great Lakes | Great Lakes Mall | 7850 Mentor Avenue Space 586A | Mentor | OH | 44060-5520 | 7,400 |
| 256 | Parmatown | Parmatown Mall | 7945 W Ridgewood Drive Space 75 | Parma | OH | 44129-5516 | 12,908 |
| 258 | Patrick Henry | Patrick Henry Mall | 12300 Jefferson Ave Space 420 | Newport News | VA | 23602-0019 | 5,269 |
| 261 | Hanes | Hanes Mall | 3320 Silas Creek Parkway Suite 720 | Winston-Salem | NC | 27103-3031 | 5,775 |
| 262 | Great Northern | Great Northern | 372 Great Northern Mall | North Olmsted | OH | 44070-3343 | 7,564 |
| 264 | Lansing | Lansing Mall | 5398 W Saginaw Hwy | Lansing | MI | 48917-3280 | 6,402 |
| 265 | Oakdale | Oakdale Mall | 601-635 Harry L Drive Space 59/60 | Johnson City | NY | 13790-1269 | 6,847 |
| 266 | Fairlane Green | Fairlane Green | 3380 Fairlane Drive | Allen Park | MI | 48101-2872 | 7,125 |
| 267 | Green Oak Village Place | Green Oak Village Place | 9820 Village Place Blvd | Brighton | MI | 48116-2088 | 7,300 |
| 268 | River Valley | River Valley Mall | 1635 River Valley Circle S Space 765 | Lancaster | OH | 43130-1465 | 5,825 |
| 271 | Fiesta | Fiesta Mall | 1445 W Southern Avenue Suite 1250 | Mesa | AZ | 85202-4803 | 8,546 |
| 272 | Metrocenter | Metrocenter | 9617 N Metro Parkway W Suite 1052 | Phoenix | AZ | 85051-1412 | 9,505 |
| 273 | Northpark | Northpark Mall | 101 Range Line Road Space 352 | Joplin | MO | 64801-4111 | 5,262 |
| 274 | Rimrock | Rimrock Mall | 300 S 24Th St Space E 13 | Billings | MT | 59102-5650 | 8,199 |
| 275 | Mid Rivers | Mid Rivers Mall | 1600 Mid Rivers Mall Space 1226 | St Peters | MO | 63376-4360 | 7,316 |
| 276 | South County | South County | 459 S County Centerway | St Louis | MO | 63129-1014 | 8,085 |
| 277 | Northwoods | Northwoods Mall | 2150 Northwoods Boulevard Unit C-6 | Charleston | SC | 29406-4044 | 5,881 |
| 278 | New River | New River Mall | 862 New River Rd | Christiansburg | VA | 24073-6586 | 7,099 |
| 281 | Crossroads | Crossroads Shopping Center | 167 Waterford Parkway North | Waterford | CT | 06385-1200 | 7,500 |
| 282 | Meriden Sq | Meriden Square | 470 Lewis Ave Space 1016 | Meriden | CT | 06451-2103 | 5,694 |
| 283 | Miami Valley Ctr | Miami Valley Center | 987 E Ash Street Suite 129 | Piqua | OH | 45356-4135 | 5,981 |
| 284 | Midway | Midway Mall | 4570 Midway Blvd Space D6 | Elyria | OH | 44035-9003 | 7,653 |

Hilco Merchant Resources, LLC

11/20/2014

Deb Shops
Exhibit 1

Store List

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 285 | Mercer | Mercer Mall | Mercer Mall Rd/Rte 460 & 25 Space 240 | Bluefield | WV | 24701-9097 | 7,312 |
| 287 | Brass Mill | Brass Mill Center & Commons | 495 Union Street Space 1062 | Waterbury | CT | 06706-1285 | 5,104 |
| 288 | Empire | Empire Mall | 4001 W 41St St Space 990 | Sioux Falls | SD | 57106-6513 | 7,173 |
| 290 | Rotterdam Sq | Rotterdam Square | 2 Campbell Road Space D-114 | Schenectady | NY | 12306-2400 | 6,358 |
| 291 | Fayette | Fayette Mall | 3615 Nicholasville Road Suite H848 | Lexington | KY | 40503-4409 | 6,163 |
| 292 | Great Northern | Great Northern Mall | 4081 Route #31 Po Box 2064 Space C-132 | Clay | NY | 13041-8799 | 5,363 |
| 293 | Festival At Jeff. Court | Festival At Jeff. Court | 4521 Outer Loop Drive | Louisville | KY | 40219-3856 | 8,775 |
| 294 | Centerpointe | Centerpointe Mall | 3631 28Th St. Se Space 10 L | Grand Rapids | MI | 49512-1688 | 8,200 |
| 295 | Rivertown Crossing | Rivertown Crossing | 3700 Rivertown Pky 2001 | Grandville | MI | 49418-3089 | 7,037 |
| 296 | Berkshire | Berkshire Mall | Old State Road & Route 8 Space D-112 | Lanesborough | MA | 01237-9501 | 5,046 |
| 299 | Newtowne | Newtowne Mall | 400 Mill Avenue Se Suite 725 | New Phila. | OH | 44663-3877 | 5,369 |
| 301 | West Ridge | West Ridge Shopping Center | 35685 Warren Road | Westland | MI | 48185-2015 | 13,600 |
| 302 | Genesee Valley Ctr | Genesee Valley Center | 3327 S. Linden Road Space 330 | Flint | MI | 48507-3007 | 7,571 |
| 303 | Burlington Sq | Burlington Square | 22291 Eureka Road | Taylor | MI | 48180-5291 | 7,700 |
| 305 | Concord | Concord Mall | 3701 S Main Street Space 140 | Elkhart | IN | 46517-3141 | 6,300 |
| 307 | Sunshine Sq | Sunshine Square | 700 Patchogue Yaphank Rd 700-8 | Medford | NY | 11763-2238 | 7,330 |
| 310 | Richland | Richland Mall | 705 Richland Mall Unit B-7 | Mansfield | OH | 44906-3802 | 7,445 |
| 312 | East Hills | East Hills Mall | 3702 Frederick Blvd Space 38 | Saint Joseph | MO | 64506-3059 | 5,758 |
| 313 | West Town | West Town Mall | Floor: Uni Suite: 1176A 7600 Kingston Pike | Knoxville | TN | 37919-5603 | 8,073 |
| 315 | Rogue Valley | Rogue Valley Mall | 1600 North Riverside Space 1007 | Medford | OR | 97501-4660 | 8,046 |
| 317 | West Ridge | West Ridge Mall | 1801 Sw Wanamaker F-7 | Topeka | KS | 66604-3846 | 5,300 |
| 321 | Metropolis | Metropolis | 313 Metropolis Mile Suite 120 | Plainfield | IN | 46168-2468 | 7,821 |
| 322 | Salem Centre | Salem Centre | 480 Centre Street Ne Suite 1114 | Salem | OR | 97301-3600 | 5,927 |
| 323 | Tippecanoe | Tippecanoe Mall | 2415 Sagamore Parkway South Space B 01A | Lafayette | IN | 47905-5193 | 8,958 |
| 326 | Richmond Sq | Richmond Square | 3801 East Main Street Space 747 | Richmond | IN | 47374-3685 | 4,654 |
| 327 | Bay Park Sq | Bay Park Square | 295 Bay Park Square Space 299 | Green Bay | WI | 54304-5103 | 7,889 |
| 329 | Gurnee Mills | Gurnee Mills | 6170 W. Grand Ave. Store #309 | Gurnee | IL | 60031-4542 | 9,255 |
| 332 | Northtown | Northtown Mall | 4750 N Division St 122 | Spokane | WA | 99207-1432 | 5,933 |
| 333 | Spokane Valley | Spokane Valley Mall | 14700 E Indiana Ave 2164 | Spokane | WA | 99216-1844 | 6,023 |
| 334 | Robinson Town Centre | Robinson Town Centre | 1770 Park Manor Boulevard | Pittsburgh | PA | 15205-4807 | 6,000 |
| 335 | Rockvale Outlets | Rockvale Outlets | 35 S. Willowdale Drive Suite 721 | Lancaster | PA | 17602-1479 | 9,553 |
| 336 | York Galleria | York Galleria | Floor: Ste Suite: 288 2899 Whiteford Rd | York | PA | 17402-8937 | 5,500 |
| 337 | Green Ridge Sq | Green Ridge Square | 3286 Alpine Ave Nw Suite D | Grand Rapids | MI | 49544-1668 | 6,050 |
| 347 | St. Lawrence Centre | St. Lawrence Centre | Store S07 6031 St Lawrence Centre | Massena | NY | 13662-7242 | 5,500 |
| 349 | Castleton Sq | Castleton Square Mall | 6020 E 82Nd Street Space 718 A | Indianapolis | IN | 46250-4746 | 6,877 |
| 350 | Greenwood Park | Greenwood Park Mall | Space G02A 1251 Us Hwy 32 N | Greenwood | IN | 46142-4503 | 8,430 |
| 351 | Westroads | Westroads Mall | 10000 California Street Suite 2525 | Omaha | NE | 68114-2308 | 8,754 |
| 352 | Oak View | Oak View Mall | 3001 South 144Th Street Suite 1135 | Omaha | NE | 68144-5246 | 6,679 |
| 353 | Outlet Collection Seattle | The Outlet Collection Seattle | 1101 Outlet Collection Way Space 323 | Auburn | WA | 98001-6530 | 7,276 |

