## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re**: | Chapter 11 |
| DEB STORES HOLDING LLC, *et al.*, [1] | Case No. 14-12676 |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:  Dec. 31, 2014 at 4:00 p.m. (ET)**<br>**Hearing Date:  Jan. 7, 2014 at 9:00 a.m. (ET)** |
| | **Related to Docket No. 37, 154 and 159** |

### OBJECTION OF GLIMCHER LANDLORDS TO PROPOSED CURE AMOUNTS, PROPOSED STORE CLOSING SALE GUIDELINES, AND PROPOSED PROCEDURES FOR THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Glimcher Properties Limited Partnership, Glimcher Northtown Venture, LLC, JG Elizabeth II, LLC, Glimcher Supermall Venture, LLC, RVM Glimcher, LLC, Catalina Partners, L.P., Dayton Mall Venture, LLC, and Grand Central Parkersburg LLC (collectively, the "Glimcher Landlords"), by their undersigned counsel, hereby submit this objection (this "Objection") to: (i) the cure amounts proposed in those certain *Unexpired Lease or Executory Contract Assumption and Cure Notices* received by the Glimcher Landlords (collectively, the "Cure Notices"); (ii) the store closing sale guidelines proposed in the *Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* (the "Sale Motion") (Docket No. 37); and (iii) the *Debtors' Motion for an Order Establishing Procedures for the Rejection of Executory*

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4755), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842).  The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA  19114.

*Contracts and Unexpired Leases of Nonresidential Real Property* (the "Rejection Procedures

Motion") (Docket No. 154). In support of this Objection, the Glimcher Landlords respectfully state:

## BACKGROUND

1.      On December 5, 2014 (the "Petition Date"), the above-captioned debtors (the

"Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this

"Court").

2.      Upon information and belief, the Debtors are operating their businesses and

managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

3.      The Glimcher Landlords are the owners of, or the managing agents for the owners of,

certain real property in which the Debtors lease retail space (the "Leased Premises") from the

Glimcher Landlords pursuant to certain written leases (collectively, the "Leases").[2] Specifically, the

Debtors lease certain retail space at the following nine locations from the Glimcher Landlords:

(i)      Indian Mound Mall in Heath, Ohio (leased from Glimcher Properties Limited
          Partnership)

(ii)     New Towne Mall in New Philadelphia, Ohio (leased from Glimcher Properties
          Limited Partnership);

(iii)    Northtown Mall in Blaine, Minnesota (leased from Glimcher Northtown Venture,

---

[2] The Leases and related documentation are voluminous, and therefore, have not been attached to this Objection. The Glimcher Landlords will provide copies of the Leases and related documentation to the Court and parties in interest upon request.

2

LLC)

(iv)    The Outlet Collection | Jersey Gardens, located in Elizabeth, New Jersey (leased from JG Elizabeth II, LLC)

(v)    The Outlet Collection | Seattle, located in Auburn, Washington (leased from Glimcher Supermall Venture, LLC

(vi)    River Valley Mall located in Lancaster, Ohio (leased from RVM Glimcher, LLC)

(vii)    Colonial Park Mall located in Harrisburg, Pennsylvania (leased from Catalina Partners, L.P.)

(viii)    Dayton Mall located in Dayton, Ohio (leased from Dayton Mall Venture, LLC)

(ix)    Grand Central Mall located in Parkersburg, West Virginia (leased from Grand Central Parkersburg LLC)

4.    All of the Leased Premises are located in "shopping centers" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.    On the Petition Date, the Debtors filed the Sale Motion. Through the Sale Motion, the Debtors sought entry of an order (the "Bidding Procedures Order") establishing certain proposed bidding procedures in connection with a sale of the Debtors' assets. On December 18, 2014, this Court entered the Bidding Procedures Order (Docket No. 159). Through the Bidding Procedures Order, the Debtors will conduct a sale process that will result in either a liquidation of the Debtors' assets or a sale to a going concern bidder.

