# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re                                    :    Chapter 11
                                         :
                                         :    Case No. 14-12676 (KG)
                                         :
DEB STORES HOLDING LLC., *et al.*, [1]   :    (Jointly Administered)
                                         :
                                         :
Debtors.                                 :
                                         :    **Hearing Date: Jan. 7, 2014 at 9:00 a.m. (ET)**
                                         :    **Obj. Due: Dec. 31, 2014 at 4:00 p.m. (ET)**
                                         :
                                         :    **Related to Docket No. 154**
---------------------------------------------------------------x

**OBJECTION OF THE MACERICH COMPANY, STARWOOD RETAIL PARTNERS LLC, PACIFIC RETAIL PARTNERS, METROPOLIS LIFESTYLE CENTERS, LLC, CREFII SILVER CITY, LLC AND GEM REALTY CAPITAL, INC. TO THE DEBTORS' MOTION FOR AN ORDER ESTABLISHING PROCEDURES FOR THE REJECTION OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY</u>**

The Macerich Company, Starwood Retail Partners LLC, Pacific Retail Partners, Metropolis Lifestyle Centers, LLC, CREFII Silver City, LLC, and GEM Realty Capital, Inc. (hereinafter, the "<u>Landlords</u>") hereby file this objection (the "<u>Objection</u>") to the Debtors' Motion for an Order Establishing Procedures for the Rejection of Executory Contracts and Unexpired Leases of Nonresidential Real Property (the "<u>Rejection Procedures Motion</u>"),[2] and respectfully represent as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4755), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842). The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA 19114.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Rejection Procedures Motion, and related documents.

- 1 –

## I. BACKGROUND FACTS

1. Deb Stores Holding LLC and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on December 4, 2014. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in detail on Schedule A hereto. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. On December 17, 2014, the Debtors filed the Rejection Procedures Motion [Docket No. 154]. The Landlord does not oppose expedited procedures to deal with the rejection of the Leases, but such procedures must adequately protect the Landlords, and require modification.

## II. ARGUMENT

**A. The rejection of any Lease should not become effective until the later of surrender and turnover of the Premises, free and clear of any personal property interests or third party objections, and seven (7) days after the filing of the Rejection Notice.**

4. The Rejection Procedures Motion provides that upon the filing of a Rejection Notice, Landlords and other interested parties will have seven (7) days to object to the proposed rejection. *See* Rejection Procedures Motion at ¶ 11(c). The Rejection Procedures Motion proposed that if no objection is received, nonresidential real property leases will be rejected on the later of (i) the date the Debtors file and serve a Rejection Notice for the Lease or (ii) the date the Debtors relinquish control of the Premises by notifying the affected Landlord in writing of the Debtors' surrender of the Premises in "broom clean" condition and turn over keys, key codes, and security codes, if any, to the affected Landlord (the "Rejection Date"). *See* Rejection

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Procedures Motion at ¶ 11(d). The proposed notice provides for five (5) days to object. Landlords request that the Debtors provide seven (7) business days for parties to object to the rejection of any Lease, so that all parties have notice of the rejection and abandonment of property.

5. To the extent that the Debtors provide seven (7) business days to object to the rejection of Leases, the Landlords do not object to proposed procedures, so long as any property remaining at the Premises on the Rejection Date is abandoned to the Landlords such that the affected Landlord may dispose of any property remaining at the Premises on the Rejection Date, in Landlord's sole discretion, and without further notice or liability to the Debtors or any third party as set forth below.

6. Consistent with the above, the Debtors must notify any third parties personal property or equipment lessors that they need to remove their property prior the Rejection Date, and Debtors should specify any such property in the Rejection Notice and provide the Rejection Notice to any third party that may have property at the Premises. This is customary for expedited rejection procedures in retail cases.

7. The Rejection Date should not occur until all parties have removed their property from the Premises, and providing the Rejection Notice to such parties allows them to removal of such property prior any proposed rejection date. By providing these parties with notice, the Debtors can also advise them that their failure to remove any property prior to the Rejection Date will result it's the abandonment to the Landlords free and clear of claims, interests and encumbrances, and without liability. To do otherwise, exposes Landlords to third parties coming onto the Premises after the Rejection Date, after which date Debtors' insurance may no longer cover the Premises. There is no justification to tailor rejection procedures to put Landlords at risk for liability for damage to persons or property at the Premises when they are potentially without recourse against the Debtors' insurance. Therefore, the rejection procedures should require that any property that will be removed (and any parties that need to enter the Premises to remove property) must be done prior to the Rejection Date.

