## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
In re                          :        Chapter 11
:
                           :        Case No. 14-12676 (KG)
:
DEB STORES HOLDING LLC., et al., [1]   :        (Jointly Administered)
:
        Debtors.           :
:        **Hearing Date: Jan. 7, 2015 at 9:00 a.m. (ET)**
:        **Obj. Due: Dec. 31, 2014 at 4:00 p.m. (ET)**
:
:        **Related  to Docket  No. 37 & 159**
:
-------------------------------------------------------------------x

## OBJECTION OF THE MACERICH COMPANY, STARWOOD RETAIL PARTNERS LLC, PACIFIC RETAIL CAPITAL PARTNERS, METROPOLIS LIFESTYLE CENTERS, LLC, CREFII SILVER CITY, LLC AND GEM REALTY CAPITAL, INC. TO THE UNEXPIRED LEASE OR EXECUTORY CONTRACT ASSUMPTION AND CURE NOTICE

The Macerich Company, Starwood Retail Partners LLC, Pacific Retail Capital Partners, Metropolis Lifestyle Centers, LLC, CREFII Silver City, LLC, and GEM Realty Capital, Inc. (hereinafter, the "Landlords") hereby file this objection (the "Objection") to the Unexpired Lease or Executory Contract Assumption and Cure Notice (the "Cure Notice"), and respectfully represent as follows:

## I.    BACKGROUND FACTS

1.    Deb Stores Holding LLC and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Deb Stores Holding LLC (4407), Deb Stores Holding II LLC (4755), Deb Shops SDP Inc. (4120), Deb Shops SDIH Inc. (4113), Deb Shops SD Inc. (8806), Deb Shops SDE LLC (4077), Deb Shops SDW LLC (4065), Deb Shops SDE-Commerce LLC (0926), and Deb Shops SDFMC LLC (8842).  The location of the Debtors' headquarters and the service address for each of the Debtors is 9401 Blue Grass Road, Philadelphia, PA  19114.

December 4, 2014.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in detail on Schedule A hereto.  The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3.    On December 5, 2014, the Debtors filed the Debtors' Motion For Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closings Sales And (III) Granting Related Relief (the "Sale Motion")[3] [Docket No. 37].  On December 17, 2014, the Court approved the Debtors' bidding procedures for the conduct of an auction and sale of the Debtors assets (the "Bidding Procedures Order") [Docket No. 159].  The Landlords did not receive the Cure Notice until it made a request on the Debtors for this information on December 29, 2014.  The amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future.  The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

[3] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Agency Agreement, the Cure Notice, and any related documents.

II.    **THE DEBTORS' PROPOSED CURE AMOUNTS DO NOT PROVIDE FOR PAYMENT OF ALL OBLIGATIONS DUE UNDER THE LEASES**

4.    The Landlords' cure, as compared to the Debtors' cure is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits A through N, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtors' Cure | Landlord Cure[4] |
|---|---|---|---|---|
| Macerich | Deptford Mall | 30 | $25,571.04 | **$28,608.84** |
| Macerich | Fashion Outlets of Niagara Falls | 89 | $34,296.96 | **$37,633.26** |
| Macerich | Great Northern Mall | 292 | $7,792.66 | **$10,421.26** |
| Macerich | SouthPark | 150 | $14,836.66 | **$17,478.96** |
| Macerich | Valley Mall | 296 | $6,734.33 | **$9,319.29** |
| Starwood | Chicago Ridge | 179 | $24,919.00 | **$27,761.72** |
| Starwood | Gateway | 31 | $29,610.66 | **$153,336.01** |
| Starwood | Great Northern Mall | 262 | $16,810.00 | **$19,451.15** |
| Starwood | Rimrock Mall | 274 | $21,904.48 | **$29,061.72** |
| Starwood | SouthPark | 91 | $46,792.16 | **$49,892.71** |
| Pacific Retail | South Towne Center | 388 | $10,023.24 | **$12,752.61** |
| Metropolis Lifestyle | Metropolis Mall | 321 | $28,333.34 | **$31,174.04** |
| CREFII Silver City | Silver City Galleria | 59 | $9,543.16 | **$11,883.65** |
| GEM Realty | Green Tree Mall | 357 | $22,879.04 | **$25,757.94** |

5.    In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

---

[4]    The Landlords' Cure does not include charges arising since the filing of this Objection, or charges which have not been directly billed to the Landlords as of the filing of this Objection. The Landlords' Cure also does not include charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors failure to pay, or to the extent that there are other charges that come due under the Leases after the date of this Objection, the Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Leases (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

i.      _Year-end adjustments and reconciliations_

6.      In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2013 may not have been billed for some locations, and such charges for 2014 will not be billed until 2015).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

7.      Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.  The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease.  Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment.  In addition, any provision in a

sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

8.      Finally, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents.   Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[5]   In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases.   Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

*ii.      Attorneys' fees, costs, and interest*

9.      The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests.   The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases.   *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized.   In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

10.     The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens.   The Debtors cannot assume the favorable portions, and reject the unfavorable

---

[5]  Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption be in accordance with all provisions of the Leases.

provisions, of their Leases.  In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993).  If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors.  *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).  The "full benefit of the bargain" principle has been held to require payment of interest.  "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."  In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).  Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990).  Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases.  Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases.  Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

11.    Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases.  Entertainment, Inc., 223 B.R. at 152 (citation omitted).  There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults.  Id. 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  *Id., see also,* In re Crown Books Corporation, 269 B.R. 12 (Bankr.

D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); <u>Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al.</u>, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); <u>Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)</u>, 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  <u>Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric</u>, 127 S. Ct. 1199, 1206 (2007).

iii.    *The cure amounts serve only as estimates*

12.    Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

## III.    IMMEDIATE PAYMENT OF UNDISPUTED CURE AMOUNTS

13.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption.  To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

## IV.    JOINDER IN OBJECTIONS BY OTHER LANDLORDS

14.    To the extent not inconsistent herewith, the Landlords hereby join in the objections raised by other landlords.

## V.      CONCLUSION

In order to protect the interests of the Landlords, the cure amounts should be allowed (subject to adjustment by the Landlords) in the amounts set forth herein, and the Court should grant such other relief that the Court finds just and proper.

Dated:  December 31, 2014   Respectfully submitted,
Wilmington, Delaware

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Matthew G. Summers, Esquire (No. 5533)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
   summersm@ballardspahr.com

  and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (SBN:  174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com

Attorneys for Landlord Creditors The Macerich
Company, Starwood Retail Partners LLP, Pacific Retail
Capital Partners, Metropolis Lifestyle Centers, LLC,
CREFII Silver City, LLC, and GEM Realty Capital, Inc.