IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| DEB STORES HOLDING, LLC., *et al*., | Case No. 14-12676 (KG) |
| Debtors. | Jointly Administered |
|  | Objection Deadline: Dec. 31, 2014 at 4:00 p.m. (ET) |
|  | Hearing Date: Jan, 7, 2015 at 9:00 a.m. (ET) |
|  | Related to Docket No. 37 and 159 |

**PRECAUTIONARY OBJECTION OF MACOMB MALL PARTNERS, LLC, BAY CITY MALL PARTNERS, LLC, RAMCO JACKSON CROSSING SPE, LLC, AND URBANCAL OAKLAND MALL, LLC TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION, AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF**

Macomb Mall Partners, LLC, Bay City Mall Partners, LLC, Ramco Jackson Crossing SPE, LLC, and Urbancal Oakland Mall, LLC (the "Objecting Landlords") by and through their undersigned counsel, file this precautionary objection[1] to the Debtors' Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Relief [D.I. 137], and state as follows:

1. On December 5, 2014 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. On December 5, 2014, the Debtors filed their Motion to Authorize/Debtors Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling a Sale Hearing and Approving Notice

---

[1] As to a lease assumption, the Objecting Landlords file this "precautionary" objection to the Debtors' motion for approval of the possible assumption and assignment of leases because of the relatively short period of time scheduled between the auction date and the hearing date to approve the sale, the objection deadline is prior to the Auction and it is not known who the ultimate purchaser will be, and the uncertainty as to when the specific leases will be designated for assumption and assignment or rejection.

1

Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief Filed by Deb Stores Holding LLC [D.I. #37] ("Motion").

3. On December 18, 2014, the Court entered its Order (I)(A) Authorizing Entry Into Agency Agreement (B)Authorizing Bidding Protections (C) Authorizing Bidding Procedures and Auction and (D)Scheduling Sale Hearing and Approving Notice Thereof and (II) Granting Related Relief [D.I. #159].

4. The Debtors propose to sell all or most of their assets to either a pre-selected stalking horse bidder or to another successful bidder(s), at an auction to be held on January 6, 2015, and in conjunction therewith to possibly assume and assign some or all of their non-residential real property leases. Pursuant to the Bidding Procedures Order objections to the sales and cure amounts are due <u>six days</u> before the proposed Auction and before the Objecting Landlords will have been advised of any potential bidders or assignees for their Leases. Accordingly, the Objecting Landlords reserve their rights to amend, modify and supplement this Objection if and when a proposed assignee is identified.

5. On December 19, 2014, the Debtors issued an Unexpired Lease or Executory Contract Assumption and Cure Notice for each of the Objecting Landlord's Leases (each a "Cure Notice") which set forth the amount the Debtors assert must be paid in order to assume and assign the unexpired lease of nonresidential real property.

6. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. This is a contested matter, pursuant to Bankruptcy Rules 6006(b) and 9014.

8. Jurisdiction is based upon 28 U.S.C. §1334.

9. This is a core proceeding within the meaning of 28 U.S.C. §157(b).

10. The Landlords are the owners of, or the managing agents for the owners of, certain real property in which the Debtors lease retail space (the "Leased Premises") from the Landlords pursuant to certain written leases (collectively, the "Leases"). The Leases are for the following four locations:

    (a)    Macomb Mall in Roseville, MI (leased from Macomb Mall Partners, LLC)

    (b)    Bay City Mall in Bay City, MI (leased from Bay City Mall Partners, LLC)

  (c)  Jackson Crossing in Jackson, MI (leased from Ramco Jackson Crossing SPE, LLC)

  (d)  Oakland Mall in Troy, MI (leased from UrbanCal Oakland Mall, LLC)

11. The Debtors continue to use and occupy the Leased Premises.

12. The Objecting Landlords' premises are located in a shopping center, as that term is used in 11 U.S.C. §365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990). Accordingly, the Landlords are entitled to the protections that Bankruptcy Code §365(b)(3) grants to landlords of shopping centers.

