IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 14-12676 (KG) |
| Deb Stores Holding LLC, *et al.*, | ) | (Jointly Administered) |
| | ) | Objection Deadline: 12/31/14 |
| | ) | Hearing: 01/07/15 @ 9:00 a.m. |
| Debtors. | ) | Re: D.I. 37, 46, 57, 95, 159 |

**OBJECTION OF MCKINLEY MALL LLC TO
DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY
AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING
BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING
AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS
AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF[1]**

McKinley Mall LLC ("McKinley"), by and through its undersigned counsel, hereby objects to the *Debtors' Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* [Docket No. 37] ("Motion"), and in support thereof, respectfully state as follows:

## BACKGROUND

1.  McKinley, as landlord, and DEB of New York, Inc. ("Debtor"), as tenant, are parties to a lease ("Lease") of non-residential real property for a unit ("Unit") in a shopping center known as McKinley Mall, located in Buffalo, New York ("Mall").

2.  McKinley Mall is a first class, high-end retail center, and is a "shopping center," as such term is used in section 365 of title 11 of the United States Code ("Bankruptcy Code"). The Mall has strict use and operation restrictions that govern the operations of its tenants.

---

[1] On December 15, 2014, McKinley Mall LLC filed its preliminary *Objection of McKinley Mall LLC to Debtors' Motion for Orders (A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* [D.I. 95].

3. In furtherance of their decision to liquidate their assets, the above-captioned debtors (collectively, "Debtors") have asked this Court for authorization to conduct "Store Closing Sales" in their retail stores, subject to certain proposed Sale Guidelines.[2]

4. Alternatively, in the event of a going concern transaction, the Debtors have requested that the Court approve, *inter alia*, the assumption and assignment of the Debtors' unexpired leases.

## OBJECTION

### I. Store Closing Sales

5. The Mall prohibits its tenants from conducting any "bankruptcy," "going-out-of-business," or similar sales in the Mall. Accordingly, McKinley objects to any Store Closing Sale in its Mall.

6. To the extent that this Court may authorize a Store Closing Sale in the Unit, McKinley objects to the Store Closing Sales because the inadequate restrictions set forth in the proposed Sale Guidelines are detrimental to McKinley's interest in the Unit and the overall condition of the Mall. No Store Closing Sale should be approved unless and until sufficient restrictions are in place to ensure that relevant provisions of the Lease will be followed, that the dignity and value of the Unit and the Mall will be maintained, and that the quiet enjoyment and economic prosperity of the Mall and its other tenants will not be disturbed.

7. The Bankruptcy Code does not abrogate Lease provisions that restrict GOB sales; rather, it provides bankruptcy courts with discretion to condition the time, place and manner of such sales as to safeguard shopping center landlords and their other tenants. *See, In re: Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. SDNY 1992). Further, the Court must balance any benefit to the Debtors' estates that will be achieved from the proposed Store

---

[2] Capitalized terms not defined herein have the meaning defined in the Motion.

Closing Sales with the right of McKinley to rely on the enforceability of the bargained-for provisions of the Lease.

8. Without limiting the scope of its objection to the Store Closing Sales, McKinley objects as follows:

**Invalidation Of Unspecified Lease Provisions**

9. The Debtors propose that this Court permit the Store Closing Sales to be conducted notwithstanding "any restrictive provision of any lease." The terms and conditions of the Lease (to which Debtor agreed) are designed to maintain the dignity and value of the Unit and the Mall. The Court should not provide the Debtors with discretion to deem unspecified terms of the Lease invalid merely because the Debtors feel that those terms are "restrictive." If the Debtors believe that particular provisions of the Lease will unnecessarily restrict its Store Closing Sales, the burden is on the Debtors to specifically identify those provisions.

**Injunction**

10. McKinley objects to the Debtors' request for an overly broad injunction prohibiting McKinley from taking any action to enforce any provisions of the Lease, or applicable law, to the extent that the Debtors may deem such action to "directly or indirectly" "interfering in any way with" or "otherwise impeding" the Store Closing Sales. Debtors have established neither a factual nor legal basis for the issuance of such an injunction. If implemented, any injunction must be restricted to situations where the Debtors (or their agent) is fully complying with the Lease, this Court's Orders and the Sale Guidelines.

**Sale/Removal of FF&E**

11. As part of their proposed Store Closing Sales, the Debtors seek approval to sell furniture, fixtures and equipment ("FF&E") in the Unit during the Store Closing Sale. The sale

and removal of fixtures in a Unit creates the appearance that the Unit (and thus the Mall) has been pillaged. This appearance is contrary to the image of the Mall and is detrimental to other tenants therein. Thus, the sale of FF&E should be prohibited.

12. The Motion also proposes that any personal property, including FF&E, that remains in a leased premises at the end of a Store Closing Sale, can be left behind. Any order approving such abandonment must provide that: (i) all FF&E remaining in the Unit as of the end of the Store Closing Sale is deemed abandoned by the Debtors, and (ii) McKinley is free to utilize and/or dispose of the FF&E without further notice or order of the court, and without any liability to the Debtors or any third party, including the Debtors' lenders and equipment lessors.

**Signage**

13. McKinley objects to the signage that would be permitted under the Sale Guidelines. To maintain the appearance and dignity of the Unit and the Mall, no signage (including banners) should be permitted anywhere other than the interior of the Unit. Further, window signage must be at least eighteen inches back from the glass of any window, must be limited to one sign per window, and should not cover any more than 50% of that window. Interior signage must be limited in both size and number.

