IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X   Chapter 11
In re:                                                          :
                                                                :  Case No. 14-12676 (KG)
DEB STORES HOLDING LLC, *et al.*,                              :
                                                                :  (Jointly Administered)
            Debtors.                                            :
---------------------------------------------------------------X   [RE: D.I. Nos. 37 and 159]

### OBJECTION OF WESTFIELD, LLC AND CERTAIN AFFILIATES TO PROPOSED ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND PROPOSED CURE AMOUNTS

WESTFIELD, LLC, and those of its affiliates listed on the attached Schedule A (collectively, the "Westfield Landlords"), hereby submit this Objection to Proposed Assumption and Assignment of Unexpired Leases and Proposed Cure Amounts (the "Objection"), and in support thereof, state as follows:

I.  **BACKGOUND**

1. On December 4, 2014 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Westfield Landlords are the landlords and certain of the Debtors are the tenants pursuant to three unexpired leases (the "Westfield Leases") of nonresidential real property for retail stores (the "Premises") located at shopping centers (the "Centers") around the country. Each of the Centers constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3).

3. Upon information and belief, pursuant to a previously-filed sale motion and the Order (I)(A) Authorizing Entry Into Agency Agreement (B) Authorizing Bidding Protections (C)

9445

Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof and (II) Granting Related Relief, the Debtors seek to assume and assign the Westfield Leases to Rainbow Southeast Leasing, Inc. (the "Proposed Assignee").

4. Westfield first received notice from the Debtors of the identity of the Proposed Assignee after-business hours on January 5, 2015.

## II.  OBJECTION

### A.  Objection to Assumption and Assignment of the Westfield Leases

5. Before assuming a lease of a shopping center that is in default, a debtor must, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[1] Bankruptcy Code section 365(b)(3) states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

---

[1] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee" (A) cures, or provides adequate assurance that it will promptly cure such default, (B) compensates, or provides adequate assurance that it will promptly compensate the landlord for actual pecuniary loss resulting from the default, and (C) provide adequate assurance of future performance under such lease. 11 U.S.C. § 365(b)(1).

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

6. Counsel to the Debtors have emailed to counsel for the Westfield Landlords documentation that purportedly establishes the Proposed Assignee's ability to provide adequate assurance of performance of the terms of the Westfield Leases (the "AA Information"). The AA Information consists of consolidated financial statements for A.I.J.J. Enterprises, Inc., which purports to be a parent company of the Proposed Assignee. The AA Information does not include any information regarding the Proposed Assignee's assets or liabilities. The Westfield Landlords object to the proposed assumption and assignment of the Westfield Leases to the Proposed Assignee for lack of adequate assurance.

### B. The Debtors Have Not Provided Adequate Assurance of the Proposed Assignee's Ability to Satisfy the Debtors' Financial Obligations Under the Westfield Leases

7. The AA Information does not include any information regarding the Proposed Assignee, such as a basic list of its assets, liabilities and projected available liquid assets and/or free cash flow, and thus, the Westfield Landlords cannot determine whether the Proposed Assignee can provide adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b) and (f).

8. Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), the Westfield Landlords are entitled to "adequate assurance" of future performance by the Proposed Assignee. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) (§ 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); c.f., In re Embers 86th Street, Inc., 184 B.R. 892, 900-01 (Bankr.S.D.N.Y. 1995) (adequate assurance of payment of cure did not exist where plan was to "meet projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at

increased prices"); Matter of World Skating Center, Inc., 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); In re Future Growth Enterprises, Inc., 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

9. Given the absence of information demonstrating that the Proposed Assignee has substantial assets, pursuant to Bankruptcy Code section 365(l), the Westfield Landlords request that the Proposed Assignee be required to provide the Westfield Landlords with an adequate security deposit under the Westfield Leases. See 11 U.S.C. §365(l) ("[i]f an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant"). The Westfield Landlords request a minimum of two months' rent under each of the Westfield Leases as an appropriate security deposit.

10. Also, because the Proposed Assignee does not appear to have any substantial unencumbered assets, the Westfield Landlords demand that a guaranty by a suitable entity be provided.

### C. The Debtors Have Not Provided Adequate Assurance of Future Performance of Lease Terms

11. The Westfield Landlords object to any attempts by the Debtors and/or the Proposed Assignee to modify the Westfield Leases or any of the Westfield Landlords' rights thereunder. The Westfield Leases must be assumed and assigned without modification, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C). See Thompson v. Texas Mexican Railway Co., 328 U.S. 134 (1946); In re Jamesway Corp., 201 B.R. 73, 76

(Bankr. S.D.N.Y. 1996) (same); Rockland Center Assoc. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985) (same).

12. Furthermore, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." In re Joshua Slocumb Ltd., 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." Id. "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3rd Cir. 2000), cert. denied, 121 S.Ct. 175 (2000) (internal quotation marks omitted).

