IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| DEB STORES HOLDING, LLC., *et al*., | Case No. 14-12676 (KG) |
| Debtors. | Jointly Administered |
|  | Related to Docket No. 37 and 159 |

**OBJECTION OF GREEN OAK VILLAGE PLACE I, LLC TO PROPOSED ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE AND PROPOSED CURE AMOUNT**

Green Oak Village Place I, LLC (the "Objecting Landlord") by and through its undersigned counsel, hereby submits this Objection to Proposed Assumption and Assignment of Unexpired Lease and Proposed Cure Amount (the "Objection"), and in support thereof, states as follows:

1. On December 5, 2014 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. On December 5, 2014, the Debtors filed their Motion to Authorize/Debtors Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling a Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief Filed by Deb Stores Holding LLC [D.I. #37] ("Motion") seeking establishment of bidding procedures for the sale of the Debtors' assets and assignment of unexpired leases to the highest bidder at auction. On December 18, 2014, the Court entered an order [D.I. 159] (the "Sale Order") approving the Motion and authorizing the Debtors to move forward with efforts to find buyers for the unexpired leases.

3. The Debtors proposed to sell all or most of their assets at an auction to be held on January 6, 2015, and in conjunction therewith to possibly assume and assign some or all of their non-residential real property leases. Pursuant to the Bidding Procedures Order objections to the sales and cure amounts

1

were due <u>six days</u> before the proposed Auction and before the Objecting Landlord would have been advised of any potential bidders or assignees for their Leases. The Debtor withdrew the leases from the Auction and have rescheduled the auction of the leases for February 4, 2015 with the Sale Hearing set for February 11, 2015.

4. On December 19, 2014, the Debtors issued an Unexpired Lease or Executory Contract Assumption and Cure Notice for the Objecting Landlord's Lease (a "Cure Notice") which sets forth the amount the Debtors assert must be paid in order to assume and assign the unexpired lease of nonresidential real property.

5. The Landlord is the owner of, or the managing agent for the owner of, the Green Oak Village Place Shopping Center located in Brighton, Michigan (the "Leased Premises") which the Debtors lease from Landlord pursuant to a certain written lease (the "Lease") and which the Debtors continue to use and occupy.

6. The Objecting Landlord's premises is located in a shopping center, as that term is used in 11 U.S.C. §365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990). Accordingly, the Landlord is entitled to the protections that Bankruptcy Code §365(b)(3) grants to landlords of shopping centers.

**Assumption and Assignment**

7. The Debtors proposed a very short period of time between the auction date and the hearing date to approve the sale of the Debtors' leases, as well as the assumption and assignment of leases. Currently, and due to the proposed schedule, the Debtors have failed to satisfy the requirements of Bankruptcy Code Section 365(b) for assumption of the Objecting Landlord's Lease in that they have failed to cure existing defaults under the leases and failed to provide "adequate assurance." In addition the Objecting Landlord's Lease requires the Debtors' payment of the landlord's attorneys' fee under these circumstances, in order to meet the requirements of Section 365(b) the Debtors must reimburse the landlord for its pecuniary losses. See 11 U.S.C. §365(b)(1)(A) and (B). The principle is well-recognized. *In Re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc.* (Matter of

2

Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989). Furthermore, the Debtors do not disclose when they will notify the Objecting Landlord of the Debtors' intentions with regard to the specific lease.

8. Additionally, the proposed assignments to the yet to be determined assignee has yet to be shown to comply with the provisions of Section 365(f) and, therefore, cannot be approved by this Court. Section 365(f) provides:

> (f)(2) The Trustee may assign an executory contract or unexpired leases of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) <u>adequate assurance of future performance</u> by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease (Emphasis added.)

Section 365(b)(3) defines adequate assurance of future performance as follows:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance –
>
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, <u>that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and the guarantors, if any, as of the time the debtor became the lessee under the lease;</u>
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or <u>assignment of such lease is subject to all the provisions thereof,</u> including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center (Emphasis added.)