11/20/2014

## Deb Shops
### Exhibit 1

**Store List**

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 354 | Northwoods | Northwoods Mall | Floor: Ste Suite: Au01B 2200 W War Memorial | Peoria | IL | 61613-1099 | 8,512 |
| 356 | Carousel Ctr | Destiny Usa | 9090 Destiny Usa Drive Space D-105 | Syracuse | NY | 13204-9098 | 5,145 |
| 357 | Green Tree | Green Tree Mall | 757 E Lewis And Clark Parkway Space 338 | Clarksville | IN | 47129-2269 | 9,120 |
| 358 | Birchwood | Birchwood Mall | 4350 24Th Avenue Suite 608 | Fort Gratiot | MI | 48059-3875 | 7,212 |
| 359 | Kingsport Town Ctr | Kingsport Town Center | Space 3-22 Lower Level 2101 Fort Henry Dr | Kingsport | TN | 37664-3659 | 6,927 |
| 360 | Bradley Sq | Bradley Square Mall | 200 Nw Paul Huff Hwy Suite 8 | Cleveland | TN | 37312-2981 | 7,223 |
| 361 | Oakland | Oakland Mall | Space 361 622 W 14 Mile Road | Troy | MI | 48083-4236 | 11,803 |
| 362 | The Mall Of Monroe | The Mall Of Monroe | 2121 N Monroe Street Unit 400 | Monroe | MI | 48162-5331 | 4,983 |
| 363 | Waterside Marketplace | Waterside Marketplace | 50467 Waterside Drive | Chesterfield | MI | 48051-9999 | 7,200 |
| 364 | Bay City | Bay City Mall | 4101 E Wilder Rd C315 | Bay City | MI | 48706-2254 | 8,709 |
| 365 | Premium Outlets | Premium Outlets | 12245 S Beyer Road Suite A130 | Birch Run | MI | 48415-8362 | 7,040 |
| 368 | Mckinley | Mckinley Mall | 3701 Mckinley Pky Space 224 | Blasdell | NY | 14219-2685 | 8,484 |
| 369 | Central | Central Mall | 5111 Rogers Avenue Space 192 | Fort Smith | AR | 72903-2000 | 7,831 |
| 370 | Magic Valley | Magic Valley Mall | 1485 Poleline Rd - E Box 36 Space 153 | Twin Falls | ID | 83301-3594 | 8,259 |
| 371 | Boise Town Sq | Boise Town Square | 350 N Milwaukee St Suite 1137 | Boise | ID | 83704-9137 | 5,672 |
| 372 | Rushmore | Rushmore Mall | 2200 N Maple Ave Space 232 | Rapid City | SD | 57701-7881 | 7,217 |
| 373 | Canton Ctr | Canton Center | 4050 Tuscarawas St West | Canton | OH | 44708-5427 | 12,010 |
| 374 | Kirkwood | Kirkwood Mall | 862 Kirkwood Mall | Bismarck | ND | 58504-5752 | 6,045 |
| 377 | Tulsa Hills | Tulsa Hills | 7419 S Olympia Ave W Space A11 | Tulsa | OK | 74132-1838 | 7,500 |
| 378 | Martinsburg | Martinsburg Mall | 800 Foxcroft Avenue Space 422 | Martinsburg | WV | 25401-1829 | 9,415 |
| 379 | Tulsa Promenade | Tulsa Promenade | 4107 South Yale Suite 222 | Tulsa | OK | 74135-6079 | 6,836 |
| 380 | The Centre At Salisbury | The Centre At Salisbury | 2300 N Salisbury Blvd Space C-121 | Salisbury | MD | 21801-7810 | 9,372 |
| 382 | Illinois Ctr | Illinois Center | 3000 W Deyoung Street Space 716 | Marion | IL | 62959-4893 | 8,640 |
| 383 | Hulen | Hulen Mall | 4800 South Hulen Street Suite 1200 | Fort Worth | TX | 76132-1419 | 9,078 |
| 384 | Ridgmar | Ridgmar Mall | 1774 Green Oaks Road | Fort Worth | TX | 76116-1707 | 7,961 |
| 385 | Santa Fe Place | Santa Fe Place | 4250 Cerrillos Rd Space 1080 Po Box 29684 | Santa Fe | NM | 87507-4697 | 8,207 |
| 386 | Killeen | Killeen Mall | 2100 S W S Young Dr Suite 1016 | Killeen | TX | 76543-5320 | 5,500 |
| 388 | South Towne | South Towne Center And Market | 10450 S. State Street Space 1130 | Sandy | UT | 84070-3113 | 7,928 |
| 389 | Red Cliffs | Red Cliffs | 1770 E Red Cliffs Drive Store 104 | St. George | UT | 84790-8159 | 6,710 |
| 390 | Animas Valley | Animas Valley Mall | 4601 E Main Ave Space 920 | Farmington | NM | 87402-8646 | 8,000 |
| 391 | Laurel | Laurel Mall | 20 Laurel Mall | Hazelton | PA | 18202-1201 | 8,600 |
| 392 | Newgate | Newgate Mall | 3651 Wall Avenue Suite 1086 | Ogden | UT | 84405-2003 | 5,654 |
| 394 | Millcreek | Millcreek Mall | 635 Millcreek Mall | Erie | PA | 16565-0602 | 10,386 |
| 396 | Valley Mall | Valley Mall | 1925 E Market Street 323 | Harrisonburg | VA | 22801-3432 | 7,630 |
| 397 | Mall Of America | Mall Of America | 151 N Garden | Bloomington | MN | 55425-5517 | 8,931 |
| 399 | Branson Landing | Branson Landing | 501 Branson Landing Boulevard | Branson | MO | 65616-2092 | 6,731 |
| 400 | Upper Valley | Upper Valley Mall | 1475 Upper Valley Pike | Springfield | OH | 45504-6000 | 6,305 |
| 402 | Rivergate | Rivergate Mall | Suite 1110 1000 Rivergate Parkway | Goodlettsville | TN | 37072-2402 | 6,869 |
| 407 | Aroostook Centre | Aroostook Centre | 830 Main St Unit 18 | Presque Isle | ME | 04769-2277 | 8,389 |

Hilco Merchant Resources, LLC

11/20/2014

Deb Shops
Exhibit 1

Store List

| Store # | Name | Mall Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 408 | Deerbrook | Deerbrook Mall | Floor: Ste Suite: 2216 20131 Hwy 59 N | Humble | TX | 77338-2335 | 8,003 |
| 410 | Lloyd Ctr | Lloyd Center | 942 Lloyd Center Suite 1329-C | Portland | OR | 97232-1262 | 7,800 |
| 411 | Lodi Outlets | Lodi Outlets | 9911 Avon Lake Road Unit 435 | Burbank | OH | 44214-9631 | 7,265 |
| 413 | Ashtabula | Ashtabula Mall | 3315 North Ridge East Unit 420 | Ashtabula | OH | 44004-4367 | 7,475 |
| 414 | Eastgate | Eastgate Mall | 4601 Eastgate Boulevard Suite D-658 | Cincinnati | OH | 45245-1211 | 8,691 |
| 415 | Northgate | Northgate Mall | 9501 Colerain Avenue Space 142 | Cincinnati | OH | 45251-2005 | 8,073 |
| 416 | Saint Clair Sq | Saint Clair Square | 122 St Clair Square Space 122 | Fairview Heights | IL | 62208-2134 | 10,064 |
| 417 | Independence Ctr | Independence Center | Space 1080 18813 E 39Th | Independence | MO | 64057-1943 | 9,139 |
| 418 | Crabtree Valley | Crabtree Valley | 4325 Glenwood Ave Suite #1053 | Raleigh | NC | 27612-3374 | 7,174 |
| 419 | Four Seasons Town Ctr | Four Seasons Town Center | 400 Four Seasons Town Center Suite 235 | Greensboro | NC | 27407-4743 | 7,456 |
| 420 | Carolina Place | Carolina Place Mall | Space B-01 11025 Carolina Place Parkway | Pineville | NC | 28134-8399 | 6,832 |
| 421 | White Marsh | White Marsh Mall | 8200 Perry Hall Blvd Suite 2265 | Baltimore | MD | 21236-4901 | 7,168 |
| 422 | Galleria At White Plains | Galleria At White Plains | 100 Main Street Suite 305 | White Plains | NY | 10601-2601 | 7,973 |
| 423 | Tuttle Crossing | The Mall At Tuttle Crossing | 251-A 5043 Tuttle Crossing Blvd | Dublin | OH | 43016-1519 | 6,930 |
| 424 | Westgate | Westgate Marketplace | 6319 Southwest 3Rd Street | Oklahoma City | OK | 73128-1023 | 8,776 |
| 288 | | | | | | | 7,486 |

11/20/2014

**Deb Shops**
**Exhibit 3.1(b)**

| Merchandise Threshold Schedule | | |
| --- | --- | --- |
| **Cost Value** | **Adjustment Points** | **Adjusted Guaranty** |
| 46,000,000 | 0.34% | 93.10% |
| 45,800,000 | 0.34% | 93.44% |
| 45,600,000 | 0.34% | 93.78% |
| 45,400,000 | 0.34% | 94.12% |
| 45,200,000 | 0.34% | 94.46% |
| 45,000,000 | 0.31% | 94.80% |
| 44,800,000 | 0.31% | 95.11% |
| 44,600,000 | 0.31% | 95.42% |
| 44,400,000 | 0.31% | 95.73% |
| 44,200,000 | 0.31% | 96.04% |
| 44,000,000 | 0.28% | 96.35% |
| 43,800,000 | 0.28% | 96.63% |
| 43,600,000 | 0.28% | 96.91% |
| 43,400,000 | 0.28% | 97.19% |
| 43,200,000 | 0.28% | 97.47% |
| 43,000,000 | 0.25% | 97.75% |
| 42,800,000 | 0.25% | 98.00% |
| 42,600,000 | 0.25% | 98.25% |
| 42,400,000 | 0.25% | 98.50% |
| 42,200,000 | 0.25% | 98.75% |
| 42,000,000 | | 99.00% |
| 38,000,000 | | 99.00% |
| 37,800,000 | 0.23% | 98.77% |
| 37,600,000 | 0.23% | 98.54% |
| 37,400,000 | 0.23% | 98.31% |
| 37,200,000 | 0.23% | 98.08% |
| 37,000,000 | 0.23% | 97.85% |
| 36,800,000 | 0.26% | 97.59% |
| 36,600,000 | 0.26% | 97.33% |
| 36,400,000 | 0.26% | 97.07% |
| 36,200,000 | 0.26% | 96.81% |
| 36,000,000 | 0.26% | 96.55% |
| 35,800,000 | 0.29% | 96.26% |
| 35,600,000 | 0.29% | 95.97% |
| 35,400,000 | 0.29% | 95.68% |
| 35,200,000 | 0.29% | 95.39% |
| 35,000,000 | 0.29% | 95.10% |
| 34,800,000 | 0.32% | 94.78% |
| 34,600,000 | 0.32% | 94.46% |
| 34,400,000 | 0.32% | 94.14% |
| 34,200,000 | 0.32% | 93.82% |
| 34,000,000 | 0.32% | 93.50% |

Note(s):
1. Adjustments between the increments shall be on a prorata basis.
2. In the event that the Cost value of the Merchandise is greater than $46,000,000, each $200,000 (or pro rata portion thereof) increment shall decrease the Guaranty by 0.38%.