6.    If the sale process results in a liquidation, the Debtors may seek entry of an order from this Court authorizing the Debtors to conduct store closing sales at the Leased Premises (the

"Store Closing Sales") and the Debtors have proposed certain procedures in connection with the Store Closing Sales (the "Proposed Sale Guidelines").

7.      In the event that the sale process results in a sale to a going concern bidder, the Debtors have obtained approval of certain assumption and assignment procedures through the Bidding Procedures Order. On December 29, 2014, the Glimcher Landlords received the Cure Notices with proposed cure amounts to be paid in connection with the Debtors' potential assumption of their Leases (the "Proposed Cure Amounts").[3]

8.      Furthermore, on December 17, 2014, the Debtors filed the Rejection Procedures Motion. Through the Rejection Procedures Motion, the Debtors seek to establish certain procedures for the potential rejection of executory contracts and unexpired leases (the "Proposed Rejection Procedures").

9.      For the reasons set forth herein, the Glimcher Landlords hereby object to the Proposed Cure Amounts, the Proposed Sale Guidelines, and the Proposed Rejection Procedures.

## OBJECTION TO PROPOSED CURE AMOUNTS

10.     In the Cure Notices, the Debtors state their intent to potentially assume and assign the Leases. Included in the Cure Notices are the Proposed Cure Amounts.

11.     The Glimcher Landlords object to the Debtors' proposed assumption of the Leases absent compliance by the Debtors with the requirements of section 365 of the Bankruptcy Code. Any assumption or assignment of the Leases must be conditioned on the Debtors first paying all

---

[3] The Bidding Procedures Order allows the Glimcher Landlords to object to the Debtors' assumption and assignment of their Leases on the basis of adequate assurance of future performance at or prior to the sale hearing scheduled on January 7, 2015. The Glimcher Landlords reserve the right to object further to the potential assumption and assignment of the Leases as anticipated by the Bidding Procedures Order.

amounts due and owing under the Leases through the effective date of assumption of the Leases, in accordance with section 365 of the Bankruptcy Code.

12.    The Glimcher Landlords disagree with the Proposed Cure Amounts, and submit that the appropriate cure amounts are the amounts set forth below as the "current amount due and owing" (collectively, the "Cure Amounts") [4]:

| Location | Debtors' Proposed Cure Amount | Current Amount Due and Owing[5] |
|---|---|---|
| Colonial Park Mall<br>Harrisburg, Pennsylvania | $7,311.83 | $13,533.34 |
| Dayton Mall<br>Dayton, Ohio | $16,490.05 | $30,640.27 |
| Grand Central Mall<br>Parkersburg, West Virginia | $11,424.73 | $21,967.03 |
| Indian Mound Mall<br>Heath, Ohio | $7,311.83 | $13,623.82 |
| New Towne Mall<br>New Philadelphia, Ohio | $5,118.28 | $9,473.34 |
| Northtown Mall<br>Blaine, Minnesota | $19,938.80 | $101,233.07 |
| The Outlet Collection® \| Jersey Gardens<br>Elizabeth, New Jersey | $18,827.95 | $34,848.54 |
| The Outlet Collection \| Seattle<br>Auburn, Washington | $13,727.86 | $25,784.15 |

---

[4] The Glimcher Landlords expressly reserve their rights with respect to any and all cure amounts due and owing under the Leases, or any other leases or agreements with the Debtors, whether or not such cure amounts are included in this Objection.

[5] The "Current Amount Due and Owing" column includes all rent and other charges due and owing to the Glimcher Landlords from December of 2014.

Copies of the Glimcher Landlords' itemizations of the pre- and post-petition rents and other related charges due and owing under the Leases are attached hereto and incorporated herein as Exhibit A.