8.      Finally, in the event a party other than Landlords object to the rejection of the Leases, the effective date of rejection must be the later of the Rejection date (as set forth above), and the date that the Court enters an order authorizing rejection of such Lease.  This is consistent with Section 365 and protects the rights of the Landlords in the event a delay occurs through no fault of their own.  Rejection of a lease is generally not effective until it is so ordered by the Bankruptcy Court.  Until the entry of the rejection order, a debtor is obligated to pay the full amount of rent specified in the lease, and otherwise perform all obligations.  *See* In re Thinking Machines Corp., 67 F.3d 1021, 1025-1028 (1st Cir. 1995) (reversing judgment of District Court setting rejection date as of the motion filing date); In re Federated Department Stores, Inc., 131 B.R. 808, 815 (S.D. Ohio 1991) (reversing bankruptcy court's approval of retroactive rejection as requested by debtor); In re Arizona Appetito's Stores, Inc., 893 F.2d 216 (9th Cir. 1990); In re Worth's Stores, Corp., 130 B.R. 531 (Bankr. E.D. Mo. 1991); In re Paul Harris Stores, Inc., et al., 148 B.R. 307 (S.D. Ind. 1992); Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994).  Pending the resolution of such objection, the Landlord cannot market or otherwise control its Premises.  In the situation of an objection by a third party, there is no reason to permit any retroactive rejection of the Leases.

**B.     The rejection procedures should provide for the removal of all personal property prior to rejection, with all property left at the Premises after rejection abandoned to Landlord free and clear of claims, encumbrances and interests, and without any liability to third parties.**

9.      The Rejection Procedures Motion does not address the issue of abandonment of property that may remain at the Premises on the Rejection Date.  While the Rejection Procedures Motion indicates that the Debtors will return the Premises in "broom clean" condition, experience suggests that this is rarely the case.  The abandonment of property can result in significant costs to Landlords as a debtor often leaves its vacated space cluttered with inventory, supplies and furniture, fixtures and equipment ("FF&E").  This leaves the Landlords with the task of cleaning up the Premises, removing and/or disposing remaining property, and potentially dealing with unknown third party security interests that may exist with respect to the abandoned

property.  Resolving this issue at the outset will benefit the Debtors and assist in minimizing administrative rent exposure.  In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994).

10. Any final expedited procedures should provide that, upon the Rejection Date, Landlords may dispose of any remaining personal property or FF&E, in their sole discretion, free and clear of all liens, claims, encumbrances, and interests or other rights of third parties, and without further notice or any liability to the Debtors or any third party. This assures that all parties have notice to remove their property from the Premises prior to the Rejection Date, and that failure to do so may result in the disposal of such property by the Landlords. Additionally, it does not unnecessarily burden the Landlords by requiring them to store property for the benefit of the Debtors or third parties (with whom the Landlords have no contract, but which potentially subjects Landlords to claims of liability with respect to such property).  To do otherwise, shifts the risk of loss to the Landlords, as well as puts them in the position of providing forced storage for the benefit of the Debtors or third parties for an indeterminate period of time.

11. It does not serve the purposes of the Bankruptcy Code to shift these obligations to the Landlords.  If the Debtors seek to reject their Leases through an expedited process, the Debtors must: (a) removal of all property as required by the Leases; (b) include procedures to adequately protect the Landlords' rights and interests; or (c) agree that the costs arising from removal, storage, or potential liability for dealing with third party security interests or equipment leases shall be an administrative expense of the bankruptcy estate.  The Debtors must be held responsible for the Landlords' legitimate claims arising from the removal and disposal of such property, as well as costs associated with the restoration of the Premises to the condition required under the Leases.

C. **Landlords should have at least 30 days to file rejection claims.**

12. The Rejection Procedures Motion requests that the deadline for Landlords to file rejection claims be the later of (a) the general claims bar date, and (b) twenty one (21) days following the Rejection Date. *See* Rejection Procedures Motion at ¶ 11(g).  This is contrary to the customary claims bar date in virtually every other case, which is the later of the general

claims bar date and thirty (30) days to file rejection claims. The shortened claim period creates an unnecessary trap to the unwary, and there is no legitimate reason not to provide the typical time to file rejection claims.

### D. Landlord joins in the objections of other landlords.

13. To the extent not inconsistent with the relief sought herein, Landlords join in any opposition to Rejection Procedures Motion.

### III. CONCLUSION

In order to protect the interests of the Landlords, Landlords requests that the Court modify any final order on rejection procedures to incorporate the changes set forth above, and grant such other and further relief as may be just and proper.

Dated: December 30, 2014  
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Matthew G. Summers, Esquire (No. 5533)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
       summersm@ballardspahr.com

and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (SBN: 174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail: dustin.branch@kattenlaw.com

*Attorneys for Landlord Creditor The Macerich Company, Starwood Retail Partners LLP, Pacific Retail Partners, Metropolis Lifestyle Centers, LLC, CREFII Silver City, LLC, and GEM Realty Capital, Inc.*