### Assumption and Assignment

13. The Debtors propose a very short period of time between the auction date and the hearing date to approve the sale of the Debtors' leases, as well as the assumption and assignment of leases. Currently, and due to the proposed schedule, the Debtors have failed to satisfy the requirements of Bankruptcy Code Section 365(b) for assumption of the Objecting Landlords' Leases in that they have failed to cure existing defaults under the leases and failed to provide "adequate assurance." In addition the Objecting Landlords' Leases require the Debtors' payment of the landlords' attorneys' fee under these circumstances, in order to meet the requirements of Section 365(b) the Debtors must reimburse the landlords' for their pecuniary losses. See 11 U.S.C. §365(b)(1)(A) and (B). The principle is well-recognized. *In Re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989). Furthermore, the Debtors do not disclose when they will notify the Objecting Landlords of the Debtors' intentions with regard to the specific leases.

14. Additionally, the proposed assignments to the yet to be determined assignee has yet to be shown to comply with the provisions of Section 365(f) and, therefore, cannot be approved by this Court. Section 365(f) provides:

> (f)(2) The Trustee may assign an executory contract or unexpired leases of the debtor only if –

        (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

        (B) <u>adequate assurance of future performance</u> by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease (Emphasis added.)

Section 365(b)(3) defines adequate assurance of future performance as follows:

        (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance –

        (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, <u>that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and the guarantors, if any, as of the time the debtor became the lessee under the lease</u>;

        (B) that any percentage rent due under such lease will not decline substantially;

        (C) that assumption or <u>assignment of such lease is subject to all the provisions thereof,</u> including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

        (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center (Emphasis added.)

15.     The Debtors have the burden of proof to establish that assumption and assignment will not affect the "use," will not disrupt the tenant mix or balance in the shopping center affected, will not substantially affect future performance of non-monetary obligations of the lessee, and will insure the performance of all monetary obligations under the leases. *In re: Lafayette Radio Electronics Corp.* 12 B.R. 302 (Bankr. E.D.N.Y. 1981).

16.     The Debtors' motion has failed to establish these requirements and meet their burden of proof. Nowhere in the filed pleadings is there a showing that all provisions of the leases will be honored by the assignee. It is not known who the assignee will be. Nowhere in the Debtors' motion is there a

showing of any history of an operating performance by the assignee or that the assignee's operating performance will be similar to the operating performance of the Debtors as of the time the Debtors became the lessee under the leases. Lastly, nowhere in the Debtors' motion or any supporting documents is there a showing that the financial condition of the proposed assignee is similar to the financial condition of the Debtors as of the time the Debtor became the lessee under the leases as required by Section 365(b)(3)(A).

17. Additionally, the requirement that the use clause provision of the lease must be complied with has been emphasized by the recent bankruptcy code amendments. The ability of the Debtors to assign a shopping center lease under Section 365(b)(3) is subject to the right of a shopping center landlord to enforce use, radius, exclusivity, tenant mix and similar lease provisions. BAPCPA and its legislative history of BAPCPA supports the clear intention of Congress.

18. Courts have interpreted Section 365(b)(3)(C) as being a strict requirement that the bankruptcy courts not alter use clauses by approving assignment which effect changes in use. *In re Rose's Stores, Inc.*, 1995 U.S. App. LEXIS 8090 (Decided April 12, 1995) (4th Cir.); *In re Tech Hifi, Inc.*, 49 Bankr. 876 (Bankr. D. Mass 1985); *In re Bricker*, 43 Bankr. 344 (Bankr. D. Ariz. 1984).

19. It is the Debtors' burden of proof under Section 365(b)(1). *In re Memphis-Friday's Associates,* 88 Bankr. 830, 840-1 (Bankr. W.D. Tenn. 1988); *In re Lafayette Radio Electronics Corp.*, 12 Bankr. 302, 307 (Bankr. E.D.N.Y. 1981).