**Unit Shall Not Go Dark**

14. The Sale Guidelines must provide that the Unit will not "go dark" prior to rejection of the Lease. "Dark" stores have a detrimental effect on the Mall, and the other tenants of the Mall.

**Other Relief**

15. To reduce the harmful impact that the Store Closing Sales will have on the Mall and its other tenants, any order approving the Store Closing Sales must:

- Prohibit "sign-walkers" and the like from the Mall.

- Prohibit augmentation of inventory to the Unit except inventory of the same like, kind and quality as that of the Debtors' current inventory in the Unit.

- Prohibit the use of any signage that uses the words "bankruptcy," "going-out-of-business," "fire sale," or the like.

- Prohibit the use of loud speakers, televisions, amplified sound devices, flashing lights or similar devices outside the Unit.

- Require the Debtors or their agent to repair (or indemnify the landlord for the costs to repair) any damage caused to the Unit or the Mall due to the Agent's advertising and signage.

- Require immediate removal of advertising from the Unit upon conclusion of a Store Closing Sale.

- Require the Agent to accept Mall gift cards during the Sale, and to post signs in the Unit indicating such policy.

- Require the Agent to comply with rules and regulations of the Mall.

- Require the Agent to designate the appointment of a responsible person with whom McKinley can communicate regarding the conduct of the Store Closing Sale.

- Require the Debtors and Agent to conform to requirements of the Lease and all rules and regulations regarding the maintenance and care of the Unit and the Mall.

- Prohibit the auction of FF&E or other property from the Unit or the Mall.

- Prohibit outside sales, sidewalk sales, tent sales, or any sale of any merchandise outside of the Unit.

**Order**

16. Finally, to assure notice and fairness, any restrictions and/or Sale Guidelines approved by this Court must control over any Agency Agreement that may be otherwise approved by this Court.

## II. Assumption and Assignment/Sale of Leases

17. McKinley objects to the proposed assumption, assignment and/or sale of the Lease.

**Adequate Assurance**

18. The Debtors may not assume and assign the Lease unless there is adequate assurance of future performance by the proposed assignee. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). Without advance access to this type of information, McKinley will be denied its statutory right to conduct a meaningful analysis of any proposed assignee.

19. When leases, such as the Lease involved here, are shopping center leases, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C). *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision in

any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

20. Debtors have not identified any proposed assignee, and have, therefore, provided no adequate assurance information to McKinley. At a minimum, the Debtors must provide the following information relating to any proposed assignee:

    (i) the exact name of the proposed assignee, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the Unit;

    (ii) the proposed assignee's intended use for the Unit, and confirmation that the Proposed Assignee will continue to use and occupy the Unit in accordance with the terms of the Lease;

    (iii) audited financial statements and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto;

    (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Unit, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the Lease;

    (v) all documents and other evidence of the proposed assignee's retail experience and experience operating stores in a shopping mall; and

    (vi) a contact person for the proposed assignee who McKinley may directly contact in connection with the adequate assurance of future performance.

Further, such information must be provided soon enough to give McKinley a meaningful opportunity to review that information prior to the proposed Sale Hearing. McKinley has provided Debtors with a written request to produce this information no later than January 2, 2015.

21. McKinley expressly reserves its right to amend, modify and/or supplement this Objection based upon the outcome of the Auction as well as the final terms of any Sale presented to the Court at the Sale Hearing.

**Cure**

22. McKinley does not object to the Cure Amount set forth in the *Unexpired Lease or Executory Contract Assumption and Cure Notice* to the extent that such amount is as of December 31, 2014. However, the proposed Cure Amount does not take into consideration the passage of time between December 31, 2014 and the effective date of any assumption of the Lease by the Debtors. Accordingly, any order that is entered establishing a cure amount with respect to the Lease must require that the Debtors: (i) comply with all obligations under the Lease pursuant to 11 U.S.C. § 365(d)(3) pending the actual assumption of the Lease; and (ii) cure any additional defaults that may occur under the Lease between the date of this Objection and the effective date of any assumption by the Debtors. See 11 U.S.C. § 365(b)(1).

23. Further, the proposed Cure Amount does not include amounts that may become due under the Lease after the date of the assumption that relate to the pre-assumption period (i.e., stub rent, real estate taxes, year-end reconciliations, amounts charged in arrears, etc.). Any order establishing a cure amount in connection with assumption of the Lease must provide for the payment of all charges due and/or accrued in the ordinary course under the terms of the Lease, in addition to the proposed Cure Amount. To the extent that the Lease is assigned, any assignee must be expressly responsible and liable for the payment of these charges as and when they become due under the terms of the Lease, regardless of when such charges may have accrued.

### III. Section 365 Obligations

24. McKinley hereby objects to the Motion to the extent that it seeks any relief inconsistent with Debtors' obligations under section 365 of the Bankruptcy Code.

### IV. Additional Objections

25. To the extent not inconsistent with the Lease or the arguments raised herein, McKinley hereby joins in the objections to the Motion filed by other landlords.

WHEREFORE, McKinley respectfully requests that the Court deny the Motion except as consistent with this Objection, and grant McKinley such other and further relief as the Court may deem just and proper.

Dated: December 31, 2014            CONNOLLY GALLAGHER LLP

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (No. 2795)
N. Christopher Griffiths (No. 5180)
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone:    (302) 757-7300
Facsimile:    (302) 658-0380
Email:    jwisler@connollygallagher.com
         cgriffiths@connollygallagher.com

#05142872            Counsel for McKinley Mall LLC