13. Specifically, the Debtors should not be permitted to limit the Westfield Landlords' rights under the Westfield Leases to assert claims against the Proposed Assignee for accrued but as yet unbilled adjustments for such items as common area maintenance charges and taxes ("Adjustments"). The Proposed Assignee will receive the benefit of any Adjustments in the tenants' favor under the Westfield Leases and thus the Proposed Assignee should be required to accept the burdens of any Adjustment in the Westfield Landlords' favor.

14. The Westfield Landlords also object to any attempt by the Debtors to assume and assign the Westfield Leases free and clear of the Debtors' indemnity obligations (including, without limitation, mechanic's lien claims, accrued obligations for personal injury or negligence against the Debtors that could be asserted against the Westfield Landlords) under the Westfield Leases (collectively, the "Unliquidated Claims"). Again, Bankruptcy Code section 365(b)(3)

requires that the Westfield Leases be assumed "subject to all the provisions thereof." 11 U.S.C. §365(b)(3)(C). The Westfield Landlords' Unliquidated Claims under the Westfield Leases should be preserved and survive any order authorizing assumption and assignment of the Westfield Leases.

15. Specifically, the Debtors' build-out at the remaining Westfield Fox Valley Premises is not complete. Upon information and belief, there are claims by certain of the Debtors' contractors that remain outstanding and which have resulted or may result in the filing of mechanic's lien claims against the Premises (the "Fox Valley Contractor Claims"). Westfield's Fox Valley Contractor Claims must be preserved and survive any order authorizing assumption and assignment of the Westfield Leases.

16. Accordingly, any requests by the Debtors to modify clauses in the Westfield Leases to suit the desires of the Proposed Assignee are without merit and inconsistent with the protections afforded by Bankruptcy Code section 365(b)(3) to lessors of real property contained within a shopping center. To the extent this Court authorizes assumption and assignment of the Westfield Leases, the Proposed Assignee must be required to accept all clauses in the Westfield Leases. Id.

D. **The Debtors Also Have Not Provided Adequate Assurance of Future Performance of their Cure Obligation Under the Westfield Leases**

17. In the event that the Westfield Leases are assumed and assigned to the Proposed Assignee, the Debtors shall be required to, among other things, cure all defaults under the Westfield Leases and compensate the Westfield Landlords for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b).[2] As of the date of the filing of this Objection, but exclusive

---

[2] In its bid, the Proposed Assignee seeks assignment of a Fox Valley Westfield Lease, but lists a proposed cure of zero. In the Debtors' Cure Notice, it lists two Fox Valley Westfield Leases, one with a zero cure amount and the other with a proposed cure of $24,034.27. The Fox Valley

of (i) any amounts that may become outstanding thereafter (ii) interest, and (iii) attorneys' fees, the correct cure amount is set forth in Exhibit 1 (the "Cure Amount").³

18.  In addition to the Cure Amount, pursuant to the terms of the Westfield Leases and 11 U.S.C. § 365(b), the Court should award the Westfield Landlords interest and a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy cases in the amount of $2,000 (the "Total Cure Amount"). See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); In re East 44th Realty, LLC, No. 07 Civ. 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) (affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable); In re Beltway Medical, Inc., 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) "Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); In re Entertainment, Inc., 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease); In re MS Freight Distribution, Inc., 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

---

Westfield Lease with a proposed cure of zero has expired by its terms and cannot be assumed and assigned.

³ The Cure Amounts set forth herein are substantially similar to the cure amounts asserted by the Debtors in their Cure Notices; however, the Cure Amounts set forth herein include unpaid January 2015 rent under the Westfield Leases.

WHEREFORE, the Westfield Landlords respectfully request that this Court enter an order:

    a. Sustaining this Objection;

    b. Denying the Debtors' request to assume and assign the Westfield Leases to the Proposed Assignee unless the Debtors and Proposed Assignee meet all requirements under the Bankruptcy Code in accordance with this Objection; and

    c. Granting the Westfield Landlords such other and further relief as the Court deems appropriate.

Dated: January 6, 2015

        SEITZ, VAN OGTROP & GREEN, P.A.

        /s/ Kevin A. Guerke
        Kevin A. Guerke (4096)
        222 Delaware Avenue, Suite 1500
        P.O. Box 68
        Wilmington, DE  19801
        (302) 888-0600

        and

        Niclas A. Ferland (NAF-5367)
        Ilan Markus (IM-7174)
        LeClairRyan, A Professional Corporation
        545 Long Wharf Drive, 9th Floor
        New Haven, CT  06511
        Tel: (203) 672-3211
        Fax: (203) 672-3232
        niclas.ferland@leclairryan.com
        ilan.markus@ leclairryan.com

        Counsel to:
        Westfield, LLC and its affiliates on Schedule A

## SCHEDULE A

| | |
|---|---|
| **Westfield Connecticut Post**<br>Milford, CT | THE CONNECTICUT POST LIMITED PARTNERSHIP |
| **Westfield Fox Valley**<br>Aurora, IL | FOX VALLEY MALL LLC |
| **Westfield Meriden**<br>Meriden, CT | MERIDEN SQUARE PARTNERSHIP |
| **Westfield Wheaton**<br>Wheaton, MD | WHEATON PLAZA REGIONAL SHOPPING CENTER LLC |