9. The Debtors have the burden of proof to establish that assumption and assignment will not affect the "use," will not disrupt the tenant mix or balance in the shopping center affected, will not

3

substantially affect future performance of non-monetary obligations of the lessee, and will insure the performance of all monetary obligations under the leases. *In re: Lafayette Radio Electronics Corp.* 12 B.R. 302 (Bankr. E.D.N.Y. 1981).

10. The Debtors' motion has failed to establish these requirements and meet their burden of proof. Nowhere in the filed pleadings is there a showing that all provisions of the leases will be honored by the assignee. It is not known who the assignee will be. Nowhere in the Debtors' motion is there a showing of any history of an operating performance by the assignee or that the assignee's operating performance will be similar to the operating performance of the Debtors as of the time the Debtors became the lessee under the Lease. Lastly, nowhere in the Debtors' motion or any supporting documents is there a showing that the financial condition of the proposed assignee is similar to the financial condition of the Debtors as of the time the Debtor became the lessee under the leases as required by Section 365(b)(3)(A).

11. Additionally, the requirement that the use clause provision of the lease must be complied with has been emphasized by the recent bankruptcy code amendments. The ability of the Debtors to assign a shopping center lease under Section 365(b)(3) is subject to the right of a shopping center landlord to enforce use, radius, exclusivity, tenant mix and similar lease provisions. BAPCPA and its legislative history of BAPCPA supports the clear intention of Congress.

12. Courts have interpreted Section 365(b)(3)(C) as being a strict requirement that the bankruptcy courts not alter use clauses by approving assignment which effect changes in use. *In re Rose's Stores, Inc.*, 1995 U.S. App. LEXIS 8090 (Decided April 12, 1995) (4th Cir.); *In re Tech Hifi, Inc.*, 49 Bankr. 876 (Bankr. D. Mass 1985); *In re Bricker*, 43 Bankr. 344 (Bankr. D. Ariz. 1984).

13. It is the Debtors' burden of proof under Section 365(b)(1). *In re Memphis-Friday's Associates,* 88 Bankr. 830, 840-1 (Bankr. W.D. Tenn. 1988); *In re Lafayette Radio Electronics Corp.*, 12 Bankr. 302, 307 (Bankr. E.D.N.Y. 1981).

14. When the Objecting Landlord entered into its lease it was with a known entity which at the time exhibited a strong financial position and demonstrated a tradition of effective and experienced

4

management. Without a showing that the assignee has a similar financial capacity, has a similar track record with regard to managerial experience with this type of operation, and plans to continue to operate the enterprise in a manner consistent with the restrictions of the leases, it is unfair and violative of the requirements of Section 365 to permit the Debtors to assume and assign the Objecting Landlord's lease pursuant to the motion currently on file.

15. Further, no evidence of adequate assurance has been offered by the Debtors to date. Section 365(l) provides:

> (l) If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

If the proposed assignee is a newly-formed company, the Objecting Landlord asserts that the Court should at the least require a security deposit of four (4) month's rent and other charges or a two-year guaranty from a solvent parent corporation.

16. The Objecting Landlord reserves the right to object to adequate assurance of future performance once the successful bidder at auction is identified.

### The Cure Amounts, Including Attorneys' Fees, Under the Lease Must be Paid

17. The Objecting Landlord objects to the proposed assumption and assignment of its Lease by a proposed assignee unless the Debtors and/or the proposed assignee comply with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and the proposed assignee to satisfy the Code's requirements any proposed assumption and assignment must be denied.

18. As a condition to any assumption and assignment of the Lease, all defaults must be cured upon assumption. 11 U.S.C. §365(b)(1)(A). The Landlord hereby objects to the proposed cure amounts set forth in the Cure Notice.

19. The Cure Notice does not provide any back-up or support for the amount set forth therein. The amount set forth in the Cure Notice does not reflect the outstanding balance due and owing

5

to the Landlord under the Lease, and the proposed cure amount also does not account for accrued but unbilled charges which may come due in the future. Therefore, the cure amount set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability of the Debtors or the assignee to pay for the accruing charges due under the Leases, as set forth herein.

20. The Debtors listed the Landlord as being owed the amount listed in the table below, and the Landlord asserts the correct cure amount as of February 1, 2015[1] is as indicated in the table below.