3. In the event that the Cost value of the Merchandise is less than $34,000,000, each $200,000 (or pro rata portion thereof) increment shall decrease the Guaranty by 0.36%.

**Deb Shops**
**Exhibit 3.1 (c)**

| Cost Factor | | |
|---|---|---|
| Cost Factor | Adjustment Points | Adjusted Guaranty |
| **31.00%** | | **99.00%** |
| 31.05% | 0.25% | 98.75% |
| 31.10% | 0.25% | 98.50% |
| 31.15% | 0.25% | 98.25% |
| 31.20% | 0.25% | 98.00% |
| 31.25% | 0.25% | 97.75% |
| 31.30% | 0.25% | 97.50% |
| 31.35% | 0.25% | 97.25% |
| 31.40% | 0.25% | 97.00% |
| 31.45% | 0.25% | 96.75% |
| 31.50% | 0.25% | 96.50% |
| 31.55% | 0.25% | 96.25% |
| 31.60% | 0.25% | 96.00% |
| 31.65% | 0.25% | 95.75% |
| 31.70% | 0.25% | 95.50% |
| 31.75% | 0.25% | 95.25% |
| 31.80% | 0.25% | 95.00% |
| 31.85% | 0.25% | 94.75% |
| 31.90% | 0.25% | 94.50% |
| 31.95% | 0.25% | 94.25% |
| 32.00% | 0.25% | 94.00% |

*Notes:*
*1. Adjustments between the increments shall be on a prorata basis.*
*2. In the event that the Cost Factor of Merchandise is greater than 32.00%, each 0.05% (or pro rata portion thereof) increment shall decrease the Guaranty by 0.25%.*

**Exhibit 3.3(a)**


**Routing #: 031207607**
**Acct. #: 8026568733**
**Acct. Name: Deb Shops SDFMC, LLC**

## FORM OF AGENT LETTER OF CREDIT

[NAME OF ISSUING BANK]

[ADDRESS]

Date: _____, 2014

Irrevocable Standby Letter of Credit Number: _____

BENEFICIARY:   _____

           _____

           _____

           _____

           _____

           _____

           _____

           _____

Credit No.: _____
Opener's Reference No.: _____

Gentlemen:

BY ORDER OF:  _____

We hereby open in your favor our Irrevocable Standby Letter of Credit (the "Letter of Credit") for the account of _____ (the "Agent") for a sum or sums not exceeding a total of _____ U.S. Dollars (_____) available by your draft(s) at SIGHT on OURSELVES effective immediately and expiring at OUR COUNTERS on _____, 2014, or such earlier date on which the beneficiaries shall notify us in writing that this Letter of Credit shall be terminated accompanied by the original Letter of Credit (the "Expiry Date").

Draft(s) must be accompanied by the original of this Letter of Credit and a signed statement in the form attached hereto as **Exhibit A** signed by an officer of _____ and an officer of _____ (the "Beneficiaries").

This Letter of Credit may be reduced from time to time when accompanied by a signed statement from the Beneficiaries in the form attached as **Exhibit B**.

If a drawing is received by _____ at or prior to 12:00 noon, Eastern Time, on a Business Day, and provided that such drawing conforms to the terms and conditions hereof, payment of the drawing amount shall be made to the Beneficiaries, as directed below, in immediately available funds on the next Business Day.  If however, a drawing is received by _____ after 12:00 noon, Eastern Time, on a Business Day, and provided that such drawing conforms with the terms and conditions hereof, payment of the drawing amount shall be made to the Beneficiaries in immediately available funds on the second succeeding Business Day.

As used in this Letter of Credit, "Business Day" shall mean any day other than Saturday, Sunday or a day on which banking institutions in _____ are required or authorized to close.

Partial and/or multiple drawings are permitted.

Each draft must bear upon its face the clause, "Drawn under Letter of Credit No. _____, dated _____, 20[  ] of [NAME AND ADDRESS OF ISSUING BANK]."

Except so far as otherwise expressly stated herein, this Letter of Credit is subject to the Uniform Customs and Practices for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600.

We hereby agree that drafts drawn under and in compliance with the terms of this Letter of Credit will be duly honored if presented to the above mentioned drawee bank on or before the Expiry Date.

Kindly address all correspondence regarding this Letter of Credit to the attention of our Letter of Credit Operations, [ADDRESS OF L/C DEPARTMENT OF ISSUING BANK] attention _____, mention our reference number as it appears above.  Telephone inquiries can be made to _____ at _____.

Very truly yours,

Authorized official

## EXHIBIT A

IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____

<div align="center">Re:    Drawing for Amounts Due to:</div>

_____
_____
_____
_____


_____
_____
_____
_____

Ladies and Gentlemen:

The undersigned refer to your Letter of Credit No. _____ (the "Letter of Credit"). Capitalized terms used but not defined herein, shall have the meaning assigned to them in the Letter of Credit. The undersigned, duly authorized officers of _____ and of _____, in their respective capacities as Beneficiaries of the Letter of Credit hereby certifies to you that:

(i)    _____ (the "Agent") has not made a payment when due of or for the Guaranteed Amount or Expenses due by the Agent to _____ (the "Merchant"), pursuant to, and as such terms are defined in that certain Agency Agreement, dated as of _____, 2014, by and between the Merchant on the one hand, and the Agent, on the other.

(ii)    The amount to be drawn is $_____ (the "Amount Owing").

(iii)    Payment is hereby demanded in an amount equal to the lesser of (a) the Amount Owing and (b) the face amount of the Letter of Credit as of the date hereof.

(iv)    The Letter of Credit has not expired prior to the delivery of this letter and the accompanying sight draft.

(v)    In accordance with the terms of the Letter of Credit, the payment hereby demanded is requested to be made by wire transfer to the following account:

[_____]
[_____]
[_____]
Further Credit to: [Account Title]
[Account No. _____]

IN WITNESS WHEREOF, the undersigned have executed and delivered this certificate as of this _____ day of _____, 20[ ].

_____

By: _____
Name: _____
Title: _____

_____

By: _____
Name: _____
Title: _____

**EXHIBIT B**

IRREVOCABLE STANDBY LETTER OF CREDIT NO. _____

Re:    Reduction of Face Amount

_____
_____
_____
_____


_____
_____
_____
_____

Ladies and Gentlemen:

The undersigned refer to your Letter of Credit No. _____ (the "Letter of Credit"). Capitalized terms used but not defined herein, shall have the meaning assigned to them in the Letter of Credit.    The undersigned, duly authorized officers of _____ and of _____, in their respective capacities as Beneficiaries of the Letter of Credit hereby confirms to you that the face amount of the Letter of Credit No. _____ shall be reduced from its original face amount to a new face amount of $_____.

IN WITNESS WHEREOF, the undersigned have executed and delivered this certificate as of this _____ day of _____, 20[ ].