13.    The Cure Amounts represent the amounts currently due and owing to the Glimcher Landlords under the Leases. These amounts may increase  prior to any actual date of assumption of the Leases if the Debtors do not pay all amounts that accrue after the date of this Objection, and any taxes, common area maintenance and other amounts that may come due, pursuant to the terms of the Leases and regardless of when those amounts accrued .

14.    Accordingly, the Glimcher Landlords expressly reserve the right to amend or supplement the Cure Amounts from time to time and at any time, and request that the Debtors remain liable for, among other things: (a) post-petition rent and other charges under the Leases, (b) certain amounts due and owing under the Leases, but which may be unbilled as of the date hereof, including but not limited to year-end adjustments for common area maintenance, taxes and similar charges, (c) any regular or periodic adjustment of charges under the Leases which were not due or had not been determined as of the date of this Objection , (d) any percentage rent that may be due under the Leases, (e) any non-monetary defaults, and/or (f) insurance and indemnification obligations under the Leases.

15.    The Glimcher Landlords are also entitled to attorneys' fees as part of the Cure Amounts for the Leases, as each of the Leases provides. *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption). All attorneys' fees should be paid to the Glimcher Landlords in addition to the Cure

Amounts set forth herein.

16.     In addition, the Glimcher Landlords request that any order approving the assumption of the Leases provide that any assignee will be responsible for all accrued, but unbilled charges under the Leases, including unpaid year-end adjustments and reconciliations, whether accruing prior to or after the effective date of assumption and/or assignment of the Leases, when such charges become due in accordance with the terms of the Leases. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the Leases. *See* 11 U.S.C. § 365(b)(1).

### OBJECTION TO PROPOSED SALE GUIDELINES

17.     The Glimcher Landlords are opposed to the Debtors conducting Store Closing Sales at the Leased Premises. The Glimcher Landlords recognize, however, that there are certain authorities that generally permit store closing sales. *See*, *e.g.*, *In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992). The same authorities that generally permit store closing sales also provide that bankruptcy courts have "the discretion to condition the time, place and manner of store closing sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations." *Id.*

18.     If this Court authorizes the Debtors to conduct Store Closing Sales at the Leased Premises, this Court should modify the Proposed Sale Guidelines to expressly restrict the activity of the Debtors and any liquidating agent so as to minimize any harm to the Glimcher Landlords and their respective tenants. When tenants, such as the Debtors, conduct Store Closing Sales, the public is often falsely led to believe that a shopping center and the center's other tenants are likewise in distress. Such false impressions can irreparably harm a shopping center and its tenants.

19.    As an initial matter, in order to minimize the harm to the Glimcher Landlords and their respective tenants, the Glimcher Landlords request that this Court require that the Debtors and any liquidating agent comply with all terms of the Leases while conducting any Store Closing Sales, except as modified by any Court-approved store closing sale guidelines or any side agreement(s) entered into between the Glimcher Landlords, the Debtors, and any liquidating agent chosen to conduct any Store Closing Sales at the Leased Premises.

20.    In addition, if the Debtors are authorized to conduct any Store Closing Sales at the Leased Premises, then the duration of such sales should be limited in order to minimize the irreparable harm to the shopping center and its tenants. The Glimcher Landlords request that this Court limit the duration of any Store Closing Sales at the Leased Premises to eight weeks.  In the event that the Debtors are unable to conclude any Store Closing Sales within such time at the Leased Premises, then the Debtors should be required to obtain the consent of the Glimcher Landlords or seek an order from this Court extending the time during which they may conduct Store Closing Sales at the Leased Premises.