20. When the Objecting Landlords entered into their leases it was with a known entity which at the time exhibited a strong financial position and demonstrated a tradition of effective and experienced management. Without a showing that the assignee has a similar financial capacity, has a similar track record with regard to managerial experience with this type of operation, and plans to continue to operate the enterprise in a manner consistent with the restrictions of the leases, it is unfair and violative of the requirements of Section 365 to permit the Debtors to assume and assign the Objecting Landlords' leases pursuant to the motion currently on file.

21.   Further, no evidence of adequate assurance has been offered by the Debtors to date. Section 365(l) provides:

> (l) If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

If the proposed assignee is a newly-formed company, the Objecting Landlords assert that the Court should at the least require a security deposit of four (4) month's rent and other charges or a two-year guaranty from a solvent parent corporation.

22.   The Objecting Landlords reserve the right to object to adequate assurance of future performance once the successful bidder at auction is identified.

### The Cure Amounts, Including Attorneys' Fees, Under the Lease Must be Paid

23.   The Objecting Landlords object to the proposed assumption and assignment of their Leases by a proposed assignee unless the Debtors and/or the proposed assignee comply with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and the proposed assignee to satisfy the Code's requirements any proposed assumption and assignment must be denied.

24.   As a condition to any assumption and assignment of the Leases, all defaults must be cured upon assumption. 11 U.S.C. §365(b)(1)(A). The Landlords hereby object to the proposed cure amounts set forth in the Cure Schedule.

25.   The Cure Notice does not provide any back-up or support for the amounts set forth therein. The amounts set forth in the Cure Notice do not reflect the outstanding balance due and owing to the Landlord under the Lease, and the proposed cure amount also does not account for accrued but unbilled charges which may come due in the future. Therefore, the cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability of the Debtors or the assignee to pay for the accruing charges due under the Leases, as set forth herein.

26.     The Debtors listed the Landlords as being owed the amounts listed in the table below, and the Landlords assert the correct cure amount as of January 1, 2015[2] is as indicated in the table below.

27.     The correct cure amounts are set forth below (each individual claim being referred to as a "Cure Claim"). The Cure Claims set forth reflect the base cure claim amounts subject to additional qualifications and modifications (such as reimbursement of attorney's fees) as more fully set forth below:

| Landlord | Shopping Center | Landlord's Cure Claim | Debtor's Scheduled Cure Claim | Exhibit |
|---|---|---|---|---|
| Macomb Mall Partners, LLC | Macomb Mall Store #120 Roseville, MI | $50,128.81 $1,000.00 Attorney's Fees **$51,128.81** | $17,755.50 | A |
| Bay City Mall Partners, LLC | Bay City Mall Store #364 Bay City, MI | $9,405.72 plus 12/14 percentage rent $1,000.00 Attorney's Fees **$10,405.72 plus percentage rent based upon December sales of approximately $3,880.00** | $3,886.16 | B |
| Ramco Jackson Crossing SPE, LLC | Jackson Crossing Store #168 Jackson, MI | $36,609.47 $1,000.00 Attorney's Fees **$37,609.47** | $12,898.69 | C |
| UrbanCal Oakland Mall, LLC | Oakland Mall Store #361 Troy, MI | $29,748.02 $1,000.00 Attorney's Fees **$30,748.02** | $1,290.32 | D |

28.     The Objecting Landlords reserve their right to amend the cure amount.

29.     The Leases contain provisions for recovery of attorney's fees, costs, and interest in the event that a Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Objecting Landlords for their actual pecuniary loss as a result of defaults under the Lease. See 11 U.S.C. §365(b)(1)(A) and (B). The principle is well-

---

[2] These amounts may increase prior to the actual date of assumption of the Leases if the Debtors do not pay all amounts that accrue after January 1, 2015, and any taxes, common area maintenance, percentage rent, and other amounts that may come due, pursuant to the terms of the Leases and regardless of when those amounts accrued.