21. The correct cure amount is set forth below ("Cure Claim"). The Cure Claim set forth reflects the base cure claim amounts subject to additional qualifications and modifications (such as reimbursement of attorney's fees) as more fully set forth below:

| Landlord | Shopping Center | Landlord's Cure Claim | Debtor's Scheduled Cure Claim | Exhibit |
|---|---|---|---|---|
| Green Oak Village Place I, LLC | Green Oak Village Place Brighton, MI | $32,070.49<br>$1,500.00 Attorney's Fees<br>**$33,570.49** | $10,967.74 | A |

22. The Objecting Landlord reserves its right to amend the cure amount.

23. The Lease contains a provision for recovery of attorney's fees, costs, and interest in the event that a Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Objecting Landlord for its actual pecuniary loss as a result of defaults under the Lease. *See* 11 U.S.C. §365(b)(1)(A) and (B). The principle is well-recognized. *In Re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco),* 107 B.R. 483, 487 (Bankr. D. Del. 1989).

24. The Cure Amount set forth above, pursuant to the terms of the Leases and 11 U.S.C. §365(b), includes a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy case in the approximate amount of $1,500 for the Lease. See, e.g., *In re Pelican Pool,* 2009

---

[1] These amounts may increase prior to the actual date of assumption of the Leases if the Debtors does not pay the January, 2015 rent and charge and all amounts that accrue after February 1, 2015, and any taxes, common area maintenance, percentage rent, and other amounts that may come due, pursuant to the terms of the Leases and regardless of when those amounts accrued.

Bankr. LEXIS 4623 (Bankr. D.N.J. July 27, 2009); *In Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption), *Travelers Cas. & Su. Co. Co. of A. v. Pacific Gas and El. Co.*, 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re East 44th Realty, LLC*, No. 07 Civ 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable.); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) "Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorneys' fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); *In re Entertainment, Inc.*, 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (attorneys' fees must be paid as provided for in the assumed lease). The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Leases. See 11 U.S. C. §365(b)(1)(A) and (B).

25. The contact information for the Objecting Landlord to discuss this cure objection is:

> David M. Blau, Esq.
> dblau@clarkhill.com
> Fax:           (248) 988-2336
> Telephone:     (248) 988-1817

26. The Objecting Landlord reserves its right to amend its Cure Claim to account for year-end adjustments, including without limitation, adjustments for the 2014 and 2015 years and further amounts allowed by applicable bankruptcy and non-bankruptcy law, which have not yet been billed or have not yet become due under the terms of the Lease.

### Accrued, but Unbilled Charges, Adjustments and Reconciliations

27. Section 365(b) requires that a debtor cure all defaults in conjunction with a lease assumption.

28.    In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Lease have not been reconciled and/or adjusted from pre-petition (or possible post-petition) periods. The Lease requires that the Debtor pay rent and related lease charges in advance for each month. The Debtor pays fixed minimum rent, along with a pro-rata share of real property taxes and its utility usage. Certain charges, such as real property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the shopping center. To the extent the estimated payments do not cover actual charges incurred under the lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. year-end reconciliations and adjustments that accrued through 2015 may not have been billed). In other instances, certain charges may be paid in arrears, and cannot be calculated until a year or more after year end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default but gives rise to a requirement to cure by the Debtors at this time.

29.    Nevertheless, the Debtors continue to be responsible for all such accrued and accruing charges under the Leases, and must pay such charges as and when they come due under the Lease. Any proposed assignee must take the assignment of any Lease subject to its terms, as well as pay all obligations owing under such Lease, including obligations that have accrued but may not have been billed under the Lease. Any final sale order should clearly state that the assignee will assume the Lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to provide a release of further liability based upon a payment of cure amounts, should specify that such release does not apply to the obligation to pay accrued, but unbilled, charges that come due under the Lease.

30.    The Objecting Landlord reserves the right to increase or further reconcile the Cure Claim set forth herein, as the Debtor is still in the property and is accruing expenses.