_____

By: _____
Name: _____
Title: _____


_____

By: _____
Name: _____
Title: _____

Deb Shops
Exhibit 4.1 (c)
Occupancy per Diem

| | | Occupancy | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Per Diem | | | | | | | | | | | | | % Rent | | | Breakpoint Rent | | | | | | | |
| Store # | Store Name | Rnt,Cam,Ins,Fees | Utilities | Repairs/Maint | Taxes | 5311-000 Loss Prevention | 5315-000 Store POS Expense | 5380-000 Refuse | 5390-000 Exterminator | 5410-000 Telephone | 7410-150 Data Collection | 7510 Data Services | 8009-000 Loss Prevention Recovery | Total | Lease Commencement | Lease Expiration | % Rent Rate | Lease Commencement | Lease Expiration | BreakPoint 1 | PercRate | BreakPoint 2 | PercRate | BreakPoint 3 | PercRate |
| 4 | Berkshire | 273 | 43 | 14 | 71 | 5 | 0 | 4 | - | 6 | - | - | - | 416 | 2/1/2014 | 1/31/2015 | 15.0% | | | | | | | | |
| 7 | East End Shopping Ctr | 49 | 30 | 130 | 0 | 5 | 0 | 7 | - | 4 | - | - | - | 225 | 2/1/2013 | MTM | 6.0% | | | | | | | | |
| 8 | Colonial Park | 209 | 51 | 10 | 32 | 5 | 0 | 13 | - | 5 | - | - | - | 324 | | | | | | | | | | | |
| 9 | Coventry | 41 | 28 | 35 | 0 | 5 | 0 | 10 | - | 5 | - | - | - | 124 | 2/1/2014 | 1/31/2016 | 3.0% | | | | | | | | |
| 11 | Oxford Valley | 219 | 122 | 20 | 1 | 5 | 0 | 14 | - | 4 | - | - | - | 385 | | | | | | | | | | | |
| 12 | Viewmont | 459 | 45 | 13 | 46 | 5 | 0 | 6 | - | 5 | - | - | - | 578 | | | | 2/1/2014 | 1/31/2016 | 1,646,910 | 5.0% | - | 0.0% | - | 0.0% |
| 15 | Palmer Park | 218 | 39 | 27 | 1 | 5 | 0 | 7 | - | 6 | - | - | - | 302 | 2/1/2012 | 1/31/2015 | 12.0% | | | | | | | | |
| 16 | Lehigh Valley | 1,316 | 93 | 17 | 98 | 5 | 0 | 17 | 1 | 6 | - | - | - | 1,553 | | | | 9/12/2013 | 1/31/2019 | 4,714,517 | 6.0% | - | 0.0% | - | 0.0% |
| 18 | Ohio Valley | 583 | 83 | 54 | 88 | 5 | 0 | 10 | - | 5 | - | - | - | 827 | | | | 2/1/2012 | 1/31/2017 | 1,175,000 | 5.0% | - | 0.0% | - | 0.0% |
| 20 | Deptford | 800 | 117 | 47 | 0 | 5 | - | - | - | 23 | - | - | - | 991 | | | | 2/1/2014 | 1/31/2015 | 2,657,080 | 5.0% | - | 0.0% | - | 0.0% |
| 22 | Cumberland | 141 | 19 | 28 | 0 | 5 | 0 | 5 | - | 5 | - | - | - | 204 | 2/1/2013 | 1/31/2015 | 12.0% | | | | | | | | |
| 23 | Jersey Gardens | 537 | 41 | 30 | 0 | 5 | - | - | - | 22 | - | - | - | 635 | | | | 2/1/2014 | 1/31/2015 | 1,400,000 | 5.0% | - | 0.0% | - | 0.0% |
| 27 | Connecticut Post | 248 | 48 | 26 | 0 | 5 | 0 | 22 | - | 5 | - | - | - | 354 | | | | 1/1/2015 | 1/31/2017 | 1,700,000 | 8.0% | 1,800,000 | 5.0% | - | 0.0% |
| 29 | Cherry Hill | 805 | 67 | 16 | 303 | 5 | 0 | 13 | - | 5 | - | - | - | 1,234 | | | | 2/1/2011 | 1/31/2016 | 1,549,998 | 5.0% | - | 0.0% | - | 0.0% |
| 31 | Gateway | 463 | 40 | 20 | 223 | 5 | 0 | 9 | - | 4 | - | - | - | 764 | | | | 2/1/2013 | 1/31/2017 | 1,750,000 | 5.0% | - | 0.0% | - | 0.0% |
| 32 | Roosevelt | 644 | 79 | 32 | 85 | 5 | 0 | 8 | - | 8 | - | - | - | 861 | | | | 2/1/2014 | 1/31/2019 | 1,800,000 | 5.0% | - | 0.0% | - | 0.0% |
| 33 | University | 391 | 66 | 18 | 0 | 5 | 0 | - | - | 7 | - | - | - | 486 | | | | 2/1/2011 | 1/31/2015 | 1,400,000 | 5.0% | - | 0.0% | - | 0.0% |
| 34 | Stroud | 291 | 37 | 89 | 0 | 5 | 0 | 4 | - | 4 | - | - | - | 430 | | | | 10/1/2011 | 1/31/2015 | 846,154 | 13.0% | - | 0.0% | - | 0.0% |
| 37 | Park City Ctr | 374 | 162 | 28 | 23 | 5 | 0 | 11 | - | 7 | - | - | - | 610 | | | | 2/1/2014 | 1/31/2019 | 1,700,000 | 5.0% | - | 0.0% | - | 0.0% |
| 38 | Century III | 194 | 31 | 21 | 3 | 5 | 0 | 17 | - | 5 | - | - | - | 276 | 2/1/2014 | 1/31/2015 | 10.0% | | | | | | | | |
| 40 | Susquehanna Valley | 65 | 21 | 15 | 0 | 5 | 0 | - | - | 4 | - | - | - | 109 | | | | 2/1/2014 | 1/31/2015 | 416,667 | 6.0% | - | 0.0% | - | 0.0% |
| 41 | Conestoga | 248 | 39 | 35 | 0 | 5 | 0 | - | - | 5 | - | - | - | 331 | | | | 2/1/2012 | 1/31/2015 | 1,000,000 | 5.0% | - | 0.0% | - | 0.0% |
| 42 | Lincoln | 341 | 38 | 26 | 62 | 5 | 0 | 8 | - | 6 | - | - | - | 486 | | | | 2/1/2011 | 1/31/2016 | 1,150,000 | 5.0% | - | 0.0% | - | 0.0% |
| 43 | Grand Traverse | 481 | 30 | 22 | 1 | 5 | 0 | 18 | - | 5 | - | - | - | 560 | | | | 2/1/2014 | 1/31/2015 | 1,808,365 | 5.0% | - | 0.0% | - | 0.0% |
| 45 | Greendale | 280 | 66 | 14 | 59 | 5 | 0 | 18 | - | 5 | - | - | - | 447 | | | | 2/1/2014 | 1/31/2016 | 740,029 | 5.0% | - | 0.0% | - | 0.0% |
| 46 | Galleria at Crystal Run | 416 | 43 | 58 | 0 | 5 | 0 | - | - | 6 | - | - | - | 528 | | | | | | | | | | | |
| 48 | Eastern Hills | 268 | 43 | 89 | 0 | 5 | 0 | 7 | - | 5 | - | - | - | 417 | | | | 6/1/2013 | 1/31/2016 | 1,350,000 | 5.0% | - | 0.0% | - | 0.0% |
| 49 | Holyoke at Ingleside | 742 | 57 | 19 | 190 | 5 | 0 | 2 | - | 7 | - | - | - | 1,021 | | | | 5/2/2014 | 1/31/2017 | 1,875,000 | 5.0% | - | 0.0% | - | 0.0% |
| 50 | Auburn | 176 | 46 | 17 | 0 | 5 | 0 | 3 | - | 4 | - | - | - | 251 | | | | 2/1/2013 | 1/31/2015 | 800,000 | 8.0% | - | 0.0% | - | 0.0% |
| 51 | Rockaway Townsquare | 520 | 38 | 18 | 84 | 5 | 0 | 17 | - | 4 | - | - | - | 685 | | | | 2/1/2012 | 1/31/2017 | 1,450,000 | 10.0% | 1,600,000 | 5.0% | - | 0.0% |
| 52 | Logan Valley | 322 | 24 | 6 | 0 | 5 | 0 | 8 | - | 4 | - | - | - | 369 | | | | 2/1/2014 | 1/31/2015 | 2,472,820 | 5.0% | - | 0.0% | - | 0.0% |
| 54 | Northfield Sq | 142 | 23 | 9 | 0 | 5 | 0 | 12 | - | 4 | - | - | - | 197 | | | | 2/1/2013 | 1/31/2015 | 1,050,000 | 5.0% | - | 0.0% | - | 0.0% |
| 57 | Oak Park | 355 | - | 23 | 0 | 5 | 0 | 9 | - | 5 | - | - | - | 397 | 2/1/2014 | 1/31/2017 | 9.0% | | | | | | | | |
| 59 | Silver City Galleria | 166 | 66 | 10 | - | 5 | 0 | 16 | - | 3 | - | - | - | 285 | 3/1/2014 | 2/29/2016 | 8.0% | | | | | | | | |
| 62 | Garden City Plaza | 310 | 31 | 7 | 47 | 5 | 0 | 1 | - | 5 | - | - | - | 406 | | | | 2/1/2012 | 1/31/2015 | 1,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 63 | Walnut Sq | 198 | 42 | 31 | 18 | 5 | 0 | - | - | 4 | - | - | - | 299 | | | | 2/1/2012 | 1/31/2015 | 625,000 | 12.0% | - | 0.0% | - | 0.0% |
| 67 | Swansea | 156 | 77 | 24 | 2 | 5 | 0 | 8 | - | 6 | - | - | - | 278 | | | | 4/1/2014 | 1/31/2015 | 750,000 | 8.0% | - | 0.0% | - | 0.0% |
| 69 | Huntington | 498 | 63 | 76 | 44 | 5 | 0 | 3 | - | 5 | - | - | - | 694 | | | | 2/1/2012 | 1/31/2017 | 1,680,377 | 5.0% | - | 0.0% | - | 0.0% |
| 70 | Schuylkill | 49 | 63 | 20 | 0 | 5 | 0 | 3 | - | 5 | - | - | - | 144 | 2/1/2014 | 1/31/2015 | 5.0% | | | | | | | | |
| 71 | Neshaminy | 209 | - | 21 | 1 | 5 | 0 | 18 | - | 2 | - | - | - | 256 | | | | 2/1/2012 | 1/31/2017 | 1,000,000 | 8.0% | - | 0.0% | - | 0.0% |
| 74 | Crossroads | 378 | 35 | 20 | 0 | 5 | 0 | 8 | - | 5 | - | - | - | 452 | | | | 2/1/2011 | 1/31/2016 | 1,350,000 | 5.0% | - | 0.0% | - | 0.0% |
| 76 | Fingerlakes | 161 | 49 | 7 | 0 | 5 | 0 | - | - | 6 | - | - | - | 229 | 2/1/2014 | 1/31/2015 | 8.0% | | | | | | | | |
| 77 | Sangertown Sq | 653 | 73 | 35 | 0 | 5 | 0 | - | - | 7 | - | - | - | 774 | | | | 10/1/2013 | 1/31/2016 | 2,189,400 | 5.0% | - | 0.0% | - | 0.0% |
| 78 | Eastwood | 436 | 86 | 76 | 28 | 5 | 0 | 8 | - | 4 | - | - | - | 643 | | | | 2/1/2011 | 1/31/2016 | 1,620,000 | 5.0% | - | 0.0% | - | 0.0% |
| 79 | Spotsylvania | 657 | 57 | 61 | 45 | 5 | 0 | 7 | - | 5 | - | - | - | 837 | | | | 2/1/2013 | 1/31/2016 | 2,266,000 | 5.0% | - | 0.0% | - | 0.0% |
| 81 | Pittsburgh Mills | 365 | 34 | 28 | 1 | 5 | 0 | - | - | 4 | - | - | - | 437 | | | | 8/31/2009 | 1/31/2015 | 1,300,000 | 10.0% | 1,800,000 | 5.0% | - | 0.0% |
| 82 | Clearview | 157 | 98 | 15 | 0 | 5 | 0 | - | - | 6 | - | - | - | 282 | | | | 2/1/2014 | 1/31/2015 | 700,000 | 10.0% | - | 0.0% | - | 0.0% |
| 85 | Apple Blossom | 378 | 40 | 46 | 20 | 5 | 0 | 10 | - | 5 | - | - | - | 504 | | | | 11/1/2011 | 1/31/2015 | 875,000 | 16.0% | - | 0.0% | - | 0.0% |