21.    Moreover, the Glimcher Landlords have reviewed the Proposed Sale Guidelines, and although the Proposed Sale Guidelines address certain concerns of the Glimcher Landlords regarding the manner of any potential Store Closing Sales, the Proposed Sale Guidelines are deficient in several areas. Accordingly, the Glimcher Landlords request that any Store Closing Sales at the Debtors' stores located at the Leased Premises (the "Stores") be subject to the following modified store closing sales guidelines (the "Modified Store Closing Guidelines"):[6]

---

[6] The Modified Store Closing Guidelines should also apply to the Debtors' liquidating agent selected to sell certain of the Debtors' inventory at the Leased Premises (the "Agent"), whether or not such Agent is specifically mentioned

8

a.      The Debtors shall agree to comply in all other material respects with the terms and conditions of the Leases, including but not limited to, the prompt payment of all amounts owing by the Debtors to the Glimcher Landlords under the Leases.

b.      The Glimcher Landlords shall continue to have access to the Leased Premises under the terms of the Leases. After the completion of any Store Closing Sale, the Glimcher Landlords shall have access to the Leased Premises not only to "dress" or barricade the windows but shall continue to have access to the Leased Premises under the terms of the Leases.

c.      Any Store Closing Sale shall be conducted so that the respective Store will remain open during the normal hours of operation provided for in the applicable Lease.  The Debtors shall not conduct an auction or fire sale and shall abide by any applicable guidelines concerning, among other things, hours of operation, maintenance, and security and trash removal, set forth in the Leases.

d.      Essentially the same "window dressings" shall be maintained and essentially the same "good housekeeping" standards (including providing adequate walk-ways in the Stores) and operating procedures shall be observed during the course of any sale at the Stores.

e.      The Debtors shall keep the premises of the Stores and surrounding area clear and orderly, consistent with present practices.

f.      Any Store Closing Sale shall be conducted in accordance with applicable state and local "Blue Laws" and thus, where applicable, no Store Closing Sale shall be

---

in any particular Modified Store Closing Guideline.

conducted on Sunday, unless the Debtors have been operating such Stores on a Sunday.

g.   Any Store Closing Sale should be limited in duration to no more than eight weeks.

h.   All display and hanging signs used by the Debtors in connection with any Store Closing Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Signs describing any sale by the Debtors at the Stores shall be no larger than twenty-two (22") inches by twenty-eight (28") inches and shall be composed of a uniform color package comprised of no more than three colors. No neon or "day glo" colors should be used in the signage. Up to six (6) signs per 1000 square feet of retail space may be posted in the interior of the Store.  No signs should be taped, push-pinned, or otherwise affixed to the walls or windows of the Stores.

i.   Window signs should be recessed at least twelve inches (12") from the glass. Such window signs should also be limited to one such window sign per window that does not exceed 50% of the window total area.  Window signs must not be stapled, taped or otherwise affixed together to exceed the 22" by 28" limitation. Each sign shall be consistent with the form and content of the signs described herein.

j.   Only one (1) banner may be hung in the interior of the Stores, and such banner shall be no larger than three (3') feet by six (6') feet and shall be hung in the back third of the Stores.

k.  To the extent used, "toppers" should not exceed eight and one half inches (8 ½") by eleven inches (11") and should be limited to one per rack, counter or shelf.

l.  The use of sign walkers, sandwich boards, A-frames, exterior banners, tethered, hot-air or other balloons, inflatable images, rooftop advertising or other street signage or solicitation shall not be permitted at or near the Leased Premises. The Debtors shall not place any sign and/or advertising or marketing of any Store Closing Sale in any common area, parking lot, sidewalk, building façade or other shopping center property owned by the Glimcher Landlords.

m.  No exterior signs or banners of any kind may be used.

n.  The Debtors shall not distribute handbills, leaflets or other written materials to customers outside of the premises of the Stores. Otherwise, the Debtors may solicit customers in the Stores themselves. The Debtors shall not use flashing lights, strobe lights, large spotlights, bullhorns or any type of amplified sound to advertise any Store Closing Sale or solicit customers.

o.  The Debtors shall not make any alterations to the storefront or exterior walls of the Stores.

p.  The Debtors shall not make any alterations to interior or exterior lighting of the Stores.