7

recognized. *In Re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco),* 107 B.R. 483, 487 (Bankr. D. Del. 1989).

30. The Cure Amounts set forth above, pursuant to the terms of the Leases and 11 U.S.C. §365(b), include a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy case in the approximate amount of $1,000 for each lease. See, e.g., *In re Pelican Pool,* 2009 Bankr. LEXIS 4623 (Bankr. D.N.J. July 27, 2009); *In Westview 74th Street Drug Corp.,* 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption), *Travelers Cas. & Su. Co. Co. of A. v. Pacific Gas and El. Co.,* 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re East 44th Realty, LLC,* No. 07 Civ 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable.); *In re Beltway Medical, Inc.,* 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) "Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorneys' fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); *In re Entertainment, Inc.,* 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (attorneys' fees must be paid as provided for in the assumed lease). The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S. C. §365(b)(1)(A) and (B).

31. The contact information for the Objecting Landlords to discuss this cure objection is:

David M. Blau, Esq.
dblau@clarkhill.com
Fax:         (248) 988-2336
Telephone:   (248) 988-1817

32. The Objecting Landlords reserve their right to amend their Cure Claims to account for year-end adjustments, including without limitation, adjustments for the 2014 and 2015 years and further

201812762.1 39730/155323

amounts allowed by applicable bankruptcy and non-bankruptcy law, which have not yet been billed or have not yet become due under the terms of the Lease.

### Accrued, but Unbilled Charges, Adjustments and Reconciliations

33. Section 365(b) requires that a debtor cure all defaults in conjunction with a lease assumption.

34. In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Lease have not been reconciled and/or adjusted from pre-petition (or possible post-petition) periods. With the exception of the Bay City Mall Partners, LLC Lease, the Leases are each a triple-net lease, where the Debtors pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expense such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and real property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the shopping center. To the extent the estimated payments do not cover actual charges incurred under the lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. year-end reconciliations and adjustments that accrued through 2015 may not have been billed). In other instances, certain charges may be paid in arrears, and cannot be calculated until a year or more after year end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default but gives rise to a requirement to cure by the Debtors at this time.

35. Nevertheless, the Debtors continue to be responsible for all such accrued and accruing charges under the Leases, and must pay such charges as and when they come due under the Lease. Any proposed assignee must take the assignment of any Lease subject to its terms, as well as pay all obligations owing under such Lease, including obligations that have accrued but may not have been billed under the Lease. Any final sale order should clearly state that the assignee will assume the Lease

9

obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to provide a release of further liability based upon a payment of cure amounts, should specify that such release does not apply to the obligation to pay accrued, but unbilled, charges that come due under the Lease.

36.  The Objecting Landlords reserve the right to increase or further reconcile the Cure Claims set forth herein for items such as, but not limited to, claims for rent, taxes, common area maintenance, costs, fees, and any additional cure amounts due under the Lease, as the Debtor is still in the property and is accruing expenses.

### Indemnity Obligations

37.  In addition to monetary obligations that Debtors must satisfy under Section 365 of the Bankruptcy Code, the Leases also provide that the Debtors must indemnify and hold the Objecting Landlords harmless with regard to existing claims as well as with regard to events which may have occurred pre-assumption but which are not made known to the Objecting Landlord or Debtors until some period post-assumption. Accordingly, either the assignee must assume all indemnification liabilities or Debtors must be required to evidence, or obtain adequate insurance in order to guaranty that their indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries which occur at the leaseholds, where either the Objecting Landlords are joined as party defendants, damage, and destruction to the property by Debtors or their agents, claims for environmental damage or environmental clean-up etc.