201861763.1 09999/09999-030006

### Indemnity Obligations

31. In addition to monetary obligations that Debtors must satisfy under Section 365 of the Bankruptcy Code, the Lease also provides that the Debtors must indemnify and hold the Objecting Landlord harmless with regard to existing claims as well as with regard to events which may have occurred pre-assumption but which are not made known to the Objecting Landlord or Debtors until some period post-assumption. Accordingly, either the assignee must assume all indemnification liabilities or Debtors must be required to evidence, or obtain adequate insurance in order to guaranty that their indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries which occur at the leaseholds, where either the Objecting Landlord is joined as party defendants, damage, and destruction to the property by Debtors or their agents, claims for environmental damage or environmental clean-up etc.

### The Debtors May Not Assume and Assign the Lease Without Providing Adequate Assurance of Future Performance

32. Without compliance with Section 365(b)(1) of the Bankruptcy Code, court approval of the proposed assignment should not be granted. Judge Lathum stated, in *In re Delaware and Hudson Railway Company*, 129 BR 388, 389 (D. Del. 1991), that the trustee may not assume a contract under Section 365 "unless the trustee <u>promptly</u> cures the default, compensates the other party for pecuniary loss resulting from the default, and provides adequate assurance of future performance under the contract." (Emphasis added). In the instant case, the Debtors have not indicated how or when it will cure the outstanding defaults. As such, the assumption and assignment cannot be approved until the Debtors comply with Section 365.

33. In order to assume and assign shopping center leases, Debtors must not only satisfy the requirements of Section 365(b)(1)(C), but also the heightened requirements set forth in Section 365(b)(3)(A)-(D). *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d. 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

9

- The source of rent and assurance that the financial condition and opening performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. §365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. §365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. §365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. §365(b)(3)(D).

Pursuant to Section 365(b)(1)(C) of the Bankruptcy Code, the Debtors are also required to provide the Objecting Landlord with adequate assurance of an Assignee's future performance, as a condition to assumption and assignment of the Lease.

34. The Motion does not address the above-referenced adequate assurance of future performance requirements under Sections 365(b)(1)(C) and (b)(3), since it is not known who the successful bidder at the Auction will be.

35. The Debtors and any proposed assignee have failed to provide any evidence of adequate assurance of future performance.

36. Since it is unknown whether the proposed Assignee is a retail operator or publicly traded on a national exchange, the Objecting Landlord is concerned regarding the source of, and the proposed Assignee's ability to pay rent. The Debtors have not supplied the Objecting Landlord with sufficient financial information and background on the proposed Assignee, so the Objecting Landlord may test the proposed Assignee's financial condition and operating performance against that of the Debtors. Subject to review of the proposed Assignee's financial information, the Objecting Landlord is unwilling to withdraw its objection on this point.

37. In addition to demonstrating a satisfactory financial condition of the proposed assignee, in order to provide the Objecting Landlord with reasonable assurance that Assignee will pay rent and

other consideration due under the Leases, the proposed assignment should be conditioned upon execution of a parent guaranty guarantying rent, CAM, electric, taxes and related charges/expenses shall be fully and timely satisfied, in the event of Assignee's default, in a form reasonably acceptable to the Objecting Landlord.

38. The Objecting Landlord further joins in any/all objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the assertions contained in the Objection, and also herein.

WHEREFORE, Green Oak Village Place I, LLC respectfully requests that the Court (i) substain this Objection; (ii) deny the Debtors' request to assume and assign the Lease to any Proposed Assignee unless the Debtors and the Proposed Assignee meet all requirements under the Bankruptcy Code in accordance with this Objection; and (iii) grant such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:   January 26, 2015            Respectfully submitted,

                                     CLARK HILL, PLC

                                     /s/ Karen M. Grivner
                                     Karen M. Grivner (DE No. 4372)
                                     824 N. Market St, Suite 710
                                     Wilmington, DE 19801
                                     Tel: (302) 250-4749
                                     Fax: (302) 421-9439
                                     kgrivner@clarkhill.com

                                     and

                                     David M. Blau (P52542) (Admitted Pro Hac Vice)
                                     151 S. Old Woodward Ave., Ste. 200
                                     Birmingham, MI 48009
                                     Tel. 248.988-1817
                                     Fax. 248.988-2336
                                     dblau@clarkhill.com

                                     Attorneys for Green Oak Village Place I, LLC

201861763.1 09999/09999-030006