| 86 | Chambersburg | 121 | 24 | 13 | 0 | 5 | 0 | 4 | - | 4 | - | - | - | 171 | 2/1/2014 | 1/31/2017 | 8.0% | | | | | | | | |
| 87 | Monroeville | 365 | 92 | 14 | 1 | 5 | 0 | - | - | 5 | - | - | - | 471 | | | | 10/1/2011 | 2/28/2015 | 733,333 | 15.0% | - | 0.0% | - | 0.0% |
| 89 | Fashion Outlets | 536 | 34 | 35 | 0 | 5 | 0 | 12 | - | 5 | - | - | - | 627 | | | | 2/1/2014 | 1/31/2015 | 2,057,800 | 10.0% | - | 0.0% | - | 0.0% |
| 90 | Hudson Valley | 114 | 28 | 20 | 0 | 5 | 0 | 3 | - | 5 | - | - | - | 175 | 2/1/2014 | 1/31/2016 | 9.0% | | | | | | | | |
| 91 | Southpark Ctr | 732 | 31 | 29 | 194 | 5 | 0 | - | - | 5 | - | - | - | 996 | | | | 2/1/2013 | 1/31/2018 | 1,550,000 | 10.0% | 1,600,000 | 5.0% | - | 0.0% |
| 92 | Colony Sq | 148 | 49 | 24 | 0 | 5 | 0 | 18 | - | 5 | - | - | - | 248 | | | | 2/1/2012 | 1/31/2015 | 400,000 | 10.0% | - | 0.0% | - | 0.0% |
| 93 | Dayton | 470 | 44 | 49 | 138 | 5 | 0 | 14 | - | 4 | - | - | - | 724 | | | | 2/1/2013 | 1/31/2015 | 1,708,800 | 5.0% | - | 0.0% | - | 0.0% |
| 96 | Prices Corner | 327 | 70 | 90 | 1 | 5 | 0 | 6 | - | 5 | - | - | - | 503 | | | | 2/1/2014 | 1/31/2020 | 2,505,160 | 5.0% | - | 0.0% | - | 0.0% |
| 97 | Chapel Hill | 571 | 54 | 12 | 114 | 5 | 0 | - | - | 5 | - | - | - | 762 | | | | 2/1/2011 | 1/31/2016 | 2,000,000 | 5.0% | - | 0.0% | - | 0.0% |
| 98 | Arnot | 313 | 40 | 19 | 0 | 5 | 0 | - | - | 5 | - | - | - | 381 | | | | 2/1/2014 | 1/31/2019 | 1,400,000 | 5.0% | - | 0.0% | - | 0.0% |
| 99 | Springfield Commons | 458 | 31 | 40 | 54 | 5 | 0 | 6 | - | 5 | - | - | - | 597 | | | | 2/1/2014 | 1/31/2019 | 2,750,000 | 4.0% | - | 0.0% | - | 0.0% |
| 103 | Honey Creek | 233 | 16 | 49 | 34 | 5 | 0 | - | - | 6 | - | - | - | 344 | | | | 2/1/2014 | 1/31/2019 | 705,000 | 10.0% | - | 0.0% | - | 0.0% |
| 104 | Glenbrook Sq | 653 | 49 | 26 | 132 | 5 | 0 | - | - | 5 | - | - | - | 870 | | | | 2/1/2013 | 1/31/2018 | 1,800,000 | 5.0% | - | 0.0% | - | 0.0% |
| 105 | Spring Hill | 214 | 33 | 13 | 1 | 5 | 0 | 17 | - | 4 | - | - | - | 287 | | | | | | | | | | | |
| 106 | Stratford Sq | 213 | 46 | 11 | 0 | 5 | 0 | 11 | - | 4 | - | - | - | 291 | | | | 2/1/2014 | 1/31/2019 | 875,000 | 8.0% | - | 0.0% | - | 0.0% |
| 108 | Beaver Valley | 456 | 40 | 70 | 5 | 5 | 0 | - | - | 5 | - | - | - | 581 | | | | 2/1/2011 | 1/31/2015 | 2,180,000 | 5.0% | - | 0.0% | - | 0.0% |
| 109 | Ford City | 151 | 61 | 28 | 3 | 5 | 0 | 2 | - | 4 | - | - | - | 254 | | | | | | | | | | | |
| 111 | Lima | 401 | 40 | 70 | 26 | 5 | 0 | 11 | - | 6 | - | - | - | 559 | | | | 2/1/2010 | 1/31/2015 | 1,100,000 | 5.0% | - | 0.0% | - | 0.0% |
| 112 | Aviation | 424 | 23 | 22 | 37 | 5 | 0 | 3 | - | 5 | - | - | - | 519 | | | | 10/1/2013 | 1/31/2016 | 1,100,000 | 5.0% | - | 0.0% | - | 0.0% |
| 113 | Chapel Hills | 211 | 33 | 27 | 0 | 5 | 0 | 8 | - | 4 | - | - | - | 290 | | | | 2/1/2014 | 1/31/2015 | 700,000 | 10.0% | - | 0.0% | - | 0.0% |
| 116 | Audubon Crossings | 288 | 32 | 13 | 56 | 5 | 0 | - | - | 4 | - | - | - | 400 | | | | 2/1/2014 | 1/31/2016 | 1,846,760 | 5.0% | - | 0.0% | - | 0.0% |
| 117 | Wausau Ctr | 239 | 43 | 10 | 4 | 5 | 0 | - | - | 5 | - | - | - | 306 | | | | | | | | | | | |
| 119 | Lake View Sq | 186 | 36 | 36 | 2 | 5 | 0 | 9 | - | 4 | - | - | - | 278 | 2/1/2014 | 1/31/2015 | 9.0% | | | | | | | | |
| 120 | Macomb | 506 | 53 | 23 | 9 | 5 | 0 | 6 | - | 12 | - | 7 | - | 622 | | | | 2/1/2011 | 1/31/2016 | 1,400,000 | 5.0% | - | 0.0% | - | 0.0% |
| 121 | Florence | 318 | 26 | 18 | 53 | 5 | 0 | 10 | - | 6 | - | - | - | 437 | | | | 2/1/2014 | 1/31/2015 | 1,060,900 | 10.0% | - | 0.0% | - | 0.0% |
| 122 | Newport on the Levee | 105 | - | 11 | 0 | 5 | 0 | 12 | - | 5 | - | - | - | 138 | 2/1/2014 | 1/31/2015 | 6.0% | | | | | | | | |
| 124 | The Market Place | 707 | 70 | 24 | 124 | 5 | 0 | 11 | - | 4 | - | - | - | 945 | | | | 10/1/2013 | 1/31/2016 | 2,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 125 | Augusta Marketplace | 516 | 79 | 21 | 70 | 5 | 0 | - | - | 3 | - | - | - | 694 | | | | 2/1/2011 | 1/31/2016 | 1,450,000 | 5.0% | - | 0.0% | - | 0.0% |
| 126 | Shoppes on Maine | 309 | 33 | 16 | 26 | 5 | 0 | - | - | 4 | - | - | - | 393 | | | | 2/1/2014 | 1/31/2019 | 2,552,226 | 4.0% | - | 0.0% | - | 0.0% |
| 127 | Grand Central | 326 | 15 | 38 | 12 | 5 | 0 | 5 | - | 4 | - | - | - | 405 | | | | 7/1/2012 | 1/31/2017 | 1,100,000 | 5.0% | - | 0.0% | - | 0.0% |
| 128 | Miller Hill | 450 | 10 | 32 | 0 | 5 | 0 | - | - | 4 | - | - | - | 501 | | | | 2/1/2014 | 1/31/2017 | 3,449,742 | 5.0% | - | 0.0% | - | 0.0% |
| 130 | Riverdale Village | 466 | 41 | 63 | 121 | 5 | 0 | 3 | - | 4 | - | - | - | 702 | | | | 2/1/2012 | 1/31/2017 | 2,300,000 | 5.0% | - | 0.0% | - | 0.0% |
| 131 | Charleston Town Ctr | 544 | 56 | 34 | 132 | 5 | 0 | 6 | - | 6 | - | - | - | 784 | | | | 2/1/2012 | 1/31/2017 | 1,564,600 | 5.0% | - | 0.0% | - | 0.0% |
| 133 | Quincy | 203 | 21 | 9 | 0 | 5 | 0 | 1 | - | 4 | - | - | - | 243 | 1/0/1900 | stay no inv | 9.0% | 12/1/2013 | 1/31/2017 | 1,273,000 | 5.0% | - | 0.0% | - | 0.0% |
| 134 | Crossgates | 443 | 64 | 57 | 86 | 5 | 0 | - | - | 7 | - | - | - | 663 | | | | 2/1/2012 | 1/31/2017 | 1,500,000 | 5.0% | - | 0.0% | - | 0.0% |
| 135 | Eastland | 370 | 27 | 12 | 44 | 5 | 0 | 11 | - | 4 | - | - | - | 473 | | | | 2/1/2010 | 1/31/2015 | 1,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 137 | Cherryvale | 381 | 102 | 26 | 0 | 5 | 0 | - | - | 4 | - | - | - | 519 | | | | 2/1/2010 | 1/31/2015 | 1,100,000 | 5.0% | - | 0.0% | - | 0.0% |
| 138 | The Crossroads | 524 | 64 | 29 | 1 | 5 | 0 | 12 | - | 5 | - | - | - | 640 | | | | 2/1/2012 | 1/31/2017 | 3,755,940 | 5.0% | - | 0.0% | - | 0.0% |
| 139 | Meridian | 291 | 25 | 70 | 1 | 5 | 0 | 5 | - | 4 | - | - | - | 401 | | | | 10/1/2011 | 1/31/2015 | 733,333 | 15.0% | - | 0.0% | - | 0.0% |
| 141 | Southridge Shopping Ctr | 981 | - | 21 | 57 | 5 | 0 | 5 | 1 | 10 | - | - | - | 1,081 | | | | 8/30/2013 | 1/31/2019 | 1,500,000 | 5.0% | - | 0.0% | - | 0.0% |
| 142 | Memorial | 65 | 35 | 33 | 0 | 5 | 0 | - | - | 5 | - | - | - | 148 | 2/1/2013 | MTM | 4.0% | | | | | | | | |
| 144 | East Towne | 543 | 74 | 21 | 137 | 5 | 1 | 10 | 1 | 4 | - | - | - | 796 | | | | 2/1/2010 | 1/31/2015 | 1,264,000 | 5.0% | - | 0.0% | - | 0.0% |
| 145 | Sikes Senter | 260 | 75 | 19 | 24 | 5 | 0 | 10 | - | 5 | - | - | - | 397 | | | | 2/1/2012 | 1/31/2015 | 583,333 | 12.0% | - | 0.0% | - | 0.0% |
| 146 | Grapevine Mills | 395 | 58 | 25 | 10 | 5 | 0 | - | - | 6 | - | - | - | 499 | | | | 2/1/2014 | 1/31/2019 | 1,400,000 | 10.0% | 1,800,000 | 5.0% | - | 0.0% |
| 147 | Westgate | 493 | 24 | 45 | 124 | 5 | 0 | - | - | 8 | - | - | - | 700 | | | | 2/1/2012 | 1/31/2017 | 1,949,360 | 5.0% | - | 0.0% | - | 0.0% |
| 148 | Ingram Park | 500 | 36 | 31 | 44 | 5 | 0 | 9 | - | 8 | - | - | - | 633 | | | | 2/1/2013 | 1/31/2018 | 2,164,400 | 5.0% | - | 0.0% | - | 0.0% |
| 149 | Fox River | 585 | 69 | 18 | 44 | 5 | 0 | 11 | - | 5 | - | - | - | 735 | | | | 2/1/2011 | 1/31/2016 | 3,049,252 | 5.0% | - | 0.0% | - | 0.0% |
| 150 | Southpark | 232 | 40 | 22 | 0 | 5 | 0 | 9 | - | 5 | - | - | - | 313 | | | | 3/1/2006 | 1/31/2017 | 875,000 | 8.0% | - | 0.0% | - | 0.0% |
| 151 | Eastland | 391 | 71 | 27 | 0 | 5 | 0 | 3 | - | 6 | - | - | - | 503 | | | | 2/1/2014 | 1/31/2015 | 1,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 153 | Piedmont | 432 | 47 | 6 | 14 | 5 | 0 | 4 | - | 5 | - | - | - | 514 | | | | 2/1/2014 | 1/31/2019 | 1,480,510 | 5.0% | - | 0.0% | - | 0.0% |
| 154 | Bristol | 55 | 26 | 7 | 14 | 5 | 0 | - | - | 5 | - | - | - | 111 | 6/1/2014 | 1/31/2019 | 5.0% | | | | | | | | |