q.  Advertising and signage may indicate that the sale is a "Store Closure Sale", a "Store Closing Sale" or use language of similar import, but shall not refer to the sale as a "going out of business sale", a "bankruptcy sale", a "court ordered sale" or a "liquidation sale."

r.      No auction of furniture, fixtures, equipment or other property shall be conducted at the Stores. There shall be no auction of inventory, outside sales, sidewalk sales, tent sales, or any sale of any merchandise outside of the Stores.

s.      The Debtors may not transfer inventory from any other merchant, including inventory of any agent, to the Stores for inclusion in any Store Closing Sale. In addition, the Debtors may not transfer inventory from any other store of the Debtors or any distribution center of the Debtors unless such inventory is of like kind and quality.

t.      There should be conspicuous signs stating whether gift cards issued by the Debtors will be honored during any Store Closing Sale.

u.      Conspicuous signs shall be posted in the Stores to the effect that all sales are "final".

v.      The Debtors shall designate a representative to be contacted by the Glimcher Landlords and the State Attorney General should an issue arise concerning the conduct of any Store Closing Sale.

w.      At the conclusion of any Store Closing Sale, the Debtors shall vacate the Stores in a broom-clean condition, and shall leave the Stores in the same condition as at the commencement of any Store Closing Sale, ordinary wear and tear excepted. The Debtors shall also remove their signage and repair any damage to the Leased Premises. No permanent fixtures may be removed without written consent of the Glimcher Landlords. No property of the Glimcher Landlords shall be removed or sold during any Store Closing Sale.

12

x.      Any fixtures or personal property of the Debtors left at a Store after the earlier of (i) the completion of the Store Closing Sale at such Store; or (ii) the time that the Debtors vacate such Store shall be abandoned to the applicable Glimcher Landlord, and such Glimcher Landlord shall incur no liability whatsoever with respect to any action or actions taken in connection therewith.

22.      The foregoing restrictions are reasonable in nature and consistent with store closing sale procedures entered in other retail bankruptcy cases and should be adhered to by the Debtors.

23.      The Glimcher Landlords are particularly concerned with the content and extent of the signage to be used by the Debtors. The Glimcher Landlords object to the use of banners and signage not permitted by the Leases.

24.      The Glimcher Landlords are the owners or the managing agents to the owner of various shopping centers located throughout the United States. The public's image of the Glimcher Landlords' shopping centers as premier retail shopping centers is of paramount importance to both the Glimcher Landlords and the retailers operating their businesses in the shopping centers. The use of banners and other unauthorized signage cheapens the appearance of a shopping center, giving the general public the false impression that the center, or its other tenants, are financially distressed.

25.      As this Court is well aware, these are difficult times for many retailers in this country.  The benefit to the Glimcher Landlords and the other tenants at the shopping centers in maintaining the image of their shopping centers as premier shopping centers greatly outweighs any detriment to the Debtors should this Court refuse to permit the Debtors to maintain any signage not in accordance with the express provisions of the Leases.

26.      In addition, the Debtors should not be permitted to discontinue operations at any

13

Store and "go dark" upon the conclusion of any Store Closing Sale. The Debtors should be compelled to immediately reject the Leases and return possession of the Leased Premises to the Glimcher Landlords upon conclusion of any Store Closing Sale.

27.    Finally, during the term of any Store Closing Sale at the Stores, the Debtors must, pursuant to section 365(d)(3) of the Bankruptcy Code, "timely perform all the obligations… under any unexpired lease of nonresidential real property until such lease is assumed or rejected…"  11 U.S.C. § 365(d)(3). Among the Debtors' various obligations under the Leases are rent, common area charges, and real estate taxes; payment of these obligations is mandatory

28.    Should this Court permit the Debtors to conduct any Store Closing Sales at the Stores, then this Court should exercise its discretion granted by section 363(e) of the Bankruptcy Code and modify the Proposed Sale Guidelines in accordance with this Limited Objection, in order to protect the interests of the Glimcher Landlords and the other entities conducting business at the shopping centers.[7]

## OBJECTION TO PROPOSED REJECTION PROCEDURES

29.    Through the Rejection Procedures Motion, the Debtors seek entry of an order approving procedures for the rejection of unexpired leases in these chapter 11 cases. The Glimcher Landlords do not challenge the Debtors' ability to exercise their business judgment and potentially reject the Leases. The Glimcher Landlords submit, however, that certain additional provisions should be included in any order approving the Proposed Rejection Procedures.