### The Debtors May Not Assume and Assign the Lease Without Providing Adequate Assurance of Future Performance

38.  Without compliance with Section 365(b)(1) of the Bankruptcy Code, court approval of the proposed assignment should not be granted. Judge Lathum stated, in *In re Delaware and Hudson Railway Company*, 129 BR 388, 389 (D. Del. 1991), that the trustee may not assume a contract under Section 365 "unless the trustee <u>promptly</u> cures the default, compensates the other party for pecuniary loss resulting from the default, and provides adequate assurance of future performance under the contract."

(Emphasis added). In the instant case, the Debtors have not indicated how or when it will cure the outstanding defaults. As such, the assumption and assignment cannot be approved until the Debtors comply with Section 365.

39. In order to assume and assign shopping center leases, Debtors must not only satisfy the requirements of Section 365(b)(1)(C), but also the heightened requirements set forth in Section 365(b)(3)(A)-(D). *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d. 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

> • The source of rent and assurance that the financial condition and opening performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. §365(b)(3)(A);
>
> • That any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. §365(b)(3)(B);
>
> • That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. §365(b)(3)(C); and
>
> • That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. §365(b)(3)(D).

Pursuant to Section 365(b)(1)(C) of the Bankruptcy Code, the Debtors are also required to provide the Objecting Landlords with adequate assurance of an Assignee's future performance, as a condition to assumption and assignment of the Lease.

40. The Motion does not address the above-referenced adequate assurance of future performance requirements under Sections 365(b)(1)(C) and (b)(3), since it is not known who the successful bidder at the Auction will be.

41. The Debtors and any proposed assignee have failed to provide any evidence of adequate assurance of future performance.

201812762.1 39730/155323

42. Since it is unknown whether the proposed Assignee is a retail operator or publicly traded on a national exchange, the Objecting Landlords are concerned regarding the source of, and the proposed Assignee's ability to pay rent. The Debtors have not supplied the Objecting Landlords with sufficient financial information and background on the proposed Assignee, so the Objecting Landlords may test the proposed Assignee's financial condition and operating performance against that of the Debtors. Subject to review of the proposed Assignee's financial information, the Objecting Landlords are unwilling to withdraw its objection on this point.

43. In addition to demonstrating a satisfactory financial condition of the proposed assignee, in order to provide the Objecting Landlords with reasonable assurance that Assignee will pay rent and other consideration due under the Leases, the proposed assignment should be conditioned upon execution of a parent guaranty guarantying rent, CAM, electric, taxes and related charges/expenses shall be fully and timely satisfied, in the event of Assignee's default, in a form reasonably acceptable to the Objecting Landlord.

### Objection to Proposed Sale Guidelines

44. The Objecting Landlords are opposed to the Debtors conducting Store Closing Sales at the Leased Premises. This Court has "the discretion to condition the time, place, and manner of store closing sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations." *In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

45. If this Court authorizes the Debtors to conduct Store Closing Sales at the Leased Premises, this Court should modify the Proposed Sale Guidelines to restrict the activity of the Debtors and any liquidating agent so as to minimize any harm to the Objecting Landlords and their respective tenants.

46. The Court should require that the Debtors and any liquidating agent comply with all terms of the Leases while conducting any Store Closing Sales, except as modified by any Court-approved

201812762.1 39730/155323

store closing sale guidelines or any side letter agreements entered into between the Objecting Landlords, the Debtors, and any liquidating agent chosen to conduct any Store Closing Sales at the Leased Premises.

47. The duration of the Store Closing Sales should be limited to no more than eight weeks to minimize the irreparable harm to the shopping center and its tenants.