Deb Shops
Exhibit 4.1 (c)
Occupancy per Diem

| Store # | Store Name | Occupancy – Per Diem: Rnt,Cam,Ins,Fees | Utilities | Repairs/Maint | Taxes | 5311-000 Loss Prevention | 5315-000 Store POS Expense | 5380-000 Refuse | 5390-000 Exterminator | 5410-000 Telephone | 7410-150 Data Collection | 7510 Data Services | 8009-000 Loss Prevention Recovery | Total | % Rent: Lease Commencement | Lease Expiration | % Rent Rate | Breakpoint Rent: Lease Commencement | Lease Expiration | BreakPoint 1 | PercRate | BreakPoint 2 | PercRate | BreakPoint 3 | PercRate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 155 | Manassas | 415 | 79 | 9 | 130 | 5 | 0 | 18 | - | 3 | - | - | - | 658 | | | | 10/1/2013 | 1/31/2017 | 1,574,320 | 5.0% | - | 0.0% | - | 0.0% |
| 158 | Crystal Shopping Ctr | 274 | 26 | 13 | 89 | 5 | 0 | 8 | - | 4 | - | - | - | 420 | | | | 2/1/2014 | 1/31/2015 | 1,280,000 | 5.0% | - | 0.0% | - | 0.0% |
| 159 | Burnsville Ctr | 479 | - | 38 | 0 | 5 | 0 | - | - | 4 | - | - | - | 527 | | | | 2/1/2014 | 1/31/2015 | 1,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 161 | Dubois | 146 | 30 | 8 | 0 | 5 | 0 | 4 | - | 5 | - | - | - | 199 | 11/1/2012 | 10/31/2015 | 8.0% | | | | | | | | |
| 165 | Northtown | 569 | 83 | 47 | 40 | 5 | 0 | 22 | - | 4 | - | - | - | 770 | | | | 2/1/2011 | 1/31/2016 | 2,720,480 | 5.0% | - | 0.0% | - | 0.0% |
| 156 | Courtland Ctr | 104 | - | 8 | 2 | 5 | 0 | - | - | 6 | - | - | - | 126 | | | | 2/1/2013 | 1/31/2016 | 650,000 | 5.0% | - | 0.0% | - | 0.0% |
| 157 | Fashion Sq | 378 | 42 | 17 | 1 | 5 | 0 | 12 | - | 4 | - | - | - | 459 | | | | 2/1/2014 | 1/31/2015 | 1,116,885 | 13.0% | - | 0.0% | - | 0.0% |
| 158 | Jackson Crossing | 368 | 41 | 12 | 1 | 5 | 0 | 5 | 2 | 4 | - | - | - | 430 | | | | 2/1/2013 | 1/31/2018 | 1,756,440 | 5.0% | - | 0.0% | - | 0.0% |
| 169 | Adrian | 110 | 45 | 22 | 1 | 5 | 0 | 11 | - | 5 | - | - | - | 198 | 2/1/2014 | 1/31/2015 | 7.0% | | | | | | | | |
| 170 | Fox Valley Ctr | 752 | 79 | 26 | 168 | 5 | 0 | 6 | - | 4 | - | - | - | 1,040 | | | | | | | | | | | |
| 172 | North Riverside Park | 611 | 71 | 46 | 24 | 5 | 0 | 7 | 1 | 4 | - | - | - | 770 | | | | 2/1/2014 | 1/31/2015 | 1,339,391 | 5.0% | - | 0.0% | - | 0.0% |
| 173 | Frontier | 204 | 36 | 17 | 1 | 5 | 1 | - | 1 | 4 | - | - | - | 269 | | | | 2/1/2012 | 1/31/2015 | 650,000 | 10.0% | - | 0.0% | - | 0.0% |
| 174 | Eastridge | 252 | 41 | 5 | 1 | 5 | 0 | 3 | - | 4 | - | - | - | 312 | | | | 2/1/2013 | 1/31/2018 | 1,093,100 | 5.0% | - | 0.0% | - | 0.0% |
| 175 | Mesa | 296 | - | 24 | 0 | 5 | 0 | - | - | 5 | - | - | - | 329 | | | | 2/1/2014 | 1/31/2015 | 1,509,172 | 5.0% | - | 0.0% | - | 0.0% |
| 177 | Colorado Mills | 442 | 48 | 15 | 0 | 5 | 0 | - | - | 5 | - | - | - | 516 | | | | 2/1/2013 | 1/31/2015 | 1,400,000 | 10.0% | 1,800,000 | 5.0% | - | 0.0% |
| 178 | Town Center at Aurora | 298 | - | 15 | 0 | 5 | 0 | 12 | - | 4 | - | - | - | 333 | | | | 2/25/2009 | 1/31/2015 | 1,500,000 | 5.0% | - | 0.0% | - | 0.0% |
| 179 | Chicago Ridge | 391 | 34 | 31 | 0 | 5 | 0 | 11 | - | 4 | - | - | - | 476 | | | | 6/14/2012 | 1/31/2018 | 1,875,000 | 5.0% | - | 0.0% | - | 0.0% |
| 180 | River Hills | 306 | 58 | 75 | 0 | 5 | 0 | 7 | - | 5 | - | - | - | 457 | | | | 5/1/2013 | 1/31/2019 | 1,000,000 | 10.0% | - | 0.0% | - | 0.0% |
| 182 | Country Club | 464 | 54 | 17 | 7 | 5 | 0 | 2 | - | 3 | - | - | - | 552 | | | | 2/1/2014 | 1/31/2015 | 2,343,750 | 5.0% | - | 0.0% | - | 0.0% |
| 183 | White Oaks | 319 | - | 43 | 0 | 5 | 0 | 6 | - | 5 | - | - | - | 379 | | | | 2/1/2014 | 1/31/2019 | 1,200,000 | 10.0% | 1,300,000 | 5.0% | - | 0.0% |
| 184 | Village | 133 | 40 | 30 | 0 | 5 | 0 | 3 | - | 5 | - | - | - | 216 | 2/1/2013 | 1/31/2015 | 7.0% | | | | | | | | |
| 187 | St. Louis Outlet Center | 248 | 34 | 17 | 2 | 5 | 0 | - | - | 4 | - | - | - | 309 | | | | 4/1/2014 | 3/31/2016 | 1,054,786 | 9.0% | - | 0.0% | - | 0.0% |
| 188 | University | 156 | 36 | 35 | 3 | 5 | 0 | - | - | 4 | - | - | - | 239 | | | | 4/1/2011 | 1/31/2017 | 750,000 | 8.0% | 1,500,000 | 5.0% | - | 0.0% |
| 189 | Valley View | 952 | 79 | 10 | 136 | 5 | 0 | 6 | - | 4 | - | - | - | 1,191 | | | | 1/1/2013 | 1/31/2016 | 2,462,720 | 5.0% | - | 0.0% | - | 0.0% |
| 190 | Provo Town Ctr | 248 | 26 | 39 | 15 | 5 | 0 | 7 | - | 5 | - | - | - | 344 | 2/1/2014 | 1/31/2015 | 15.0% | | | | | | | | |
| 191 | Forest | 153 | 39 | 16 | 3 | 5 | 0 | 8 | - | 4 | - | - | - | 229 | 2/1/2013 | 1/31/2015 | 7.0% | | | | | | | | |
| 192 | Regency | 156 | 47 | 40 | 2 | 5 | 0 | - | - | 5 | - | - | - | 255 | | | | 2/1/2013 | 1/31/2016 | 600,000 | 10.0% | - | 0.0% | - | 0.0% |
| 194 | Merle Hay | 391 | 20 | 13 | 0 | 5 | 0 | - | - | 6 | - | - | - | 436 | | | | 8/25/2013 | 1/31/2019 | 2,142,857 | 5.0% | - | 0.0% | - | 0.0% |
| 195 | Village Shopping Ctr | 270 | 43 | 29 | 39 | 5 | 0 | 7 | - | 4 | - | - | - | 396 | | | | 2/1/2014 | 1/31/2016 | 2,012,500 | 3.0% | - | 0.0% | - | 0.0% |
| 197 | Hutchinson | 156 | - | 23 | 0 | 5 | 0 | - | - | 6 | - | - | - | 191 | | | | | | | | | | | |