---

[7] Any order approving the conduct of potential Store Closing Sales at any of the Stores should expressly provide that the Glimcher Landlords and the Debtors and/or their agent may enter into a side agreement with respect to the conduct of any Store Closing Sales at the Stores and that the terms and conditions upon which any Store Closing Sale shall be conducted will be subject to any such side agreement entered into between the parties.

30.     First, in the event that the Debtors elect to reject the Leases, the Debtors must meet their obligations under section 365 of the Bankruptcy Code. Section 365(d)(3) of the Bankruptcy Code provides, in relevant part, that

> The trustee shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). Any order approving the Proposed Rejection Procedures should provide that the Debtors are obligated to pay all of their obligations under the Leases through the effective date of rejection, including the full month's rent for the month in which the applicable Lease is rejected, regardless of whether the Debtors are in possession of the Leased Premises. *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001); *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 989 (6th Cir. 2000).

31.     Second, any order approving the Proposed Rejection Procedures should provide that any assets not removed from the Leased Premises as of the effective date of rejection shall be deemed abandoned by the Debtors free and clear of any and all liens, claims, encumbrances and interests, and that the Glimcher Landlords shall have the express authority to dispose of such assets without any liability whatsoever to the Debtors or any third party and without waiver of any claim that the Glimcher Landlords may have against the Debtors, or any other third party, for the disposal of such property.

32.     Third, any order approving the Proposed Rejection Procedures must require that the Debtors or any liquidating agent return the Leased Premises to the Glimcher Landlords in accordance with the terms and conditions of the Leases, including but not limited to, in broom clean

condition.

33.     Finally, the Debtors have proposed that landlords will have 21 days after the effective date of rejection to file a rejection damages claim. Consistent with standard practice and to ensure that the Glimcher Landlords have sufficient time to prepare and file proofs of claim, the Glimcher Landlords propose that any order approving the Proposed Rejection Procedures give landlords 30 days to file rejection damages claims.

**RESERVATION OF RIGHTS**

34.     The Glimcher Landlords reserve any and all rights to supplement and/or amend this Objection and expressly reserve the right to raise any additional objections with respect to the matters addressed herein.

**JOINDER**

35.     The Glimcher Landlords join in the objections filed by other landlords to the extent they are not inconsistent with this Objection.

WHEREFORE, the Glimcher Landlords respectfully request that this Court enter an order: (a) sustaining this Objection; (b) requiring that any order authorizing the assumption of the Leases require the Debtors to pay all amounts owing to the Glimcher Landlords under the Leases through the effective date of any assumption of the Leases plus attorneys' fees; (c) requiring the Debtors and any agent to comply with the Modified Store Closing Guidelines in connection with any Store Closing Sale that may occur at the Stores; (d) modifying any order granting the Rejection Procedures Motion as set forth herein; and (e) granting the Glimcher Landlords such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:  December 23, 2014
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esq. (DE No. 4716)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com

-and-

Ronald E. Gold, Esq.
Ohio Bar No. 0061351
Lindsey F. Baker, Esq.
Ohio Bar No. 0085017
**FROST BROWN TODD LLC**
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio  45202
Telephone:  (513) 651-6800
Facsimile: (513) 651-6981
E-mail:  rgold@fbtlaw.com
            lbaker@fbtlaw.com

**COUNSEL FOR THE GLIMCHER
LANDLORDS**