48. The Proposed Sale Guidelines should be modified to provide:

a. The Debtors shall agree to comply in all material respects with the terms and conditions of the Leases, including but not limited to, the prompt payment of all amounts owing by the Debtors to the Objecting Landlords under the Leases;

b. The Objecting Landlords shall continue to have access to the Leased Premises under the terms of the Leases. After the completion of any Store Closing Sale, the Objecting Landlords shall have access to the Leased Premises not only to "dress" or barricade the windows but shall continue to have access to the Leased Premises under the terms of the Leases.

c. Any Store Closing Sale shall be conducted so that the respective Store will remain open during the normal hours of operation provided for in the applicable Lease. The Debtors shall not conduct an auction or fire sale and shall abide by any applicable guidelines concerning, among other things, hours of operation, maintenance, and security and trash removal, set forth in the Leases.

d. Essentially the same "window dressings" shall be maintained and essentially the same "good housekeeping" standards (including providing adequate walk-ways in the Stores) and operating procedures shall be observed during the course of any sale at the Stores.

e. The Debtors shall keep the premises of the Stores and surrounding area clear and orderly, consistent with present practices.

f. Any Store Closing Sale should be limited in duration to no more than eight weeks.

g. All display and hanging signs used by the Debtors in connection with any Store Closing Sale shall be professionally produced and all hanging signs shall be hung in a

13

professional manner. Signs describing any sale by the Debtors at the Stores shall be no larger than twenty-two (22") inches by twenty-eight (28") inches and shall be composed of a uniform color package comprised of no more than three colors. No neon or "day glo" colors should be used in the signage. Up to six (6) signs per 1000 square feet of retail space may be posted in the interior of the Store. No signs should be taped, push-pinned, or otherwise affixed to the walls or windows of the Stores.

h. Window signs should be recessed at least twelve inches (12") from the glass. Such window signs should also be limited to one such window sign per window that does not exceed 50% of the window total area. Window signs must not be stapled, taped or otherwise affixed together to exceed the 22" by 28" limitation. Each sign shall be consistent with the form and content of the signs described herein.

i. Only one (1) banner may be hung in the interior of the Stores, and such banner shall be no larger than three (3') feet by six (6') feet and shall be hung in the back third of the Stores.

j. The use of sign walkers, sandwich boards, A-frames, exterior banners, tethered, hot-air or other balloons, inflatable images, rooftop advertising or other street signage or solicitation shall not be permitted at or near the Leased Premises. The Debtors shall not place any sign and/or advertising or marketing of any Store Closing Sale in any common area, parking lot, sidewalk, building façade or other shopping center property owned by the Objecting Landlords.

k. No exterior signs or banners of any kind may be used.

l. The Debtors shall not distribute handbills, leaflets or other written materials to customers outside of the premises of the Stores. Otherwise, the Debtors may solicit customers in the Stores themselves. The Debtors shall not use flashing lights, strobe lights, large spotlights, bullhorns or any type of amplified sound to advertise any Store Closing Sale or solicit customers.

201812762.1 39730/155323

m.     The Debtors shall not make any alterations to the storefront or exterior walls of the Stores.

n.     The Debtors shall not make any alterations to interior or exterior lighting of the Stores.

o.     Advertising and signage may indicate that the sale is a "Store Closure Sale", a "Store Closing Sale" or use language of similar import, but shall not refer to the sale as a "going out of business sale", a "bankruptcy sale", a "court ordered sale" or a "liquidation sale."

p.     No auction of furniture, fixtures, equipment or other property shall be conducted at the Stores. There shall be no auction of inventory, outside sales, sidewalk sales, tent sales, or any sale of any merchandise outside of the Stores.

q.     The Debtors may not transfer inventory from any other merchant, including inventory of any agent, to the Stores for inclusion in any Store Closing Sale. In addition, the Debtors may not transfer inventory from any other store of the Debtors or any distribution center of the Debtors unless such inventory is of like kind and quality.

r.     The Debtors shall designate a representative to be contacted by the Objecting Landlords and the State Attorney General should an issue arise concerning the conduct of any Store Closing Sale.

s.     At the conclusion of any Store Closing Sale, the Debtors shall vacate the Stores in a broom-clean condition, and shall leave the Stores in the same condition as at the commencement of any Store Closing Sale, ordinary wear and tear excepted. The Debtors shall also remove their signage and repair any damage to the Leased Premises. No permanent fixtures may be removed without written consent of the Objecting Landlords. No property of the Objecting Landlords shall be removed or sold during any Store Closing Sale.

t.     Any fixtures or personal property of the Debtors left at a Store after the earlier of (i) the completion of the Store Closing Sale at such Store; or (ii) the time that the Debtors vacate such Store shall be abandoned to the applicable Objecting Landlord, and such Objecting

15

Landlord shall incur no liability whatsoever with respect to any action or actions taken in connection therewith.