| 198 | Crossroads Ctr | 577 | 20 | 26 | 138 | 5 | 0 | 14 | - | 4 | - | - | - | 783 | | | | 2/1/2012 | 1/31/2017 | 1,800,000 | 5.0% | - | 0.0% | - | 0.0% |
| 199 | Paul Bunyan | 140 | 57 | 24 | 0 | 5 | 0 | - | - | 4 | - | - | - | 230 | | | | 2/1/2014 | 1/31/2019 | 669,353 | 8.0% | - | 0.0% | - | 0.0% |
| 200 | Maplewood | 323 | 30 | 35 | 0 | 5 | 0 | 9 | - | 4 | - | 40 | - | 447 | | | | 2/1/2013 | 1/31/2018 | 1,000,000 | 10.0% | 1,600,000 | 5.0% | - | 0.0% |
| 202 | Rockingham Park | 565 | 34 | 7 | 59 | 5 | 0 | 17 | - | 5 | - | - | - | 692 | | | | 2/1/2011 | 1/31/2016 | 1,735,340 | 5.0% | - | 0.0% | - | 0.0% |
| 203 | Pheasant Lane | 410 | 26 | 27 | 0 | 5 | 0 | - | - | 3 | - | - | - | 472 | | | | 2/1/2011 | 1/31/2016 | 1,550,000 | 10.0% | 1,700,000 | 5.0% | - | 0.0% |
| 205 | Square One | 551 | 90 | 9 | 12 | 5 | 0 | 25 | 1 | 5 | - | - | - | 698 | | | | 11/1/2011 | 1/31/2017 | 1,055,556 | 18.0% | - | 0.0% | - | 0.0% |
| 206 | Emerald Sq | 472 | 64 | 7 | 1 | 5 | 0 | 15 | - | 6 | - | - | - | 570 | | | | 11/1/2011 | 1/31/2017 | 882,353 | 17.0% | - | 0.0% | - | 0.0% |
| 207 | Eastfield | 172 | 55 | 12 | 2 | 5 | 0 | 24 | - | 4 | - | - | - | 274 | 2/1/2014 | 1/31/2015 | 10.0% | | | | | | | | |
| 208 | Hanover | 248 | 53 | 37 | 1 | 5 | 0 | 32 | 1 | 6 | - | - | - | 382 | | | | 5/1/2014 | 1/31/2017 | 1,400,000 | 5.0% | - | 0.0% | - | 0.0% |
| 209 | Columbia | 444 | 57 | 40 | 33 | 5 | 0 | 9 | - | 3 | - | - | - | 591 | | | | 2/1/2014 | 1/31/2019 | 1,918,720 | 5.0% | - | 0.0% | - | 0.0% |
| 210 | The Citadel | 369 | 42 | 16 | 0 | 5 | 0 | 11 | - | 4 | - | - | - | 448 | | | | 2/1/2012 | 1/31/2020 | 1,414,000 | 5.0% | - | 0.0% | - | 0.0% |
| 211 | Columbia | 445 | 72 | 16 | 0 | 5 | 0 | 3 | - | 5 | - | - | - | 546 | | | | 2/1/2012 | 1/31/2015 | 1,100,000 | 10.0% | - | 0.0% | - | 0.0% |
| 212 | The Marketplace | 328 | 27 | 20 | 0 | 5 | 0 | 3 | - | 4 | - | - | - | 387 | 5/1/2014 | 1/31/2017 | 12.0% | | | | | | | | |
| 213 | Lindale | 323 | 26 | 78 | 0 | 5 | 0 | - | - | 5 | - | - | - | 437 | | | | 2/1/2014 | 1/31/2015 | 1,396,641 | 5.0% | - | 0.0% | - | 0.0% |
| 214 | Southern Hills | 453 | 29 | 64 | 0 | 5 | 0 | 6 | - | 4 | - | - | - | 561 | | | | 2/1/2014 | 1/31/2015 | 1,512,939 | 5.0% | - | 0.0% | - | 0.0% |
| 215 | Kennedy | 325 | 56 | 62 | 39 | 5 | 0 | 8 | - | 4 | - | - | - | 488 | | | | 2/1/2013 | 1/31/2015 | 750,000 | 10.0% | - | 0.0% | - | 0.0% |
| 216 | Washington Sq | 112 | 47 | 14 | 0 | 5 | 0 | 4 | - | 5 | - | - | - | 188 | 2/1/2014 | 1/31/2015 | 7.0% | | | | | | | | |
| 218 | Galleria | 199 | 29 | 44 | 0 | 5 | 0 | 2 | - | 7 | - | - | - | 285 | 3/1/2013 | 1/31/2016 | 10.0% | | | | | | | | |
| 219 | University Park | 348 | 28 | 19 | - | 5 | 0 | 5 | - | 5 | - | - | - | 409 | | | | 2/1/2014 | 1/31/2019 | 1,802,400 | 5.0% | - | 0.0% | - | 0.0% |
| 220 | Richmond Centre | 396 | 31 | 16 | 27 | 5 | 0 | 3 | - | 6 | - | - | - | 483 | | | | 4/8/2009 | 1/31/2015 | 3,375,900 | 4.0% | - | 0.0% | - | 0.0% |
| 221 | Northwest Plaza | 281 | 50 | 79 | 74 | 5 | 0 | 6 | 1 | 5 | - | - | - | 501 | | | | 2/1/2012 | 1/31/2015 | 1,275,000 | 5.0% | - | 0.0% | - | 0.0% |
| 223 | Salmon Run | 335 | 53 | 11 | 0 | 5 | 0 | - | - | 5 | - | - | - | 409 | | | | 6/1/2014 | 1/31/2017 | 900,000 | 5.0% | - | 0.0% | - | 0.0% |
| 224 | Midland | 130 | 101 | 22 | 1 | 5 | 0 | - | - | 5 | - | - | - | 263 | | | | 3/1/2011 | 1/31/2021 | 714,285 | 7.0% | 800,000 | 8.0% | 1,000,000 | 10.0% |
| 225 | Rogers Plaza | 153 | 76 | 16 | 1 | 5 | 0 | 2 | - | 4 | - | - | - | 258 | 2/1/2010 | MTM | 7.0% | | | | | | | | |
| 226 | Indian Hills Plaza | 177 | 52 | 33 | 1 | 5 | 0 | 6 | - | 6 | - | - | - | 280 | 3/17/2007 | 1/31/2015 | 6.0% | | | | | | | | |
| 227 | Hall Road Crossing | 311 | 37 | 44 | 33 | 5 | 0 | 7 | - | 3 | - | - | - | 441 | | | | 2/1/2011 | 1/31/2016 | 1,700,000 | 5.0% | - | 0.0% | - | 0.0% |
| 228 | Sandusky | 448 | 55 | 24 | 38 | 5 | 0 | 11 | - | 2 | - | - | - | 583 | | | | 2/1/2013 | 1/31/2015 | 1,237,200 | 5.0% | - | 0.0% | - | 0.0% |
| 229 | Indian Mound | 209 | 32 | 12 | 47 | 5 | 0 | 17 | - | 5 | - | - | - | 326 | | | | | | | | | | | |
| 231 | Oakwood | 351 | 40 | 38 | 3 | 5 | 0 | 12 | - | 4 | - | - | - | 453 | 2/1/2014 | 1/31/2015 | 11.0% | | | | | | | | |
| 232 | Mall Plaza S.C. | 384 | 65 | 42 | 43 | 5 | 0 | 7 | - | 5 | - | - | - | 550 | | | | 2/1/2012 | 1/31/2017 | 2,457,000 | 5.0% | - | 0.0% | - | 0.0% |
| 233 | Bangor | 710 | 141 | 25 | 102 | 5 | 0 | 9 | - | 4 | - | - | - | 996 | | | | 2/1/2012 | 1/31/2017 | 1,936,060 | 5.0% | - | 0.0% | - | 0.0% |
| 234 | West Side | 229 | 42 | 23 | 0 | 5 | 0 | 8 | - | 5 | - | - | - | 312 | | | | 2/1/2013 | 1/31/2015 | 958,000 | 6.0% | - | 0.0% | - | 0.0% |
| 236 | Governors SQ. | 514 | 56 | 14 | 42 | 5 | 0 | 7 | - | 7 | - | - | - | 646 | | | | 2/1/2013 | 1/31/2018 | 1,650,000 | 5.0% | - | 0.0% | - | 0.0% |
| 237 | River Oaks Ctr | 585 | 60 | 66 | 2 | 5 | 0 | 7 | - | 5 | - | - | - | 730 | | | | 2/1/2012 | 1/31/2015 | 1,750,000 | 12.0% | - | 0.0% | - | 0.0% |
| 239 | Wheaton Plaza | 599 | 47 | 28 | 66 | 5 | 0 | 16 | 1 | 7 | - | - | - | 768 | | | | 6/1/2011 | 1/31/2016 | 2,900,000 | 5.0% | - | 0.0% | - | 0.0% |