49. The foregoing restrictions are reasonable in nature and are consistent with store closing sale procedures entered in other retail bankruptcy cases and should be imposed upon the Debtors.

50. The Objecting Landlords are particularly concerned with the content and the extent of the signage to be used and request the use of banners and signed be controlled by the respective lease.

51. The Debtors should not be permitted to discontinue operations at any Store and "go dark" upon the conclusion of any Store Closing Sale. The Debtors should be compelled to immediately reject the lease and to return possession of the Leased Premises to the Objecting Landlord upon conclusion of any Store Closing Sale.

52. The Objecting Landlords further join in any/all objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the assertions contained in the Objection, and also herein.

WHEREFORE, The Objecting Landlords respectfully request that the Court (i) deny Debtors' Motion, or, in the alternative, condition the sale of the unexpired leases of nonresidential real property in satisfaction of the objections raised in the above mentioned Objection; (ii) require that the Debtors and any agent to comply with the Modified Store Closing Guidelines in connection with any Store Closing Sale that may occur at the Stores; and (iii) grant such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:   December 31, 2014

Respectfully submitted,

CLARK HILL, PLC

/s/ Karen M. Grivner
Karen M. Grivner (DE No. 4372)
824 N. Market St, Suite 710
Wilmington, DE 19801
Tel: (302) 250-4749
Fax: (302) 421-9439
kgrivner@clarkhill.com

201812762.1 39730/155323

Landlord shall incur no liability whatsoever with respect to any action or actions taken in connection therewith.

49. The foregoing restrictions are reasonable in nature and are consistent with store closing sale procedures entered in other retail bankruptcy cases and should be imposed upon the Debtors.

50. The Objecting Landlords are particularly concerned with the content and the extent of the signage to be used and request the use of banners and signed be controlled by the respective lease.

51. The Debtors should not be permitted to discontinue operations at any Store and "go dark" upon the conclusion of any Store Closing Sale. The Debtors should be compelled to immediately reject the lease and to return possession of the Leased Premises to the Objecting Landlord upon conclusion of any Store Closing Sale.

52. The Objecting Landlords further join in any/all objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the assertions contained in the Objection, and also herein.

WHEREFORE, The Objecting Landlords respectfully request that the Court (i) deny Debtors' Motion, or, in the alternative, condition the sale of the unexpired leases of nonresidential real property in satisfaction of the objections raised in the above mentioned Objection; (ii) require that the Debtors and any agent to comply with the Modified Store Closing Guidelines in connection with any Store Closing Sale that may occur at the Stores; and (iii) grant such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:   December 31, 2014

Respectfully submitted,

CLARK HILL, PLC

/s/ Karen M. Grivner
Karen M. Grivner (DE No. 4372)
824 N. Market St, Suite 710
Wilmington, DE 19801
Tel: (302) 250-4749
Fax: (302) 421-9439
kgrivner@clarkhill.com

201812762.1 39730/155323

and

David M. Blau (P52542) (Admitted Pro Hac Vice)
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI 48009
Tel. 248.988-1817
Fax. 248.988-2336
dblau@clarkhill.com

Attorneys for Macomb Mall Partners, LLC, Bay City Mall Partners, LLC, and Ramco Jackson Crossing SPE, LLC, and UrbanCal Oakland Mall, LLC

201812762.1 39730/155323