| 241 | Town of Westminster | 99 | 49 | 40 | 0 | 5 | 0 | 3 | 1 | 3 | - | - | - | 201 | | | | 2/1/2014 | 1/31/2016 | 633,333 | 6.0% | - | 0.0% | - | 0.0% |
| 243 | Chautauqua | 295 | 23 | 13 | 7 | 5 | 0 | 9 | - | 4 | - | - | - | 356 | | | | 2/1/2012 | 1/31/2015 | 1,285,000 | 5.0% | - | 0.0% | - | 0.0% |
| 244 | Capital | 233 | 65 | 14 | 20 | 5 | 0 | 7 | - | 5 | - | - | - | 349 | | | | 2/1/2014 | 1/31/2015 | 720,000 | 5.0% | - | 0.0% | - | 0.0% |
| 245 | Battlefield | 379 | 32 | 42 | 36 | 5 | 0 | 5 | - | 4 | - | - | - | 503 | | | | 2/1/2010 | 1/31/2015 | 1,541,600 | 5.0% | - | 0.0% | - | 0.0% |
| 246 | Towne West Sq | 300 | - | 10 | 0 | 5 | 0 | - | - | 4 | - | - | - | 319 | | | | 4/1/2012 | 1/31/2015 | 958,333 | 12.0% | - | 0.0% | - | 0.0% |
| 247 | Towne East Sq | 443 | - | 22 | 0 | 5 | 0 | - | - | 4 | - | - | - | 475 | | | | 2/1/2010 | 1/31/2015 | 1,400,000 | 10.0% | 1,700,000 | 5.0% | - | 0.0% |
| 249 | Champlain Center North | 411 | - | 50 | 55 | 5 | 0 | - | - | 6 | - | - | - | 527 | | | | 2/1/2014 | 1/31/2019 | 1,200,000 | 5.0% | - | 0.0% | - | 0.0% |
| 251 | Union Consumer Sq | 369 | 55 | 74 | 56 | 5 | 0 | - | - | 7 | - | - | - | 566 | | | | 2/1/2014 | 1/31/2016 | 2,100,000 | 5.0% | - | 0.0% | - | 0.0% |
| 252 | Exton Sq | 104 | 64 | 14 | 0 | 5 | 0 | 11 | - | 5 | - | - | - | 224 | | | | 2/1/2014 | 1/31/2015 | 500,000 | 8.0% | - | 0.0% | - | 0.0% |
| 255 | Great Lakes | 324 | 28 | 19 | 0 | 5 | 0 | 12 | - | 5 | - | - | - | 393 | | | | 4/1/2013 | 3/31/2015 | 800,000 | 15.0% | - | 0.0% | - | 0.0% |
| 256 | Parmatown | 167 | 78 | 48 | 0 | 5 | - | 19 | - | 4 | - | - | - | 321 | 10/1/2013 | 1/31/2015 | 10.0% | | | | | | | | |
| 256 | Patrick Henry | 397 | 38 | 11 | 14 | 5 | 0 | 8 | - | 6 | - | - | - | 478 | | | | 7/25/2009 | 1/31/2015 | 2,800,000 | 5.0% | - | 0.0% | - | 0.0% |
| 261 | Hanes | 159 | 63 | 42 | 3 | 5 | 0 | - | - | 3 | - | - | - | 275 | 2/1/2014 | 1/31/2016 | 12.0% | | | | | | | | |
| 262 | Great Northern | 263 | 47 | 18 | 165 | 5 | 0 | 3 | - | 5 | - | - | - | 505 | | | | 2/1/2014 | 1/31/2015 | 834,000 | 12.0% | - | 0.0% | - | 0.0% |
| 264 | Lansing | 182 | 48 | 58 | 3 | 5 | 0 | 1 | - | 5 | - | - | - | 303 | | | | 2/1/2012 | 1/31/2015 | 583,333 | 12.0% | - | 0.0% | - | 0.0% |
| 265 | Oakdale | 430 | - | 27 | 0 | 5 | 0 | - | - | 5 | - | - | - | 468 | | | | 10/1/2012 | 1/31/2015 | 1,650,000 | 5.0% | - | 0.0% | - | 0.0% |
| 266 | Fairlane Green | 418 | 68 | 10 | 104 | 5 | 0 | - | - | 6 | - | - | - | 611 | | | | 2/1/2012 | 1/31/2017 | 1,700,000 | 5.0% | - | 0.0% | - | 0.0% |
| 267 | Green Oak Village Place | 313 | 44 | 12 | 3 | 5 | 0 | 12 | - | 6 | - | - | - | 395 | | | | 2/1/2014 | 1/31/2015 | 1,565,753 | 5.0% | - | 0.0% | - | 0.0% |
| 268 | River Valley | 195 | 19 | 20 | 0 | 5 | 0 | 12 | - | 5 | - | - | - | 256 | | | | 2/1/2013 | 1/31/2016 | 576,923 | 13.0% | - | 0.0% | - | 0.0% |
| 271 | Fiesta | 274 | 49 | 15 | 7 | 5 | 0 | - | 1 | 3 | - | - | - | 355 | | | | 2/1/2014 | 1/31/2015 | 1,523,620 | 5.0% | - | 0.0% | - | 0.0% |
| 272 | Metrocenter | 304 | 65 | 78 | 8 | 5 | 0 | - | 1 | 3 | - | - | - | 415 | | | | 5/1/2013 | 4/30/2015 | 900,000 | 10.0% | - | 0.0% | - | 0.0% |
| 273 | Northpark | 373 | 36 | 18 | 1 | 5 | 0 | 1 | - | 4 | - | - | - | 438 | | | | | | | | | | | |
| 274 | Rimrock | 343 | 31 | 23 | 1 | 5 | 0 | - | - | 6 | - | - | - | 409 | | | | 2/1/2014 | 1/31/2015 | 1,202,768 | 10.0% | 1,905,577 | 5.0% | - | 0.0% |
| 275 | Mid Rivers | 313 | 41 | 46 | 10 | 5 | 0 | 15 | - | 4 | - | - | - | 434 | | | | 2/1/2014 | 1/31/2019 | 1,500,000 | 5.0% | - | 0.0% | - | 0.0% |
| 276 | South County | 340 | 52 | 24 | 16 | 5 | 0 | 18 | - | 8 | - | - | - | 463 | | | | 2/1/2013 | 1/31/2018 | 1,625,000 | 5.0% | - | 0.0% | - | 0.0% |
| 277 | Northwoods | 437 | 54 | 33 | 27 | 5 | 0 | - | - | 6 | - | - | - | 561 | | | | 2/1/2014 | 1/31/2015 | 820,000 | 13.0% | - | 0.0% | - | 0.0% |
| 278 | New River | 250 | - | 12 | 13 | 5 | 0 | 15 | - | 4 | - | - | - | 310 | 2/1/2010 | 1/31/2015 | 12.0% | | | | | | | | |
| 281 | Crossroads | 111 | 59 | 85 | 0 | 5 | 0 | - | - | 4 | - | - | - | 264 | 2/1/2013 | 1/31/2015 | 6.0% | | | | | | | | |
| 282 | Meriden Sq | 194 | 48 | 33 | 155 | 5 | 0 | 32 | - | 3 | - | - | - | 470 | | | | 2/1/2014 | 1/31/2016 | 800,000 | 12.0% | - | 0.0% | - | 0.0% |
| 283 | Miami Valley Ctr | 159 | 23 | 15 | 0 | 5 | 0 | 2 | - | 5 | - | - | - | 210 | 2/1/2014 | 1/31/2016 | 6.0% | | | | | | | | |
| 284 | Midway | 209 | 37 | 28 | 0 | 5 | 0 | 16 | - | 4 | - | - | - | 299 | | | | 9/1/2014 | 1/31/2016 | 800,000 | 10.0% | - | 0.0% | - | 0.0% |
| 285 | Mercer | 145 | 32 | 17 | 0 | 5 | 0 | 5 | - | 4 | - | - | - | 207 | 2/1/2014 | 1/31/2017 | 10.0% | | | | | | | | |
| 287 | Brass Mill | 307 | 153 | 18 | 0 | 5 | 0 | 17 | - | 7 | - | - | - | 507 | | | | 2/1/2014 | 1/31/2016 | 543,066 | 15.0% | - | 0.0% | - | 0.0% |
| 288 | Empire | 626 | 31 | 39 | 122 | 5 | 0 | 2 | - | 5 | - | - | - | 828 | | | | 2/1/2014 | 1/31/2015 | 2,294,897 | 5.0% | - | 0.0% | - | 0.0% |